IAN C. BALLON (SBN 141819)
ballon@gtlaw.com
DAVID M. LISI (SBN 154926)
lisid@gtlaw.com
CATHLEEN DONOHOE (SBN 228729)
donohoec@gtlaw.com
GREENBERG TRAURIG, LLP
1900 University Ave., 5th Floor
East Palo Alto, California 94303
Telephone:  (650) 328-8500
Facsimile:  (650) 328-8508

Attorneys for Plaintiff,
OPENWAVE MESSAGING, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| OPENWAVE MESSAGING, INC., a Delaware corporation,<br><br>       Plaintiff,<br><br>       v.<br><br>OPEN-XCHANGE, INC., a Delaware corporation,<br><br>       Defendant. | CASE NO.  3:16-cv-00253-WHO<br><br>**OPENWAVE MESSAGING, INC.'S OPPOSITION TO OPEN-XCHANGE, INC.'S MOTION TO DISMISS**<br><br>Date:      May 4, 2016<br>Time:     2:00 p.m.<br>Courtroom: 2<br>Judge:   The Hon. William H. Orrick |

# TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ................................................................................................2

        A.      Standard Of Review On Motion To Dismiss ...................................3

III.    ARGUMENT ......................................................................................................4

        A.      Openwave's Complaint Adequately Pleads A Claim For Copyright Infringement .........................................................................................4

        B.      Openwave Has Adequately Pled False Advertising Claims Under The Lanham Act ....................................................................................7

        1.      This Court Has Jurisdiction To Hear Openwave's Lanham Act Claims ...................................................................................................7

        2.      The Court Has Jurisdiction Over OX, Inc.'s False Advertising .........8

        3.      The Alleged Statements Are Actionable ...........................................11

        C.      The Court Should Reject OX Inc.'s Forum Non Conveniens Arguments ..........14

        1.      The Court Should Enforce The Parties' Forum Selection Provision In The OEM Agreement ..................................................14

        2.      The Forum Selection Provision Is Not Unreasonable .......................16

        3.      The Forum Selection Provision Applies To All of Openwave's Claims And Should Be Construed Broadly ......................................17

        4.      OX, Inc. Has Not Met Its Heavy Burden To Justify A Forum Non Conveniens Dismissal Of This Matter ....................................................18

        D.      Public Interest Factors Weigh In Favor Of Dismissal .......................21

        E.      Openwave Has Sufficiently Pled Claims Eight Through Eleven .......................22

        1.      Claims Eight Though Ten Do Not Sound In Fraud, And Thus, Are Not Subject To The Heightened Pleading Requirements Of Rule 9(b) ............................................................................................22

        2.      Even If Claims Eight Through Ten Are Required To Meet The Heightened Pleading Standard Of Rule 9(b), Openwave Has Met That Standard ............................................................................23

        3.      Claim Eleven Has Also Been Pled With Particularity .......................25

IV.     CONCLUSION ...............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Argueta v. Banco Mexicano, S.A.,*
   87 F.3d 320 (9th Cir. 1996) ............................................................................ 16

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)......................................................................................... 4, 5

*Atl. Marine Const. Co. v. U.S. Dist. Court for Western Dist. of Texas,*
   134 S. Ct. 568 (2013)...................................................................................... 14, 15

*Bass v. Dollar Tree Stores, Inc.,*
   No. 07-cv-03108-JSW, 2007 WL 2462150 (N.D. Cal. 2007) ............................ 23, 24, 25

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)........................................................................................ 3, 4

*Boston Telecoms. Grp., Inc. v. Wood,*
   588 F.3d 1201 (9th Cir. 2009) ........................................................................ 18, 19

*Braden v. Wal-Mart Stores, Inc.,*
   588 F.3d 585 (8th Cir. 2009) ........................................................................... 4

*California Pharmacy Mgmt., LLC v. Zenith Ins. Co.,*
   669 F. Supp. 2d 1152, (C.D. Cal. 2009) ........................................................... 3

*Cape Flattery Ltd. v. Titan Maritime, LLC,*
   647 F.3d 914 (9th Cir. 2011) ........................................................................... 17

*Carijano v. Occidental Petroleum Corp.,*
   643 F.3d 1216 (9th Cir. 2011) ........................................................................ 18, 19, 22

*Coastal Abstract Service, Inc. v. First American Title Ins. Co.,*
   173 F.3d 725 (9th Cir. 1999) .......................................................................... 12, 13, 14

*Cooper v. Pickett,*
   137 F.3d 616 (9th Cir.1997) ............................................................................ 23

*Crossfit Inc. v. Alvies,*
   No. 13-3771-SC, 2014 WL 251760 (N.D. Cal. Jan. 22, 2014)........................... 13

*Cung Le v. Zuffa, LLC,*
   108 F. Supp. 3d 768, 774-775 (N.D. Cal. 2015)............................................... 15

*Delano Farms Co. v. Calif. Table Grapes Com'n,*
   623 F. Supp. 2d 1144 (E.D. Cal. 2009).............................................................. 3

*Design Data Corp. v. Unigate Enterprise, Inc.*,
    63 F. Supp. 3d 1062, 1069 ................................................................................. 7

*Frenzel v. AliphCom*,
    76 F. Supp. 3d 999, 1005-06 (N.D. Cal. 2014) .................................... 23, 24, 25

*Gamayo v. Match.com LLC*,
    No. 11-cv-00762-SBA, 2011 WL 3739542 (N.D. Cal. Aug. 24, 2011) ................... 14

*Garland Co. Inc. v. Ecology Roof Systems Corp.*,
    895 F. Supp. 274 (D. Kan. 1995) ....................................................................... 12

*Geophysical Services v. TGS-Nopec Geophysical Services*,
    No. 14-cv-1368, 2015 WL 6869733 (S.D. Tex. Nov. 9, 2015) ............................ 6

*Glenbrook Capital Ltd. P'ship v. Kuo*,
    525 F. Supp. 2d 1130 (N.D. Cal. 2007) .............................................................. 4

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947) ......................................................................................... 21

*Hebbe v. Pliler*,
    627 F.3d 338 (9th Cir. 2010) .............................................................................. 4

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    134 S. Ct. 1377 (2014) .................................................................................... 7, 8

*Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*,
    149 F.3d 987 (9th Cir. 1998) .............................................................................. 5

*Love v. Assoc. Newspapers, Ltd.*,
    611 F.3d 601 (9th Cir. 2010) .............................................................................. 9

*Lueck v. Sundstrand Corp.*,
    236 F.3d 1137 (9th Cir. 2001) .......................................................................... 19

*MAI Systems Corp. v. Peak Computer, Inc.*,
    991 F.2d 511 (9th Cir. 1993) .............................................................................. 7

*Miller v. Facebook, Inc.*,
    No. 10-cv-00264-WHA, 2010 WL 2198204 (N.D. Cal. May 28, 2010) ................. 5

*Moore v. Kayport Package Exp., Inc.*,
    885 F.2d 531 (9th Cir. 1989) ...................................................................... 24, 25

*Motohouse Intern., LLC v. PPG Inds., Inc.*,
    No. 09-CV-1265-LJMA, 2010 WL 476652 (S.D. Cal. Feb. 4, 2010) ..................... 4

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir.1993) .......................................................................... 24, 25

*New Show Studios LLC v. Needle*,
   No. 14-cv-01250, 2014 WL 2988271 (C.D. Cal. June 30, 2014) ....................................... 13

*Newcal Indust. Inc. v. Ikon Office Solution*,
   513 F.3d 1038 (9th Cir. 2008) ...................................................................................... 13, 14

*Ocean Garden, Inc. v. Marktrade Co. Inc.*,
   953 F.2d 500 (9th Cir. 1991) ............................................................................................. 10

*Oracle v. Terix*,
   No. 13-cv-03385-PSG, 2014 WL 5847532 (N.D. Cal. Nov. 7, 2014) ............................... 13

*Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, Inc.,
    268 F.3d 1133 (9th Cir. 2001) ............................................................................................. 4

*Perry v. AT & T Mobility LLC*,
   No. 11-cv-01488-SI, 2011 WL 4080625 (N.D. Cal. Sept. 12, 2011) ................................. 18

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) ........................................................................................................... 18

*Raima, Inc. v. Myriad France, SAS*,
   No. 12-116, 2012 WL 6201709 (W.D. Wash. Dec. 11, 2012) ............................................. 5

*Ravelo Monegro v. Rosa*,
   211 F.3d 509 (9th Cir. 2000) ............................................................................................. 18

*Reebok Intern. Ltd. v Marnatech Enterprises Inc.*,
   970 F.2d 552 (9th Cir. 1992) ........................................................................................ 8, 10

*Riva v. Pepsico, Inc.*,
   82 F. Supp. 3d 1045, 1051 (N.D. Cal. 2015) ....................................................................... 4

*Schlagal v. Learning Tree Int'l.*,
   No. 98-cv-6384-ABC-EX, 1998 WL 1144581 (C.D. Cal. Dec. 23, 1998) .......................... 23

*Scott v. Lopez*,
   No. 12-cv-01456-HRL, 2013 WL 1182957 (N.D. Cal. Mar. 21, 2013) ............................. 17

*Shropshire v. Canning*,
   809 F. Supp. 2d 1139 (N.D. Cal. 2011) ............................................................................... 6

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ............................................................................................. 4

*STM Group, Inc. v. Gilat Satellite Networks Ltd.*,
   No. 11-cv-0093-DOC-RZx, 2011 WL 2940992 (C.D. Cal. July 11, 2011) ........................ 20

*Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*,
   24 F.3d 1088 (9th Cir. 1994) .......................................................................................... 4, 5

*Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*,
690 F. Supp. 2d 959 (D. Ariz. 2010) ................................................................................... 4

*Trader Joe's v. Hallatt*,
981 F. Supp. 2d 972 (W.D. Wash. 2013) .......................................................................... 9, 10

*Tuazon v. R.J. Reynolds Tobacco Co.*,
433 F.3d 1163 (9th Cir. 2006) .......................................................................................... 20, 21

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*,
216 F. Supp. 2d 198, 225 (S.D.N.Y. 2002) ......................................................................... 5

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .......................................................................................... 11, 22

*Walker & Zanger, Inc. v. Paragon Industries, Inc.*,
549 F. Supp. 2d 1168 (N.D. Cal. 2007) ............................................................................. 13

*Weiner v. Ocwen Financial Corp.*,
No. 14-cv-02597-MCE, 2015 WL 4599427 (E.D. Cal. July 29, 2015) ............................. 23

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*,
556 F.2d 406 (9th Cir. 1977) .............................................................................................. 8

*Zako v. Hamilton Co.*,
No. 15-cv-03162-EJD, 2016 WL 344883 (N.D. Cal. Jan. 28, 2016) .......................... 15, 17

**Federal Statutes**

Lanham Act 15 U.S.C. section 1125(a) ............................................................................. 8

**State Statutes**

California Business and Professional Code section 17200 ................................................. 22

California Business and Professional Code section 17500 ................................................. 22

**Rules**

Federal Rule of Civil Procedure 9(b) ....................................................................... 11, 23, 25

Federal Rule of Civil Procedure 12(b)(6) ......................................................................... 3

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      INTRODUCTION**

Defendant's motion to dismiss would have the court ignore the following facts asserted in the Complaint: Open-Xchange, Inc. ("OX, Inc.") is incorporated in the U.S., is headquartered in Palo Alto California and is making false statements about Openwave's technology and financial condition in order to harm Openwave's U.S. business. As clarified further in Openwave's papers, OX, Inc. solicits business through its website located at www.open-exchange.com which is accessible in the U.S., and sells its technology – parts of which plaintiff Openwave Messaging, Inc. ("Openwave") alleges to be infringing – in California. Moreover, the OEM Agreement, amendments and statements of work at issue, all of which are incorporated by reference in the Complaint, were signed by OX, Inc. officers – including Mr. Rafael Laguna as CEO of OX, Inc., and by Ms. Monika Schroeder as CFO of OX, Inc. Unfortunately, Ms. Schroeder omitted these details in her declaration in support of OX Inc.'s motion.

OX, Inc. urges an interpretation of the OEM Agreement to mean something very different from its plain meaning. For example, OX, Inc. tries to argue that this action should proceed in Italy despite an express "Choice of Law Provision" in the OEM Agreement that specifies California law will govern the OEM Agreement and that "any legal action or proceeding with respect to this Agreement will be brought in the United States District Court for the Northern District of California or any state court located in the Northern District." As discussed below, except in the most exceptional cases, venue selection provisions such as this one are enforced in the face of *forum non conveniens* challenges. Indeed, the broad contractual provision here establishes that, far from considering this Court to be an inconvenient venue, OX, Inc. considered it a very convenient and proper choice of forum in which to resolve disputes.

But OX, Inc.'s reinterpretation of the OEM Agreement does not stop there. OX, Inc. denies its product "App Suite" is subject to the provisions of the OEM Agreement despite OX, Inc.'s own statements of work and amendments to the OEM Agreement, signed by Mr. Laguna, Mr. Carsten Dirks, (the COO of OX), or by Ms. Schroeder, adapting App Suite for use with Openwave's technology. It denies engaging in conduct, including making false statements about Openwave and its products, aimed at disrupting Openwave's business here in California. Instead, it tries to pass these

actions off as isolated incidents. OX, Inc.'s bad acts will be revealed once discovery has commenced – discovery, according to OX Inc.'s declarant Professor Mastroianni, that is not available in Italy, the forum to which OX, Inc. hopes to move this action. For the purpose of OX Inc.'s motion to dismiss, however, the Court must treat the allegations of the Complaint as true. Those allegations are sufficient to state the proffered claims here, and will be sufficiently proved by admissible evidence at trial.

## II.    BACKGROUND

Openwave is a Delaware corporation with its principal place of business in San Mateo, California. Openwave was at all times referenced in the Complaint one of the largest global providers of software and services for commercial email platforms. Complaint ("Compl.") ¶¶ 12, 15.

OX, Inc., the defendant here, is a Delaware corporation with offices in Palo Alto, California. *Id.* ¶ 16. It is the U.S. subsidiary of other Open-Xchange entities. Schroeder Declaration in support of Motion ("Schroeder Decl.") ¶¶ 1-3. OX, Inc. presently develops, markets and sells web-based communication, collaboration and office productivity software, enabling integration of email, documents, scheduling and social media on a single platform. Compl. ¶ 24.

Beginning in 2011, Openwave and OX, Inc. entered into a series of agreements, including an OEM Agreement and subsequent amendments and statements of work ("SOWs") (together, the "Agreements") pursuant to which they jointly developed and marketed OX, Inc.'s user interface products to work as part of the Openwave email platform for use by third-party customers. *Id.* ¶¶ 25, 27. These Agreements are incorporated by reference in the Complaint. *Id.*

The Agreements created a number of obligations between the parties, of which one example concerned the software "OX Hosting Edition" which was to be and subsequently was in fact, jointly developed by Openwave and OX, Inc. *Id.* ¶ 29. As part of the OEM Agreement, the parties agreed that Openwave "retain[ed] all right, title and interest to the Openwave Products and in any modifications, derivative works, extensions, plug-ins or the link, if any, of OX Hosting Edition developed for Openwave by [OX] or by Openwave on its own behalf . . . ." *Id.* ¶ 30.

The OEM Agreement and its amendments also were intended to cover future versions of and amendments or updates to OX Hosting Edition and other products. *Id.* ¶ 34. OX Hosting Edition refers generically to OX software which was further developed and designed to combine with Openwave's

hardware and software such that OX Hosting Edition provided the user interface, or "front end," and Openwave's technology provided the software "engine" or "back end" of the integrated email product. *Id*. ¶ 36. Subsequently, OX updated OX Hosting Edition and renamed it "App Suite." App Suite falls within the OEM Agreement's definition of OX Hosting Edition and was developed jointly with Openwave. Compl. ¶¶ 29-31. Consequently, Openwave has filed a complete copyright application for software used with and jointly developed as part of App Suite according to the express terms of the OEM Agreement. *Id*. ¶ 46.

As alleged more specifically in the Complaint, during the course of the business relationship between OX, Inc. and Openwave, OX, Inc. breached the Agreement, and engaged in surreptitious actions that were unlawful, contrary to its express and implied duties under the Agreements, and that damaged and continue to damage Openwave. These actions include but are not limited to, making false statements designed to undermine Openwave's business relationships (*e.g.*, *id*. ¶¶ 7, 56, 63, 70, 74, 80), infringing Openwave's copyrights, (*e.g.*, *id*. ¶¶ 56-59, 61), secretly undermining Openwave's relationship with joint customers of their joint products (*e.g.*, *id*. ¶¶ 47-75), breaching its confidentiality obligations and misappropriating Openwave's trade secrets ( *e.g.*, *id*. ¶¶ 5, 6, 44, 68, 70-79, 80, 81), and engaging in deceitful acts and omissions designed to undermine Openwave's business while misappropriating its customers and business opportunities (*e.g.*, *id*.¶¶ 1, 6, 7, 12, 38, 39, 41, 42, 44, 51-55, 57, 75, 76-79).

## A.      Standard Of Review On Motion To Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should not be dismissed if "it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). "Motions to dismiss under Fed. R. Civ. P. 12(b)(6) are disfavored and rarely granted." *Delano Farms Co. v. Calif. Table Grapes Com'n*, 623 F. Supp. 2d 1144, 1156 (E.D. Cal. 2009)(citing *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997)); *see also California Pharmacy Mgmt., LLC v. Zenith Ins*. Co., 669 F. Supp. 2d 1152, 1158 (C.D. Cal. 2009)("Rule 12(b)(6) motions are viewed with disfavor")(citing *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003)).

Under Supreme Court precedent, a complaint need only allege "enough facts to state a claim to

relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In considering a motion to dismiss for failure to state a claim, the Court must accept as true the allegations of the complaint, "construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor." *Hebbe v. Pliler*, 627 F.3d 338, 340 (9th Cir. 2010). The Court reads the complaint "as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). Moreover, "'*Twombly* and *Iqbal* do not require that the complaint include all facts necessary to carry the plaintiff's burden.'" *Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*, 690 F. Supp. 2d 959, 980 (D. Ariz. 2010)(quoting from *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009), *rev'd on other grounds*, 131 S. Ct. 2074 (2011)); *see also Motohouse Intern., LLC v. PPG Inds., Inc.*, No. 09-CV-1265-LJMA, 2010 WL 476652, at *2 (S.D. Cal. Feb. 4, 2010)(same). "'Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of wrongdoing.'" *Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045, 1051 (N.D. Cal. 2015)(quoting *Twombly*, 550 U.S. at 545). "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In deciding a motion to dismiss, the Court "ordinarily limits its review to the face of the complaint." *Glenbrook Capital Ltd. P'ship v. Kuo*, 525 F. Supp. 2d 1130 (N.D. Cal. 2007)(citing *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002)). However, the court may use plaintiff's brief "to clarify allegations in [the] complaint whose meaning is unclear." *Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, Inc., 268 F.3d 1133, 1137-38 (9th Cir. 2001)(quoting *Pegram v. Herdrich*, 530 U.S. 211, 230 & n.10 (2000)).

## III.   ARGUMENT

### A.   Openwave's Complaint Adequately Pleads A Claim For Copyright Infringement

OX Inc.'s sole argument against Openwave's claim for copyright infringement is that Openwave does not allege any copyright violations that occurred within the United States. Motion at 2:20-23, 11:15-16. OX, Inc. cites *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1090

(9th Cir. 1994)(en banc) and *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 990-91 (9th Cir. 1998), for the proposition that "wholly extraterritorial acts of infringement are not cognizable under the Copyright Act." *Subafilms*, 24 F.3d at 1090. However, this contention misstates the allegations contained in the Complaint. Openwave's Complaint not only alleges that copyright violations occurred outside the United States, it clearly alleges that violations occurred "across the globe," which reasonably includes the United States. *See* Compl. ¶ 46. Indeed, much of the software was developed here in California and OX, Inc.'s infringement is occurring here and throughout the United States – as well as abroad.

A reasonable inference from the allegations is that OX, Inc., an American company with only U.S. employees (Schroeder Decl. ¶ 2), markets and sells the infringing software in the U.S. and violated the copyrights here. *See* Compl. ¶¶ 16, 86-95; *Miller v. Facebook, Inc.*, No. 10-cv-00264-WHA, 2010 WL 2198204, at *6 (N.D. Cal. May 28, 2010)( plaintiff's proposed complaint sufficiently pled a claim for copyright infringement within the United States; "it would not be a reasonable inference at the pleading stage to conclude from the facts as alleged that the acts of unauthorized distribution of the ChainRxn video game to Facebook users occurred entirely beyond our shores, even assuming defendant Yeo 'reproduced' the game outside the United States."); *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 225 (S.D.N.Y. 2002)(holding that plaintiff pled a valid claim for federal copyright infringement; "[w]hile the complaint does not specifically allege that the Vrooms' alleged infringement occurred within the United States, when adjudicating the defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6), all reasonable inferences from the complaint's factual allegations must be drawn in favor of the plaintiff."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)("[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")(citing *Twombly*, 550 U.S. at 556). As such, Openwave has adequately pled a claim for copyright infringement. *Subafilms*, 24 F.3d at 1098 (holding that acts of infringement that are not wholly extra-territorial are actionable under the U.S. Copyright Act).

OX, Inc. relies on cases where it was undisputed that the alleged copyright violations – unlike here – occurred solely *outside* the United States. *See Raima, Inc. v. Myriad France, SAS*, No. 12-116,

2012 WL 6201709, at *3 (W.D. Wash. Dec. 11, 2012)(dismissing a copyright claim brought against a foreign entity because neither party disputed that all allegedly infringing acts took place outside the United States); *Geophysical Services v. TGS-Nopec Geophysical Services*, No. 14-cv-1368, 2015 WL 6869733, at *8 (S.D. Tex. Nov. 9, 2015)(dismissing claim where plaintiff alleged that copyright infringement occurred solely outside the United States). By contrast, Openwave disputes OX, Inc.'s mischaracterization of the facts as it has clearly alleged copyright infringement both within and outside the United States.

Even if the court were to accept OX, Inc.'s argument alleging that it only licensed or attempted to license software to companies outside the United States, which Openwave denies, OX Inc.'s own case law cuts against dismissing Openwave's copyright claim. *See* Motion at 12-13. In *Shropshire v. Canning*, 809 F. Supp. 2d 1139 (N.D. Cal. 2011), the court denied defendant's motion to dismiss, where the defendant, a Canadian resident who posted a video on YouTube that contained an audio track of plaintiff's U.S. copyrighted song, had argued that the alleged infringing act –uploading an infringing video to YouTube – took place in Canada. The Court, however, ruled that "the alleged act of direct copyright infringement – uploading a video from Canada to YouTube's servers in California for display within the United States – constitutes an act of infringement that is not 'wholly extraterritorial' to the United States." *Id.* at 1147. As noted in *Shropshire*, even foreign acts of infringement are actionable so long as the conduct is completed in the United States. *Id.* at 1145-6.

As in *Shropshire,* here holders of Virgin Media email accounts (which plaintiff alleges contains infringing software) can access the infringing email interface software which presents and makes available a presentation layer viewed by users that downloads portions of code to a U.S.-based device. Those portions of code allow the execution of sub-tasks that make the email system work for users in the United States. *See* Exh. A to Declaration of Cathleen Donohoe ("Donohoe Decl."), and Request for Judicial Notice ("RJN"), filed concurrently herewith (screen print of Virgin Media's website allowing persons within the United States to access the infringing software); *Shropshire*, 809 F. Supp. 2d at 1146 (citing *United Feature Syndicate*, 216 F. Supp. 2d at 225 (denying defendants' motion to dismiss a copyright claim based on factual allegations, and reasonable inferences in support thereof, that "allegedly infringing material was accessible from computers within the United States."));

*see also MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 519 (9th Cir. 1993)(holding that copyright infringement occurs each time a computer program is opened without the copyright owner's authorization because this act creates an unauthorized copy in the computer's random access memory); *Design Data Corp. v. Unigate Enterprise, Inc.*, 63 F. Supp. 3d 1062, 1069 n.7 (N.D. Cal. 2014)(noting "that 'copying' of a computer program occurs each time the program is 'opened without the copyright owner's authorization.'")(citation omitted). Thus, Openwave has properly stated a claim for copyright infringement.

### B.   Openwave Has Adequately Pled False Advertising Claims Under The Lanham Act

#### 1.   This Court Has Jurisdiction To Hear Openwave's Lanham Act Claims

In *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014), the U.S. Supreme Court announced a new test for whether a plaintiff has standing to bring false advertising claims under the Lanham Act. The Court held that to state a claim for false advertising under the Lanham Act a plaintiff must allege an injury to a commercial interest in reputation or sales, where that injury is proximately caused by violations of the statute. *Id*. at 1390. The Court noted that "a typical false-advertising case will implicate only the Act's goal of 'protect[ing] persons engaged in [commerce within the control of Congress] against unfair competition.'" *Id*. at 1389.

In *Lexmark*, the Court observed that "lost sales and damage to . . . business reputation – are injuries to precisely the sorts of commercial interests the Act protects." *Id*. at 1393. Although Lexmark and Static Control were not direct competitors, the Court found that because Static Control alleged that Lexmark disparaged its business and products by asserting that Static Control's business was illegal, Lexmark had proximately caused injury to Static Control. *Id*. 1393-94.

In this case, Openwave has alleged damage in the form of lost business and damage to its reputation proximately caused by OX, Inc.'s disparagement of Openwave's products and services. *See*, *e.g.,* Compl. ¶¶ 44-45. Openwave further has alleged that OX, Inc. is a direct competitor who employed these false statements as a means by which it supplanted Openwave's products and services with its own. *Id*.   Thus, both prongs of *Lexmark* are satisfied. Indeed, the situation here is what the Supreme Court in *Lexmark* referred to as, "the 'classic Lanham Act false-advertising claim' in which

1    'one competito[r] directly injur[es] another by making false statements about his own goods [or the

2    competitor's goods] and thus inducing customers to switch.'" *Id.* at 1393.

3              **2.      The Court Has Jurisdiction Over OX, Inc.'s False Advertising**

4              The Lanham Act provides a "broad jurisdictional grant." *Reebok Intern. Ltd. v Marnatech*

5    *Enterprises Inc.*, 970 F.2d 552, 554 (9th Cir. 1992)(quoting *Steele v. Bulova Watch Co.*, 344 U.S. 280,

6    286 (1952)). As the Supreme Court observed in *Lexmark*, the relevant inquiry is whether a claim is

7    within the "zone of interest" protected by the Lanham Act. *Lexmark*, 134 S. Ct. at 1389. The Court

8    held that to come within the zone of interest, a plaintiff need only allege an injury to a commercial

9    interest in reputation or sales. *Id.* at 1390. As the Ninth Circuit has said, "the extraterritorial coverage

10   of the Lanham Act should be gauged not so much by the locus of the activity sought to be reached . . .

11   as by the nature of its effect on that commerce which Congress may regulate." *Wells Fargo & Co. v.*

12   *Wells Fargo Exp. Co.*, 556 F.2d 406, 428 (9th Cir. 1977)(citing *Steele*, 344 U.S. at 286).

13             Here, as alleged in the Complaint, both Openwave and OX, Inc. are companies incorporated

14   and doing business in the U.S., and therefore are involved in commerce in the United States. Compl.

15   ¶¶ 15-16. Openwave is alleging harm to its business and reputation as a proximate result of false

16   statements by OX, Inc. Although the examples alleged in the Complaint occurred in foreign locations,

17   they were done on behalf of a U.S. corporation in order to help that corporation's business and to hurt

18   Openwave here in the United States. The Court should look no further to determine that Openwave

19   has properly stated a claim under section 43(a) of the Lanham Act (15 U.S.C. section 1125(a)).

20             Even if the Court is not persuaded by Openwave's argument above, an analysis of the three-

21   part test identified by OX, Inc. in its Motion (sometimes referred to as the "*Timberline* test") to

22   determine the Lanham Act's coverage of foreign activities also supports the Court's jurisdiction over

23   the Lanham Act claims here. The *Timberline* test states: (1) "there must be some effect on American

24   foreign commerce"; (2) "the effect must be sufficiently great to present a cognizable injury to

25   plaintiffs under the federal statute"; and (3) "the interests of and links to American foreign commerce

26   must be sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial

27   authority." *Reebok Intern., Ltd.*, 970 F.2d at 555 (*quoting Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*,

28   769 F.2d 1393, 1395 (9th Cir. 1985)).

The first two parts of the *Timberline* test are easily met. Openwave has alleged that there has been an effect on American foreign commerce and that it has suffered injury sufficiently great to amount to a cognizable injury under the Lanham Act. Openwave has alleged that it is a Delaware corporation with its principal place of business in San Mateo, California, doing business in the U.S. and internationally, and that OX, Inc. is Delaware corporation with offices in Palo Alto, California. Compl. ¶¶ 15, 16. Openwave has further alleged that it has been damaged financially and otherwise by OX, Inc.'s false advertising and promotion in violation of the Lanham Act. *Id.* ¶¶ 53 (Openwave "lost the benefits of a more than $20 million contract and incurred additional damages in the millions of dollars"); 96-107 (Openwave has suffered monetary damages and irreparable injury including loss of goodwill resulting from OX, Inc.'s violations of the Lanham Act); ¶ 12 (OX, Inc. has caused damage to Openwave's reputation with existing clients and in the marketplace); ¶ 65 (by OX, Inc.'s actions Openwave has been exposed to material monetary penalties from Customer A). These allegations are sufficient to satisfy the first two parts of the *Timberline* test. *See, e.g.*, *Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601, 613 (9th Cir. 2010)("the first two criteria may be met even where all of the challenged transactions occurred abroad . . . as long as 'there is monetary injury in the United States' to an American plaintiff")(*quoting Ocean Garden, Inc. v. Marktrade Co. Inc.*, 953 F.2d 500, 503 (9th Cir. 1991)).

OX Inc.'s argument that Openwave's alleged injuries in the U.S. are "too tenuous" to meet the third prong of the test is based on cases that are readily distinguishable. In *Love* the Court determined that plaintiff had failed to present evidence that the complained of infringing CD distribution overseas caused him any measurable monetary injury in the United States. *Love*, 611 F.3d at 613. In stark contrast, here Openwave has alleged that it lost more than $20 million in revenue that it would have earned here in California as a result of OX, Inc.'s false advertising and promotion. Compl. ¶¶ 53, 96-107.

*Trader Joe's v. Hallatt* is distinguishable on similar grounds. There, the plaintiff complained that customers in Canada might be confused when shopping at "Pirate Joe's," but could not show any related economic harm. *Trader Joe's v. Hallatt*, 981 F. Supp. 2d 972, 977 (W.D. Wash. 2013).

OX Inc. also argues for dismissal based on consideration of the seven factors considered in balancing the third prong of the *Timberlane* test. Those factors are:

> [1] the degree of conflict with foreign law or policy, [2] the nationality or allegiance of the parties and the locations or principal places of business of corporations, [3] the extent to which enforcement by either state can be expected to achieve compliance, [4] the relative significance of effects on the United States as compared with those elsewhere, [5] the extent to which there is explicit purpose to harm or affect American commerce, [6] the foreseeability of such effect, and [7] the relative importance to the violations charged of conduct within the United States as compared with conduct abroad.

*Reebok,* 970 F.2d at 555.

OX Inc.'s analysis of these seven factors (Motion at 17-18) is at best disingenuous. With regard to the first factor, there is no potential conflict with foreign law or policy should Openwave's Lanham Act claim proceed here, as there are no related proceedings pending against OX, Inc. elsewhere. *See, e.g., Ocean Garden*, 953 F.2d at 504 (finding this factor weighing in favor of jurisdiction because "there are no pending proceedings in Hong Kong or Taiwan"); *Trader Joe's*, 981 F. Supp. 2d at 978-79 ("where there is no related pending proceeding in the foreign country at issue, there is little risk of conflict with foreign law or policy")(citing *Best Western Int'l v. 1496815 Ont., Inc.*, No. CV 04 1194 PHX SMM, 2007 WL 779699, *6 (D. Ariz. Mar. 13, 2007)).

The second and third factors also weigh strongly in favor of retaining jurisdiction here. It is apparent from the face of the Complaint that a Delaware corporation with its principal place of business in San Mateo, California has filed suit against another Delaware corporation, with an office located in Palo Alto, California. Compl. ¶¶ 15-16. Any decision rendered by this Court would be fully enforceable against the OX, Inc. *See, e.g., Reebok,* 970 F.3d at 556-57 (concluding the second and third factors weighed in favor of retaining jurisdiction because, among other things, the bulk of the parties are U.S. corporations, with substantial contracts and offices in the U.S.); *Ocean Garden*, 953 F.2d at 504 (holding that the sought-after injunction would be effective against the defendant, a U.S. corporation). Thus, the second and third factors weigh heavily in favor of retaining jurisdiction.

The remaining four factors also weigh in favor of application of the Lanham Act. Openwave's injuries from OX, Inc.'s wrongdoing have been suffered in the U.S. As alleged, OX, Inc.'s intention by its actions has been to garner business for itself at the expense of Openwave. Thus, the harm to U.S. commerce is present, as is its foreseeability. *See, e.g., Ocean Garden*, 953 F.2d at 504 (the fourth

factor weighed in favor of retaining jurisdiction because defendant was a U.S. corporation "and therefore the losses involved affect a domestic corporation. . . ."; as to the fifth factor, "[t]here is evidence that [the] infringing acts were intentional;" as to the sixth, "[b]ecause the above five factors weigh in [plaintiff's] favor, such effect was foreseeable," and as to the seventh, among other things, "[a]gain, [plaintiff] is a U.S. corporation and is hurt by the infringement.").

Lastly, OX, Inc.'s argument that the Lanham Act claim sounds in fraud and has not been pled with requisite particularity (Motion at 14, n.9) should be disregarded. "A claim is said to be "grounded in fraud" or "'sound[] in fraud'" where a plaintiff alleges that defendant engaged in "a unified course of fraudulent conduct" and relies "entirely on that course of conduct as the basis a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). "In that event, . . . the pleading of that claim as a whole must satisfy the particularity requirement of [Fed. R. Civ. P.] 9(b)." *Id.* at 1104. Openwave's Lanham Act claim does not rely on fraudulent conduct as the basis for its claim. Openwave has alleged that OX, Inc. personnel have made several false statements to Openwave's customers and potential customers; it has not alleged material misstatements or omissions to Openwave as an element of this claim. Compl. ¶¶ 10-11, 51, 63, 71, 74. The existence of those false statements do not rely solely on a "unified course of fraudulent conduct," for their existence and fraud in not an essential element of Openwave's false advertising claim. *Vess*, 317 F.3d at 1104-05. "[W]here fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b). Allegations of non-fraudulent conduct need satisfy only the ordinarily notice pleading standards of Rule 8(a)." *Id.* at 1105. Openwave is not claiming that OX, Inc. defrauded it by way of the false statements alleged in the Complaint. It is alleging that the false statements proximately damaged its business based in the U.S. Moreover, even if Openwave were required to plead its Lanham Act claim under the heightened pleading standard of Fed. R. Civ. Proc. 9(b), it has met that burden, as explained in section E below.

### 3.    The Alleged Statements Are Actionable

In its Motion, OX, Inc. argues that the series of false statements alleged in the Complaint do not constitute "commercial advertising or promotion" as a matter of law. That assertion is not correct. OX, Inc. provides an abridged definition of "commercial advertising or promotion." Motion at 13. The

full text of the *Coastal Abstract* factors defining "commercial advertising or promotion" reads:

> (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be in a "classic advertising campaign," but may consist of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Coastal Abstract Service, Inc. v. First American Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999).

In *Coastal Abstract,* the Ninth Circuit affirmed the lower court's ruling that "promotion" existed where plaintiff alleged only a single representation made to a single customer, because there was only a small number of potential customers in the relevant purchasing public (in that case, nationwide refinancing operations). *Id.* In support of its conclusion, the Ninth Circuit quotes the Fifth Circuit: "Where the potential purchasers in the market are relatively limited in number, even a single promotional presentation to an individual purchaser may be enough to trigger the protections of the Act." *Id.* (quoting *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1383 (5th Cir. 1996)).

OX, Inc. is incorrect in asserting that Openwave has pled a "large and expansive relevant purchasing public." Motion at 14 n.8. While Openwave did allege that there are "more than four billion email accounts in the world today," Compl. ¶ 21, those email account users are not Openwave's customers. The "relevant purchasing public" for Openwave's custom built email systems are limited to "large telecommunications carriers and providers" who are in the market for "commercial email platforms." *Id.* There are in fact a relatively limited number of such carriers and providers who are potentially in the market for Openwave's products, a fact that discovery in this case will easily establish (and which OX, Inc. in fact is well aware of).

The cases OX, Inc. cites for the proposition that "isolated statements made to actual or potential customers about a competitor simply do not constitute commercial advertising or promotion" (Motion at 14:1-10), are not controlling authority, and are readily distinguishable. Moreover, the statements at issue here were not isolated. Here, Openwave has alleged that OX, Inc. made a series of false statements to specific current and potential Openwave customers in an attempt to gain the business for itself. Compl. ¶ 51; *see also id.* ¶¶ 7, 10-11, 96-107.

*Garland Co. Inc. v. Ecology Roof Systems Corp.*, 895 F. Supp. 274, 276-77 (D. Kan. 1995) is a

1995 District of Kansas opinion that pre-dates the Ninth Circuit's opinion in *Coastal Abstract* and applies a different standard than the one applied in the Ninth Circuit under *Coastal Abstract.*

In *Crossfit Inc. v. Alvies*, the court found that an isolated email from a single person to a reader of defendant's blog did not constitute "'an organized campaign to penetrate the market,'" and gave Alvies leave to amend to explain how any disparaging statements were disseminated to the purchasing public. *Crossfit Inc. v. Alvies*, No. 13-3771-SC, 2014 WL 251760, at *4 (N.D. Cal. Jan. 22, 2014). Here, by contrast, Openwave has alleged multiple communications by employees of a single competitor.

In *Walker & Zanger, Inc. v. Paragon Industries, Inc.*, 549 F. Supp. 2d 1168, 1182 (N.D. Cal. 2007), the court concluded that "[a] handful of statements to customers does not trigger protection from the Lanham Act unless 'the potential purchasers in the market are relatively small in number.'" *Id.* (*quoting Coastal Abstract*, 173 F.3d at 735). Here, large telecommunication companies in the market for customized email systems are "relatively small in number." Moreover, *Walker & Zanger* was decided on summary judgment. As the Ninth Circuit pointed out in *Newcal Indust. Inc. v. Ikon Office Solution*, 513 F.3d 1038 (9th Cir. 2008), in reversing the district court's dismissal of a Lanham Act claim, "[w]hether the relevant statements were 'disseminated sufficiently to the relevant purchasing public' [within the meaning of *Coastal Abstract*] . . . may turn out to be true or false, but the allegation survives for purposes of stating a claim. . . . [Plaintiff] must be given the opportunity to prove that the alleged statements were made in commercial advertising." *Id.* at 1054.

The unreported cases that OX, Inc. cites for the proposition that Openwave has not alleged that the statements "were widely disseminated to the purchasing public in commercial advertising or promotion" (Motion at 14:11-15:9), likewise do not support dismissal. In *New Show Studios,* the court held that the plaintiff's Lanham Act claim failed because plaintiffs failed to allege they were part of a competing business and did not allege statements were made by defendants "in commercial competition with plaintiff[s]." *New Show Studios LLC v. Needle*, No. 14-cv-01250, 2014 WL 2988271, at *16 (C.D. Cal. June 30, 2014).

Similarly, in *Oracle v. Terix*, No. 13-cv-03385-PSG, 2014 WL 5847532 at *10-11 (N.D. Cal. Nov. 7, 2014), the court held that plaintiffs alleged only recitations of Lanham Act elements without

supporting facts. Here, by contrast, Openwave has identified numerous specific factual misstatements. *See* Compl. ¶¶ 21, 51, 63-65, 71, 74. In sum, Openwave has sufficiently pled "commercial advertising or promotion" under controlling Ninth Circuit precedent by identifying numerous specific misstatements made by OX, Inc. to at least three important existing and potential customers of Openwave within the highly-concentrated relevant industry of "large telecommunications carriers and providers" who are in the market for customized "commercial email platform[s]" that were "sufficiently disseminated to the relevant purchasing public to constitute . . . 'promotion' within that industry." *Coastal Abstract*, 173 F.3d at 735. *See* Compl. ¶¶ 21, 51, 63-65, 71, 74. In light of these facts alleged, which must be taken as true on a motion to dismiss, Openwave has sufficiently alleged "an organized campaign to penetrate the market," involving a "promotion" within the meaning of the Lanham Act.[1] Accordingly, OX Inc.'s Motion to Dismiss Openwave's Lanham Act claims should be denied.

**C.    The Court Should Reject OX Inc.'s Forum Non Conveniens Arguments**

      **1.    The Court Should Enforce The Parties' Forum Selection Provision In The OEM Agreement**

The OEM Agreement contains a "Choice of Law" provision at §15.2. In addition to specifying that the Agreement will be "governed and construed in accordance with the laws of the State of California" that section also states that "[a]ny legal action or proceeding with respect to this Agreement will be brought in the United States District Court for the Northern District of California or any state court located in such Northern District." "[T]he party challenging a forum selection clause bears a heavy burden of showing that trial in the chosen forum would be so difficult and inconvenient that the party would effectively be denied a meaningful day in court." *Gamayo v. Match.com LLC*, No. 11-cv-00762-SBA, 2011 WL 3739542, at *3 (N.D. Cal. Aug. 24, 2011). In *Atl. Marine Const. Co. v. U.S. Dist. Court for Western Dist. of Texas*, 134 S. Ct. 568, 581 (2013), the U.S. Supreme Court held that "[t]he 'enforcement of valid forum-selection clauses, bargained for by the parties, protects their

---

[1] Fact discovery will be needed to determine such things as the nature and quantity of false statements made, to whom the statements were made and how often, and factual details and potential expert opinion regarding the size and scope of the "relevant industry." *See, e.g., Newcal Indust.*, 513 F.3d at 1054 (reversing motion to dismiss Lanham Act claim, because plaintiff must be given the opportunity to present evidence in support of its allegations).

legitimate expectations and furthers vital interests of the justice system.'  For that reason . . . a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.* at 581 (*quoting Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)(Kennedy, J., concurring)). The Court continued, "[w]hen parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain." *Id.* at 583. That bargain should be enforced here and OX Inc.'s authorities are inapposite.

The OEM Agreement was negotiated by the parties to this lawsuit and was signed by Rafael Laguna de la Vera as "Chief Executive Officer of Open-Xchange, Inc." (the U.S. entity). "While a court typically must weigh both private and public interest factors in deciding a motion to transfer, 'when the parties' contract contains a valid forum-selection clause, that clause represents [their] agreement as to the most proper forum' and is generally given deference over other factors." *Zako v. Hamilton Co.*, No. 15-cv-03162-EJD, 2016 WL 344883, at *2 (N.D. Cal. Jan. 28, 2016)(*quoting Atl. Marine*, 134 S. Ct. at 581). Courts addressing whether transfer/dismissal is appropriate "must begin by acknowledging that there is a strong judicial policy favoring enforcement of forum-selection clauses." *Zako*, 2016 WL 344883, at *3 (citing *E. & J. Gallo Winery v. Andin Licores S.A.*, 446 F.3d 984, 992 (9th Cir. 2006)). "The prevailing view is that 'such clauses are prima facie valid and should be enforced' unless the opposing party demonstrates that enforcement would be 'unreasonable under the circumstances.'" *Id.* (*quoting M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). In *Zako*, once the court determined that the forum-selection clause applied to plaintiff's claim, it held that "further analysis of the convenience of the parties or the various public-interest factors . . ." was unnecessary. *Id.* at *6; *see also Cung Le v. Zuffa, LLC*, 108 F. Supp. 3d 768, 774-775 (N.D. Cal. 2015)("[T]he contractual designation of a particular forum for the resolution of disputes is presumptively valid and should be enforced.")(citations omitted).

Openwave's claims 3 (trade secret misappropriation), 6 (tortious interference with contract), 7 (tortious interference with prospective business advantage), 8 (false advertising), 9 (unfair competition under Cal. Bus & Prof. Code), 10 (common law unfair competition) and 11 (fraud) should not be dismissed for the further reason of judicial economy. OX, Inc. is not moving to dismiss claims 4 and 5 alleging breach of contract and breach of the implied covenant of good faith. Moreover, as discussed above in sections A and B, Openwave's copyright and Lanham Act claims should not be dismissed. Declining to exercise jurisdiction over some but not all of the claims that arise out of the same contractual relationship, breaches and acts of misconduct would be inefficient and unfair.

Dismissal also should be denied to avoid the risk of inconsistent judgments. Resolution of those claims that OX, Inc. has moved to dismiss depends largely on an interpretations of the parties' obligations under the OEM Agreement.

### 2.     The Forum Selection Provision Is Not Unreasonable

"A forum selection clause is unreasonable if (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so 'gravely difficult and inconvenient' that the complaining party will 'for all practical purposes be deprived of its day in court,' or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought." *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996)(internal citations omitted). Here, OX, Inc. has not alleged that any of these factors are met. Instead, OX, Inc. is playing a "shell game" with its officers and employees, claiming no connection with California, despite documents incorporated by reference in the Complaint suggesting that European and U.S. operations are inexorably bound together. For example, Mr. Laguna clearly signed the OEM Agreement as the CEO of the U.S. entity, OX, Inc. Interestingly, Mr. Laguna also is listed as Chief Executive Officer of "OX," apparently including all corporate entities, on the company's web site at: https://www.open-xchange.com/company/management-team. *See* Donohoe Decl. Exh. B; RJN.

The same holds true for Ms. Schroeder, who states in her declaration signed under oath, that she is an officer of Open-Xchange GmbH and a director of Open-Xchange S.r.l. since "2008 and 2015, respectively." She does not identify her position as CFO of Open-Xchange, Inc., the U.S. entity, despite her signature on five Statement of Work agreements incorporated by reference in paragraph 27

of the Complaint, which identifies her as such, and a corporate document filed with the Delaware Secretary of State identifying her as the CFO of OX, Inc. *See* Declaration of Joseph Campbell ("Campbell Decl.") ¶¶ 11-15 and Exhs. A-E thereto; Donohoe Decl. ¶ 7 and Exh. E thereto; RJN. So too, she claims to work "primarily in Germany" and that OX, Inc. has no employees outside the U.S. (Schroeder Dec. ¶¶ 2,10), but her signature authorizing SOWs as an officer and representative of Open-Xchange, <u>Inc.</u> means either that she herself was an employee working within the U.S. during the relevant time period, or that she was an employee of OX, Inc. outside the U.S., despite  her declaration stating that OX, Inc. does not have employees, and by implication, conducts no business, outside the U.S. *See* Schroeder Decl. ¶ 2.

The Court should not reward OX, Inc. by allowing it to hide behind protean corporate identities, but should allow the litigation to proceed in this Court consistent with the forum selection clause negotiated and agreed upon by OX, Inc. so that Openwave can get discovery into the true corporate form and officers of OX, Inc. and, if appropriate, pierce the corporate veil.

### 3.   The Forum Selection Provision Applies To All of Openwave's Claims And Should Be Construed Broadly

OX, Inc. further argues that the language of the choice of forum provision should be narrowly construed because the phrase "with respect to this agreement" as used in that clause does not pertain to any of Openwave's claims except breach of contract and breach of the implied duty of good faith and fair dealing. However "[u]nless the language or terms of the contract express otherwise, a forum-selection clause will apply to claims that arise from or relate to the contract containing the clause." *Zako*, 2016 WL 344883, at *3 (citing *Graham Tech. Solutions, Inc. v. Thinking Pictures, Inc.*, 949 F. Supp. 1427, 1433 (N.D. Cal. 1997)).

Merriam-Webster.com defines the phrase, "with respect to," to mean, "about or concerning" and "in relation to." *See* Donohoe Decl. Exh. C; RJN. The term "with respect to" has also been judicially construed to be the equivalent of "relating to." *See Scott v. Lopez*, No. 12-cv-01456-HRL, 2013 WL 1182957, at *3 (N.D. Cal. Mar. 21, 2013). While the Ninth Circuit has not construed the term "with respect to," it has very broadly construed "relating to," which *Scott* and Merriam Webster deem to be synonymous with "with respect to." In *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647

F.3d 914, 922 (9th Cir. 2011), the Ninth Circuit explained that a forum selection clause applicable to claims "relating to" a contract should be very broadly construed (in contrast to venue selection clauses that instead use the terms "arising under," "arising out of," or "arising hereunder," which should be narrowly construed to encompass only disputes "relating to the interpretation and performance of the contract itself. . . ."); *see also Perry v. AT & T Mobility LLC*, No. 11-cv-01488-SI, 2011 WL 4080625, at *3 (N.D. Cal. Sept. 12, 2011)(citing *Cape Flattery* in holding that a forum-selection clause's use of phrase "relating to" provided for broad interpretation of its scope). For all of these reasons, the forum selection provision should be broadly construed to apply to all of Openwave's claims.

### 4. OX, Inc. Has Not Met Its Heavy Burden To Justify A Forum Non Conveniens Dismissal Of This Matter

OX, Inc. argues that Italy is a more convenient forum even though the acts and omissions at issue have a far greater connection to the United States. When evaluating a motion to dismiss for *forum non conveniens*, the Court must hold defendant to its burden of making a clear showing of facts that establish oppression and vexation out of proportion to plaintiff's convenience. *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1236 (9th Cir. 2011)(quoting *Boston Telecoms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1212 (9th Cir. 2009); *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984)). "[F]orum non conveniens [is] an exceptional tool to be employed sparingly." *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000).

When the plaintiff is a U.S. citizen or resident, the plaintiff's choice of his home forum should be accorded deference. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257 (1981). When a domestic plaintiff initiates litigation in its home forum, it is presumptively convenient. *Carijano*, 643 F.3d at 1227 (holding that where the plaintiff is a U.S. citizen, the defendant must satisfy a heavy burden of proof); *Boston Telecoms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1207 (9th Cir. 2009)("unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed . . .") (*quoting Gates*, 743 F.2d at 1334-35)). "To prevail on a motion to dismiss based upon forum non conveniens, a defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal." *Carijano*, 643 F.3d at 1224. The Court weighs the following private interest factors: (1) the residence of the parties and the witnesses; (2) the

forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001). Here, all of these factors weigh against granting OX, Inc.'s Motion.

(1) Residence of the parties and the witnesses:  "[T]he focus for this private interest analysis should not rest of the number of witnesses . . . in each locale but rather the court should evaluate the materiality and importance of the anticipated . . . witnesses' testimony and then determine their accessibility and convenience to the forum."  *Carijano*, 643 F.3d at 1231 (*quoting Boston Telecomms.*, 588 F.3d at 1209) (internal quotation marks omitted). OX, Inc. asserts, with no evidentiary support, that the "true parties in interest on the non-contract claims are foreign entities." Motion at 20. This statement mischaracterizes plaintiff's claims and the gravamen of the Complaint. The claims that OX, Inc. is luring away Italian employees in a single office, and misappropriating trade secrets is only a small part of Openwave's allegations of unfair, deceptive and anti-competitive activities in multiple locations "across Europe" and "across the globe." *See, e.g.,* Compl. ¶¶ 80-85; *see also* Campbell Decl. ¶¶ 7-9. Therefore, while some third-party witnesses may reside in foreign countries, not necessarily Italy, the nexus of the dispute is in California where both Openwave and OX, Inc. are located, which is the forum whose law is to be applied, and where much of discovery can be obtained using avenues regularly employed by Federal Courts. *See* Campbell Decl. ¶¶ 5-8.  Importantly, however, the material witnesses are Mr. Laguna, who signed the OEM Agreement and other officers, directors and employees of OX, Inc., the American entity who negotiated the OEM Agreement and SOWs and who assisted in the integration and modification of the OX and Openwave technologies. OX Inc.'s arguments in favor of the Italian forum fail to provide enough information to determine the materiality and importance of witnesses there, and do not even attempt to identify all anticipated witnesses in the forum. Thus, OX Inc.'s argument is insufficient to carry their burden. *See Carijano*, 643 F.3d at 1231; *Boston Telecomms.*, 588 F.3d at 1210.

(2) Convenience of the litigants:  "[A] plaintiff need not select the optimal forum for his claim, but only a forum that is not so oppressive and vexatious to the defendant 'as to be out of proportion to

plaintiff's convenience." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1180 (9th Cir. 2006) (quoting *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000)). Northern California is a much more convenient venue for Openwave than Italy. *See* Campbell Decl. ¶¶ 5-6, 10. Much as OX insists otherwise, the named defendant in this matter is OX, Inc., a U.S. corporation with offices in Palo Alto, California, which is incorporated in Delaware and which negotiated and agreed to the OEM Agreement underpinning all of the claims in this litigation, the Agreement that provides for dispute resolution here in the Northern District of California. It is OX, Inc. with which Openwave has a contract, OX, Inc. which ultimately owes the duties Openwave alleges were breached, and OX, Inc. which agreed presumptively to the convenience and desirability of the Northern District of California as the forum specified in the OEM Agreement's choice of forum provision. OX, Inc. hardly can protest now or credibly claim inconvenience.

(3) Access to physical evidence and other sources of proof: The majority of Openwave's documents relevant to this litigation are housed in California, which is also where the majority of Openwave's witnesses are located. Campbell Decl. ¶¶ 5-6. Presumably, OX, Inc.'s documents also are located in the U.S. To the extent evidence is located outside the Northern District of California, and outside the parties' control, there are procedures available for obtaining such evidence. Federal litigants in the U.S. also may use the mechanisms of the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters ("Hague Convention"). Furthermore, while OX, Inc. has identified Italy as the forum in which it would now prefer to litigate (presumably to avoid U.S. discovery of email which will document and chronicle OX, Inc.'s infringement and misconduct), there are numerous other countries where evidence may reside and Italy has not been shown to be superior to any of them. In fact, according to the Declaration of Professor Mastroianni, Italy is a far less adequate forum as it "does not provide for discovery or disclosure." Mastroianni Declaration ¶ 17. Instead, production of physical evidence appears to be at the discretion of a party. This factor alone may explain OX, Inc.'s choice of Italy as a forum, but it would materially prejudice Openwave. "Forcing a party to litigate a suit under circumstances restricting access to proof is 'oppressive.'" *STM Group, Inc. v. Gilat Satellite Networks Ltd.*, No. 11-cv-0093-DOC-RZx, 2011 WL 2940992, at *7 (C.D. Cal. July 11, 2011).

(4) Whether unwilling witnesses can be compelled to testify: As with physical evidence, the Italian process seems to allow for less flexibility and opportunity for discovery than what is available here in the Northern District of California, where OX, Inc. agreed to litigate disputes with Openwave. *See* Mastroianni Decl. ¶ 20. As with Italy, federal litigants in the U.S. also may use the mechanisms of the Hague Convention to obtain testimony. *See id.* ¶ 27.

(5) The cost of bringing witnesses to trial is the same for Openwave with respect to Italy as it is for OX, Inc. with respect to the U.S., however the cost avoided by OX, Inc. litigating in Italy is only marginal since the Complaint alleges unlawful activities in many locations thus requiring witness travel between the UAE, Asia-Pacific and the United Kingdom, among other places – and of course the United States, where Openwave and OX, Inc. both have offices, where most of Openwave's documents and many of its witnesses are located, and where much of OX, Inc.'s copyright infringement took place.  *See* Campbell Decl. ¶¶ 4-10.

Finally, with respect to (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive: it does not appear that Italy is in any way superior to this Court. Given that OX, Inc. is present in the U.S., enforcing a judgment against the U.S. entity should be easier here.

### D.   Public Interest Factors Weigh In Favor Of Dismissal

As stated above, OX, Inc. also bears the burden of showing the public interest factors favor transfer. Those factors are: "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Tuazon*, 433 F.3d at 1181 (citing *Lueck*, 236 F.3d at 1147).

(1)   Local interest in the lawsuit:  The U.S. Supreme Court has held that "[t]here is a local interest in having localized controversies decided at home." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947). Openwave is a U.S. company, thus there is a strong local interest in this lawsuit for this reason alone. By contrast, Italy's interest in this lawsuit only is minimal; Openwave's affiliated entity has a small office there, and only a small percentage of the wrongdoing detailed in the Complaint took place in Italy. *See* Campbell Decl. ¶¶ 7, 9.

1    (2)   The Court's familiarity with the governing law: According to the OEM Agreement, all

2  matters "with respect to" the Agreement shall be governed by California law. As argued above, that

3  should apply to all claims raised in this lawsuit. Openwave's federal claims and contract claims will be

4  governed by U.S. law and California law respectively. There is no reason to believe that a court in

5  Italy would be better able to adjudicate claims of U.S. and California law than this Court.

6    (3)   The remaining public interest factors (3, 4, and 5) "all relate to the effects of hearing the

7  case on the respective judicial systems." *Carijano*, 643 F.3d at 1232. According to the uscourts.gov

8  website, the median time to trial for civil cases is 24.6 months in the Northern District of California.

9  *See* Donohoe Decl. Exh. D; RJN.  According to the Declaration of Prof. Mastroianni, "the standard

10  duration of ordinary proceedings is between 2 and 3 years."  Mastroianni Decl.  ¶ 14. Italy does not

11  appear to offer more efficiencies or place less burden or cost on courts and juries.

12    Based on a review of the factors here, and the strong presumption in favor of Openwave's choice

13  of forum, this matter should remain in the Northern District of California.

14   **E.   Openwave Has Sufficiently Pled Claims Eight Through Eleven**

15      **1.   Claims Eight Though Ten Do Not Sound In Fraud, And Thus, Are Not
            Subject To The Heightened Pleading Requirements Of Rule 9(b)**

16

17    OX Inc.'s assertion that Openwave's claims eight through ten must be pled with particularity is

18  incorrect. It is only "where fraud is an essential element of a claim" that allegations of fraudulent

19  conduct must satisfy the heightened pleading requirements of Rule 9(b). *Vess*, 317 F.3d at 1104-05.

20  Fraud is not an essential element of Openwave's claims for false advertising under California Business

21  and Professional Code section 17500 (claim eight), unfair competition under California Business and

22  Professional Code section 17200 (claim nine), and common law unfair competition (claim ten). These

23  claims do not sound in fraud, as each of the elements of those claims can be established without

24  fraudulent intent. *Compare* claims eight through ten (Compl. ¶¶ 150-176) *with* Openwave's fraud

25  claim (*id.* at ¶¶ 177-187). Accordingly, the allegations in claims eight through ten are not subject to

26  Rule 9(b)'s heighted pleading requirements. *Vess,* 317 F.3d at 1104 ("[t]he rule does not require that

27  allegations supporting a claim be stated with particularity when those allegations describe non-

28  fraudulent conduct. . . . To require that non-fraud allegations be stated with particularity merely

because they appear in a complaint alongside fraud averments, however, serves no similar reputation-preserving function, and would impose a burden on plaintiffs not contemplated by the notice pleading requirements of Rule 8(a).").

<div align="center">

**2.  Even If Claims Eight Through Ten Are Required To Meet The Heightened Pleading Standard Of Rule 9(b), Openwave Has Met That Standard**

</div>

Even if claims eight through ten are subject to the heightened standard of Federal Rule of Civil Procedure 9(b), under the facts of this case, that standard has been met. While it is true, as OX, Inc. asserts, that courts have held that "[t]o satisfy this standard, a plaintiff must identify 'the time, place, and content of [the] alleged misrepresentation[s],' as well as the 'circumstances indicating falseness' or 'manner in which the representations at issue were false and misleading . . . ,'" *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1005-06 (N.D. Cal. 2014)(*quoting In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994)), it is also true that "Rule 9(b) particularity requirements must be read in harmony with Federal Rule of Civil Procedure 8's requirement of a 'short and plain' statement of the claim. Thus, the particularity requirement is satisfied if the complaint 'identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations.'" *Bass v. Dollar Tree Stores, Inc.*, No. 07-cv-03108-JSW, 2007 WL 2462150, at *2 (N.D. Cal. 2007)(*quoting Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)); *Frenzel*, 76 F. Supp. 3d at 1006. Furthermore, "[d]espite this heightened standard, the Ninth Circuit has opined that courts "cannot make Rule 9(b) carry more weight than it was meant to bear." *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997); *see also Schlagal v. Learning Tree Int'l.,* No. 98-cv-6384-ABC-EX, 1998 WL 1144581 at *8 (C.D. Cal. Dec. 23, 1998)("The Court must strike a careful balance between insistence on compliance with demanding pleading standards and ensuring that valid grievances survive."). Instead, Rule 9(b) "must be read in harmony with Fed. R. Civ. P. 8's requirement of a 'short and plain' statement of the claim." *Baas,* 2007 WL 2462150, at *2; *see also Weiner v. Ocwen Financial Corp.*, No. 14-cv-02597-MCE, 2015 WL 4599427, at *4 (E.D. Cal. July 29, 2015)("Rule 9(b) 'must be read in harmony with Fed.R.Civ.P. 8's requirement of a short and plain statement of the claim.'")(citation omitted). Additionally, "the general rule that allegations of fraud based on information and belief do not satisfy Rule 9(b) may be relaxed with respect to matters within the

opposing party's knowledge. In such situations, plaintiffs cannot be expected to have personal knowledge of the relevant facts." *Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir.1993)(citing *Wool v. Tandem Computers Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987)); *see also Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 540 (9th Cir.1989)("the rule may be relaxed as to matters within the opposing party's knowledge.")). Openwave has alleged surreptitious and concealed acts by OX, Inc. *See* Compl.   ¶¶ 7, 10, 11, 39, 40-42, 46, 51-53, 63-64, 69, 70-71, 150-176.   OX, Inc. should not be rewarded further for successfully deceiving its business partner.

Openwave's allegations are "'specific enough to give defendant[] notice of the particular misconduct which is alleged to constitute the fraud charged so that [it] can defend against the charge and not just deny that [it has] done anything wrong.'" *Frenzel*, 76 F. Supp. 3d at 1006 (*quoting Swartz*, 476 F.3d at 764). Moreover, the particularity requirements of Rule 9(b) "may be relaxed as to matters within the opposing party's knowledge. For example, in cases of corporate fraud, plaintiffs will not have personal knowledge of all of the underlying facts." *Moore*, 885 F.2d at 540; *Bass*, 2007 WL 2462150, at *2 (citations omitted). Here, Openwave does not, and would not, have personal knowledge of the specific facts surrounding OX Inc.'s misrepresentations beyond the information conveyed to it by mutual customers, as reflected in the Complaint. "In such cases, the particularity requirement may be satisfied if the allegations are accompanied by a statement of the facts on which the belief is founded." *Id.* (citing *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987), *overruled in part on other grounds, Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1575 (9th Cir. 1990)). OX, Inc. is cunning and took pains to conceal its activities (which it now seeks to keep under wraps by moving the case to Italy to avoid discovery). Openwave has had to piece together, through conversations with customers and interviews with departing employees, the facts behind OX, Inc.'s deception. It only will be after Openwave is able to conduct discovery that it will know the full details. But the continuing deception, up to and including the misleading declarations filed in support of OX Inc.'s Motion – declarations disproven by documents signed by the declarants – is evidence enough that OX, Inc. has not been dealing with Openwave in good faith. Through its allegations, Openwave has stated the factual basis for its beliefs of the time periods that OX, Inc. intentionally made false and misleading statements to Openwave's customers. *See generally* Compl.

### 3.    Claim Eleven Has Also Been Pled With Particularity

Openwave has pled its fraud claim (claim eleven) with the degree of particularity required by Federal Rule of Civil Procedure 9(b) as well. *See* Compl. ¶¶ 1-9, 76-79, 177-187. Openwave has alleged misrepresentations with sufficient particularity to put OX, Inc. on notice of the nature of the alleged fraud, in other words, they are "'specific enough to give defendant[] notice of the particular misconduct which is alleged to constitute the fraud charged so that [it] can defend against the charge and not just deny that [it has] done anything wrong.'" *Frenzel*, 76 F. Supp. 3d at 1006 (*quoting Swartz*, 476 F.3d at 764). As explained above, particularity requirements of Rule 9(b) may be relaxed in cases of corporate fraud. *See, e.g., Moore*, 885 F.2d at 540; *Bass*, 2007 WL 2462150, at *2 (citations omitted). "In such situations, plaintiffs cannot be expected to have personal knowledge of the relevant facts." *Neubronner*, 6 F.3d at 672 (citing *Wool*, 818 F.2d at 1439.

## IV.    CONCLUSION

For the foregoing reasons, Openwave respectfully requests that OX Inc.'s motion to dismiss be denied in its entirety.[2]

<div style="margin-left:40%">

Respectfully submitted,

DATED:  April 4, 2016

GREENBERG TRAURIG, LLP

By:___/s/ Ian C. Ballon_____
   Ian C. Ballon
   David M. Lisi
   Cathleen Donohoe

   Attorneys for Plaintiff
   OPENWAVE MESSAGING, INC.

</div>

---

[2]  In the event the Court decides to grant OX Inc.'s motion to dismiss, Openwave respectfully requests that the Court allow it an opportunity to amend its pleading to include recently discovered infringement and particular statements made within the United States.