UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPENWAVE MESSAGING, INC., <br><br> Plaintiff, <br><br> v. <br><br> OPEN-XCHANGE, INC., <br><br> Defendant. | Case No. 16-cv-00253-WHO <br><br> **ORDER GRANTING MOTION TO DISMISS IN PART** <br><br> Re: Dkt. Nos. 18, 30 |

This lawsuit stems from the disintegration of the business relationship between plaintiff Openwave Messaging, Inc. (Openwave) and defendant Open-Xchange, Inc. (OX). Openwave asserts eleven claims, including copyright infringement, false advertising, breach of contract and numerous business torts, as a result of OX's conduct.  Openwave's federal claims are not adequately pleaded – it has not sufficiently alleged infringement of its copyright in the United States, and the few misstatements it identifies do not amount to a plausible Lanham Act violation without more specificity about the market.  Because Rule 9(b) applies to the misrepresentation allegations, more specificity is necessary for the Lanham Act claim and for the business torts, but only to the extent Openwave intends to rely on public statements to prove those torts (Openwave has adequately alleged the direct client misrepresentations)..  While OX strenuously argues that the majority of Openwave's claims should be dismissed because the alleged wrongdoing occurred overseas and all the related evidence is maintained by its parent or sibling companies in Europe, Openwave and OX's relationship was governed by the OEM Agreement these United States' corporations signed.  The claims asserted by Openwave fall within the OEM Agreement's forum-selection clause, so this case is appropriately brought in this Court.  I GRANT OX's motion to dismiss in part with LEAVE TO AMEND.

**BACKGROUND**

Openwave is a Delaware corporation with its principal place of business in San Mateo, California. It provides software and services for commercial email platforms, and has developed a unique expertise in the design and implementation of email platforms for large companies, including some of the largest telecommunication companies in the world. *Id*. ¶¶ 3, 15, 21. OX is a Delaware corporation, which plaintiff alleges has a principal place of business in Nuremberg Germany and an office located in Palo Alto, California. *Id*. ¶ 16. Plaintiff alleges that OX develops, markets, and sells web-based communication, collaboration, and office productivity software, enabling the integration of email, documents, scheduling, and social media. *Id*. ¶ 24.

In 2010, Openwave and OX began discussions to package OX's email interface with Openwave's system. *Id*. ¶ 23. The parties first entered into a "Mutual Confidentiality Agreement" in March 2011. *Id*. ¶ 26. In June 2011, the parties entered into a contract allowing use of OX's email user interface as an element of the email system on certain of Openwave customer projects (the "OEM Agreement"). *Id*. ¶¶ 4, 27. The OEM Agreement was amended eight times between August 2011 and June 2014, to modify and supplement the terms of the OEM Agreement with respect to particular client projects. *Id*. ¶ 27. The OEM was signed for OX by Rafael Laguna, CEO of OX. Declaration of Monika Schroeder (Dkt. No. 18-2), Ex. A, Dkt. No.18-3 at pg 2. Amendments 1-3 and 5-7, were signed by Monika Schroeder as CFO of OX. *Id*., Ex. A Dkt. No. 18-3 pgs. 50, 54, 56, 68, 70, 75.[1]

Part of the OEM that was of particular "value" to Openwave was the solutions software "OX Hosting Edition," which was to be jointly developed by Openwave and OX. *Id*. ¶ 29. The

---

[1] According to a State of Delaware Franchise Tax Report, of which I take judicial notice, Monika Schroeder is listed as the CFO of OX and as an officer and a director. Donohoe Decl, Ex. E. Rafael Laguna is listed as a director only. *Id*. The parties also signed a number of Statements of Work (or SOWs), which are governed by the OEM. SOWs 4, 34, 35s were signed on behalf of OX by Monika Schroeder. Declaration of Joseph S. Campbell (Dkt. No. 23), Exs. A – D. The OEM, amendments to the OEM, and SOWs are expressly or implicitly incorporated into the Complaint and subject to judicial notice. *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005) (incorporation by reference doctrine extends "to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint").

effect of the Agreements, according to Openwave, was to integrate and bundle software developed and modified under the OEM into Openwave's proprietary software and services that were then licensed to Openwave customers. Section 12 of the OEM Agreement served to protect Openwave's trade secrets and other confidential business information from misappropriation. *Id.* ¶¶ 31-33.

Openwave alleges that in negotiating its role in developing a user interface for Openwave's email product, OX continuously assured Openwave that it intended to serve as a willing and beneficial partner to Openwave in providing quality products and services to Openwave's customers. *Id.* ¶ 36. However, Openwave asserts that it recently discovered that OX was misrepresenting its actions and intentions, taking unfair advantage of Openwave's trust and candor by: (i) surreptitiously meeting with Openwave's clients in an effort to undermine Openwave's business relationships with its clients, and in order to disguise technical problems with the OX technology by blaming Openwave's back end solution (*id.* ¶ 38-39); (ii) merging with another company to compete head-to-head with Openwave, while taking advantage of Openwave's intellectual property and proprietary information to undermine customer confidence in Openwave, interfere with contracts, and steal customers (*id.* ¶¶ 40-45);and (iii) creating a "new" OX interface product that was in reality an updated version of "OX Hosting Edition" covered by the OEM Agreement (*id.* ¶ 46). Openwave specifically identifies "wrongful" conduct by OX with respect to Virgin Media (*id.* ¶¶ 47-61), an unidentified "Customer A, a UAE-based telecommunications provider," (*id.* ¶ 62-65), an unidentified "Customer B" "a leading provider of telecommunications services in Europe," (*id.* ¶¶ 66-71), and an unidentified "Customer C" "an Asia-Pacific headquartered cloud email security and cloud messaging platform provider." *Id.* ¶¶ 72-75.

Openwave also alleges that while OX was interfering with Openwave's actual and potential customers, OX was engaged in fraudulent proposed merger talks with Openwave. *Id.* ¶ 76. OX's concealed purpose for these talks was to secure additional confidential information from Openwave regarding business, marketing and sales strategies, corporate structure, and personnel, in order to use that information to instead compete with Openwave and pursue Openwave's employees. *Id.* ¶¶ 76-85.

3

Openwave asserts eleven claims: copyright infringement, false advertising under the Lanham Act, misappropriate of trade secrets, breach of contract and breach of the implied covenant, tortious interference with contract and prospective business relationships, false advertising and unfair business practices under California's Unfair Competition Law, common law unfair competition, and fraud. Complaint (Dkt. 1). OX moves to dismiss the Copyright and Lanham Act claims for failure to state a claim and failure to plead facts establishing jurisdiction. It seeks dismissal of the business tort claims based on the doctrine of *forum non-conveniens*, arguing that Italy is the appropriate venue for resolution of those claims. And it moves to dismiss the "fraud-based" claims for failure to meet Rule 9(b)'s heightened pleading standard.[2] Openwave responds that it has sufficiently pleaded each of its claims, and that the *forum non-conveniens* argument is foreclosed by the forum-selection clause in the OEM Agreement and the undisputed convenience of this forum to plaintiff. I heard argument on May 4, 2016.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

"Because they involve allegations of fraud, qui tam actions under the FCA must meet not only the requirement of Rule 8, but also the particularity requirements of Rule 9." *United States ex rel. Lee v. Corinthian Colls*., 655 F.3d 984, 992 (9th Cir. 2011). Under Federal Rule of Civil Procedure 9(b), a party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v.*

---

[2] OX does not move to dismiss the breach of contract and breach of the implied covenant claims.

*Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). However, "Rule 9(b) requires only that the circumstances of fraud be stated with particularity; other facts may be pleaded generally, or in accordance with Rule 8." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d at 992.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## DISCUSSION

### I.     COPYRIGHT ACT

OX moves to dismiss the copyright infringement claim because Openwave fails to allege any facts allowing the inference that OX infringed the copyright in the United States. As the Ninth Circuit has recognized, "wholly extraterritorial acts of infringement cannot support a claim under the Copyright Act." *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1095 (9th Cir. 1994).

Openwave relies on paragraph 46 of its complaint that "OX's misconduct has negatively impacted a number of Openwave's existing clients across the globe," as support for "infringement in the United States." Openwave Opposition to Motion to Dismiss (Dkt. No. 21) at 5. However, in that section of its Complaint, Openwave details examples of OX's alleged bad acts with customers based in the United Kingdom, the UAE, Europe, and Asia. Complaint ¶¶ 46-75. There is no express allegation and no factual examples supporting an assertion of infringement within the United States. Openwave also cites paragraph 16 – alleging that Open-Xchange, Inc. is incorporated in Delaware and has an office in Palo Alto – as well as paragraphs 86-95 – containing Openwave's general copyright infringement allegations. *Id*. But these paragraphs do not specifically allege or allow the reasonable inference that copyright infringement has occurred *in the United States*.

In Opposition to OX's motion to dismiss, Openwave asserts that OX "solicits business through its website located at www.open-exchange.com which is accessible in the U.S., and sells its technology in California." *Id*. Those allegations are likewise not included in the Complaint, and even if they were – standing alone, without factual assertions that OX has sold or allowed the use of infringing technology in the United States—they would be insufficient to allege copyright infringement in the United States. Openwave's Opposition also relies on a new, unalleged theory of infringement based on evidence outside of the complaint; that Virgin Media email accounts (which plaintiff alleges in its Opposition contain infringing software) can be accessed in the United States and that doing so places OX's infringing code on computers in the United States. In reply, OX disputes this evidence based on its own evidence, and in a Sur-Reply declaration Openwave attempts to rebut OX's evidentiary showing. *See* Ex. A to Declaration of Cathleen Donohoe (Dkt. No. 22) & Openwave RJN (Dkt. No 24); OX, Inc. Reply (Dkt. No. 26) 2-5; Declaration of Jennifer L. Kelly (Dkt. No. 2-3), Exs. D&E; Declaration of Ian Gilliott (Dkt. No. 30-1). *None* of this evidence is appropriately reviewed on a motion to dismiss or subject to judicial notice and I will not consider it.[3]

Openwave fails to allege any facts to support an inference that copyright infringement occurred in the United States. Its Copyright Act claim is DISMISSED with leave to amend.

## II. LANHAM ACT

OX moves to dismiss Openwave's Lanham Act claim on two grounds: first, similar to the Copyright Act claim, Openwave fails to allege a sufficient nexus and impact on commerce in the United States; and, second, Openwave fails to allege facts plausibly showing that alleged misstatements were made in "commercial advertising or promotion" as required.

### A. Affecting Commerce in the United States

OX argues that the Lanham Act conduct at issue – the misrepresentations OX allegedly made about Openwave – all occurred outside the United States. In the Ninth Circuit, courts must

---

[3] Openwave asks for leave to file the Sur-Reply declaration of Ian Gilliott if I am inclined to consider the new Reply evidence of Jennifer L. Kelley. *See* Dkt. Nos. 30, 30-1. Because I will not consider any of the evidence regarding access to Virgin Mobile email accounts, I DENY Openwave's motion for leave. Dkt. No. 30.

find three factors in order to apply the Lanham Act to "extraterritorial" conduct. First, there must be some effect on American foreign commerce. Second, the effect must be sufficiently great to present a cognizable injury to plaintiffs under the federal statute. Third, the interests of and links to American foreign commerce must be sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial authority. *See Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 554 (9th Cir. 1992) (adopting the "*Timberline*" test).

Openwave contends that because the parties here are both incorporated in and doing business in the United States – and their relationship was governed by a series of contracts signed by the parties – it has plausibly alleged effect on United States commerce and harm in the United States. It asserts that because the misstatements were made on behalf of a United States corporation to help that corporation's business and to hurt Openwave here in the United States, it did not matter that the misstatements occurred in foreign locations, and the Court need look no further to find Lanham Act jurisdiction.

Openwave also argues it can easily meet the first two prongs of the *Timberline* test: sufficiently great effect on American foreign commerce presenting a cognizable injury to plaintiff because of its allegations that: (1) it lost a $20 million contract with Virgin Media; and (2) it has suffered other monetary and non-monetary damages including loss of goodwill and reputational damage, including "exposure" to monetary penalties from Customer A.

OX responds that the allegations concerning the $20 million lost Virgin Mobile contract are insufficient because Openwave admits in its Complaint that Virgin Media's new system was in place months after OX termination with Openwave. Oppo. at 16. However, the actual allegations of the Complaint regarding the Virgin Media loss do not support the gloss OX attempts to put on them and, at most, raise a dispute of fact that is inappropriate to resolve on a motion to dismiss. OX does not address any of Openwave's other damages or goodwill arguments.

With respect to the third *Timberline* factor, courts balance the following: (i) the degree of conflict with foreign law or policy; (ii) the nationality or allegiance of the parties and the locations or principal places of business of corporations; (iii) the extent to which enforcement by either state can be expected to achieve compliance; (iv) the relative significance of effects on the United

States as compared with those elsewhere; (v) the extent to which there is explicit purpose to harm or affect American commerce; (vi) the foreseeability of such effect; (vii) and the relative importance to the violations charged of conduct within the United States as compared with conduct abroad. *Reebok Int'l*, 970 F.2d at 555. These factors all weigh in favor of Openwave based on its plausible allegations. It is a corporation based in the United States, operating with OX under a contract (and related agreements) entered between two United States' corporations, and the target of hostile anti-competitive conduct by OX directed to the United States. While OX argues (based on evidence outside of the Complaint that I cannot consider when determining whether to dismiss the Lanham Act claim) that much of the alleged wrongdoing occurred outside the United States and between foreign parent or sibling corporations of both Openwave and OX, that argument does not undermine the plausibility of the conduct, harm, and impact on the commerce of the United States as pleaded by Openwave.[4]

## B. Misstatements Made in Commercial Advertising or Promotion

OX also argues that the Lanham Act claim is defective because the Act only protects against false or misleading statements made in "commercial advertising or promotion" and none of Openwave's allegations plausibly allege statements made in that manner.[5] Four factors determine whether a statement meets the definition of "commercial advertising or promotion." The statements must be: (i) commercial speech; (ii) by a defendant who is in commercial competition with plaintiff; (iii) for the purpose of influencing consumers to buy defendant's goods or services; and (iv) while the representations need not be made in a "classic advertising campaign" and may consist instead of more informal types of "promotion," the representations

---

[4] OX's main case *PINKBERRY, Inc. v. JEC Int'l Corp.*, No. CV 11-6540 PSG (PJWx), 2011 U.S. Dist. LEXIS 140669 (C.D. Cal. Dec. 7, 2011) is inapposite. That case dealt with sale of product in one foreign jurisdiction and very little connection to the United States. *Id.* at *17-18 ("any sale of frozen yogurt to consumers in Japan, even by a corporation based in the United States, has a greater effect on Japanese commerce than on U.S. foreign commerce.").

[5] The relevant portion of the Act prohibits: "(1) Any person who, on or in connection with any goods or services, . . . uses in commerce . . . [any] false or misleading description of fact, or false or misleading representation of fact, which . . . (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125.

8

1  must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or
2  "promotion" within that industry. *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d
3  725, 735 (9th Cir. 1999).

4  OX asserts Openwave has not and cannot plausibly allege facts supporting the fourth factor
5  because at most Openwave has alleged that OX made isolated statements to a few of Openwave's
6  actual or potential customers solely in the context of business discussions with those few
7  customers. OX relies on Openwave's express allegations in the Complaint that there is a large and
8  expansive relevant purchasing public, including telecommunications providers worldwide.
9  Complaint ¶¶ 3 (Openwave "developed a unique expertise in the design and implementation of
10 email platforms for large companies, including some of the largest telecommunication companies
11 in the world, many of which have been loyal customers of Openwave for decades"), 21 ("Of the
12 more than four billion email accounts in the world today, approximately 15% run on Openwave's
13 email platform"). Therefore, the few isolated comments made with respect to a few customers in
14 this "wide and expensive" market cannot plausibly allege sufficient dissemination to the
15 purchasing public.

16 In Opposition, Openwave attempts to explain its existing allegations in the Complaint,
17 noting that while millions use its products, its customers and potential customers are limited to the
18 relatively few large telecommunications providers. In that vein, Openwave relies on a line of
19 cases that have recognized, "[w]here the potential purchasers in the market are relatively limited in
20 number, even a single promotional presentation to an individual purchaser may be enough to
21 trigger the protections of the Act." *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1386 (5th Cir.
22 1996); *see also Coastal Abstract Serv., Inc. v. First Am. Title Ins*. Co., 173 F.3d 725, 735 (9th Cir.
23 1999) (relying on *Seven-Up* and concluding that where there were only two or three entities
24 involved in the market, a comment to one could constitute a dissemination to a sufficient segment
25 of the relevant purchasing public).

26 The problem remains that Openwave has failed to allege facts identifying the relevant
27 group of purchasers so that I can weigh whether those facts support an inference at this juncture
28 that the "potential purchasers in the market are relatively limited" or so expansive that the specific

1  misstatements identified by Openwave tend more towards "isolated" comments made in an

2  otherwise expansive market. *See, e.g., Oracle Am., Inc. v. Terix Computer Co., Inc.*, No. 5:13-CV-

3  03385-PSG, 2014 WL 5847532, at *10 (N.D. Cal. Nov. 7, 2014 ("Absent some facts showing who

4  makes up the relevant group of customers, and how Oracle widely spread its misstatements to that

5  group, Defendants' broader allegations are not plausible.").[6] Openwave's Lanham Act claim is

6  dismissed with leave to amend.[7]

### III.    *FORUM NON-CONVENIENS*

Open-Xchange moves to dismiss Openwave's business tort claims on the basis of *forum non-conveniens*.[8] OX contends that Italy provides an adequate and more convenient forum for these claims. Openwave opposes arguing, first, that these claims are governed by the parties' forum selection clause in the OEM, and second, that its choice of forum in the Northern District of California outweighs any inconvenience arguments raised by OX.

### A. The Forum Selection Clause

The OEM Agreement contains both a choice of law and forum-selection clause providing

---

[6] The other cases relied on by defendant are inapposite as they address one instance of a misstatement made to one customer (*Crossfit, Inc. v. Alvies*, No. 13-3771 SC, 2014 U.S. Dist. LEXIS 7930, at *13 (N.D. Cal. Jan. 22, 2014); *Garland Co. v. Ecology Roof Sys. Corp.*, 895 F. Supp. 274, 279 (D. Kan. 1995)) or find insufficient proof at summary judgment. *Walker & Zanger, Inc. v. Paragon Indus., Inc*., 549 F. Supp. 2d 1168, 1182 (N.D. Cal. 2007) (concluding on summary judgment that plaintiffs proof of misstatements was deficient, and holding that a "handful of statements to customers does not trigger protection from the Lanham Act unless 'the potential purchasers in the market are relatively limited in number'").

[7] The Lanham Act claim – based on false advertising and promotion – must meet the Rule 9(b) particularity pleading requirements discussed below. *See Stahl Law Firm v. Judicate W*., No. C13-1668 TEH, 2013 WL 4873065, at *7 (N.D. Cal. Sept. 12, 2013) (applying 9(b) to Lanham Act claim); *see also SKEDKO, Inc. v. ARC Products, LLC*, No. 3:13-CV-00696-HA, 2014 WL 585379, at *3 (D. Or. Feb. 13, 2014) (same). In paragraph 98 of the Complaint, Openwave alleges that OX has made representations in "press releases, interviews, in presentations to investors, in communications with customers and potential customers, and otherwise." Similar to my conclusion below, Openwave has alleged sufficient facts regarding communications with clients and potential clients, but Openwave should plead additional facts within its knowledge about public statements it contends are actionable, whether made by press release or in investment calls, etc.

[8] Specifically, OX moves to dismiss on this ground Claim 3 for trade secret misappropriation; Claim 6 for tortious interference with contract; Claim 7 for tortious interference with prospective business advantage; Claim 8 for false advertising; Claim 9 for unfair competition under Cal. Bus. & Prof. Code § 17200; Claim 10 for unfair competition under common law; and Claim 11 for fraud.

United States District Court
Northern District of California

that the OEM will be construed under California law and that "[a]ny legal action or proceeding with respect to this Agreement will be brought in the United States District Court for the Northern District of California." Schroeder Decl., Ex. A § 15.2. Forum-selection clauses should "be given controlling weight in all but the most exceptional cases." *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. Of Tex.*, 134 S. Ct. 568, 579 (2013) (internal quotation omitted). "A forum selection clause is presumptively valid; the party seeking to avoid a forum selection clause bears a 'heavy burden' to establish a ground upon which [the court] will conclude the clause is unenforceable.'" *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009) (*quoting M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1972)).

OX does not dispute that the breach of contract and breach of the implied covenant claims must be litigated here, but argues that the business tort claims fall outside the forum-selection clause because they are not "with respect" or sufficiently related to the OEM Agreement and other contracts entered into by the parties. OX also contends that application of the forum-selection clause to these tort claims is not appropriate because the tort disputes are really disputes between the parties' foreign affiliates. Reply 11-13. It relies on evidence outside of the Complaint that the real wrongdoers (if any) are OX employees working for OX's foreign parent or sibling companies and none of the wrongdoing alleged (or that could be alleged) was done by the U.S. company and defendant here OX, Inc. *Id*.

Generally "forum selection clauses can be equally applicable to contractual and tort causes of action. . . . Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." *Manetti-Farrow, Inc. v. Gucci Am., Inc*., 858 F.2d 509, 514 (9th Cir. 1988) (internal citations omitted); *Zako v. Hamilton Co*., No. 5:15-CV-03162-EJD, 2016 WL 344883, at *3 (N.D. Cal. Jan. 28, 2016) ("a forum-selection clause will apply to claims that arise from or relate to the contract containing the clause").

OX disputes whether the "with respect" to language of the forum-selection clause is as broad as "relating to," as Openwave contends. Under either the narrower approach of OX or the broader approach of Openwave, I conclude that each of the tort claims will – to some extent – rely on an interpretation of the OEM and its amendments. For example, the misappropriation of trade

secrets claim (Claim 3) asserts that OX secured Openwave trade secrets through misrepresentations, "including representations made in connection with confidentiality and nondisclosure obligations in the Agreements." Complaint ¶ 112. Claims 6 and 7 for tortious interference with contract and prospective business relationships also rest in express part on OX's knowledge of Openwave's contracts "based on" OX's knowledge of the contents of the OEM and "the course of their business dealings pursuant to nondisclosure and confidentiality agreements." *Id*. ¶¶ 138, 145. Claim 10 for common law unfair competition is likewise based in part on obtaining and misuse of confidential information. *Id*. ¶ 169. Claim 11 for fraud relies on false representations that OX would abide by the terms of the Agreements, as well as abide by the parties' confidentiality and nondisclosure agreements. *Id*. ¶ 178.

Moreover, section 3.5 of the OEM (which contains the forum-selection clause) requires each party to "(b) avoid deceptive, misleading or unethical practices; and (c) conducts its business in a manner that does not disparage the other party, its products, goodwill and reputation." OEM Agreement § 3.5 (Ex. A to Schroeder Decl). As such, the business torts at issue are inherently intertwined with the Agreements entered into by the parties and subject to interpretation of those Agreements. The fact that the business torts may *also cover* conduct unrelated to the OEM does not alter the conclusion that significant portions of the alleged business torts arise "with respect to" the OEM and related Agreements.[9]

### B. Forum Non-Conveniens

OX argues that because the forum selection clause does not govern the business tort

---

[9] OX spends a great deal of time creating an evidentiary record to support its position that the "wrongdoing" alleged was not carried out by OX, Inc. employees and did not emanate from the United States. In Reply, OX argues that further support for its extra-territorial contentions is found in Openwave's document preservation letter, which identifies 24 employees who may have relevant information and 19 of those are employed by OX, Inc.'s foreign parent or sibling corporations. Reply 10-11. There is also some support for OX's argument in the Complaint itself, which outlines actions taken by unspecified OX employees with respect to Openwave's potential clients in the United Kingdom, the UAW, Europe, and Asia. In the end, OX may prevail at summary judgment or trial if, indeed, Openwave has sued the wrong defendants or lacks standing to pursue some of its employee-misappropriation claims. However, these arguments are not well taken on a motion to dismiss, other than providing background to the "private interest" factors of the *forum-non conveniens* test that, as discussed below, are not relevant in light of the valid forum-selection clause.

12

claims--or even if it does--these claims should be dismissed in favor of a more convenient forum in Italy. "The doctrine of *forum non conveniens* is a drastic exercise of the court's 'inherent power' because, unlike a mere transfer of venue, it results in the dismissal of a plaintiff's case. . . . Therefore, we have treated *forum non conveniens* as 'an exceptional tool to be employed sparingly,' and not a 'doctrine that compels plaintiffs to choose the optimal forum for their claim.'" *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011) (*quoting Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir.2002)). The "mere fact that a case involves conduct or plaintiffs from overseas is not enough for dismissal." *Id.* "To prevail on a motion to dismiss based upon *forum non conveniens*, a defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal." *Id.*

Where there is a valid forum-selection law, as here, the "forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013) (internal citation omitted). "Only under extraordinary circumstances unrelated to the convenience of the parties" should a court decline to enforce a valid forum selection clause." *Id.* "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 582. As a consequence, a district court may only "consider arguments about public-interest factors only. Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* The public-interest factors include: the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law; and, the deference to the plaintiffs' choice of forum. *Id.* at 581 n. 6.

The public-interest factors all weigh in favor of denying the motion. Great weight is given to Openwave's choice of forum, the Northern District of California, which is also the forum specified by the forum-selection clause and where Openwave has its principal place of business. This forum is also "at home" with the law, given that the Complaint alleges only federal and

California law causes of action. The local interest factor is more neutral, assuming OX is correct and the "wrongdoing" alleged all occurred overseas. But the contracts at issue that governed the parties' business relationship and its termination were signed by United States' corporations that each have offices in this District. There is a sufficient and legitimate "local" connection alleged in this case. While OX has submitted a declaration explaining how the business tort claims might proceed in an Italian court, there is no argument that "congestion" in the Northern District weighs heavily in favor of Italy.

In sum, OX does not demonstrate that this case presents exceptional circumstances that would lead me to ignore the forum-selection clause and the public interest factors weigh in favor of denying the motion to dismiss for *forum-non conveniens*.

## IV. PARTICULARITY UNDER RULE 9(B)

Open-Xchange also moves to dismiss the following claims for failure to meet the particularity requirement of Rule 9(b): Claim 8 for false advertising under § 17500 of the California Business & Professions Code; Claim 9 for illegal, unfair, or fraudulent conduct under § 17200 of the California Business & Professions Code; Claim 10 for common law unfair competition; and Claim 11 for "fraud."

### A. Applicability of Rule 9(b)

Under Federal Rule of Civil Procedure 9(b), a party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). However, "Rule 9(b) requires only that the circumstances of fraud be stated with particularity; other facts may be pleaded generally, or in accordance with Rule 8." *United States ex rel. Lee v. Corinthian Colls*., 655 F.3d 984, 992 (9th Cir. 2011). The purpose of Rule 9(b)'s heightened specificity requirement is "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted).

Openwave does not dispute that its fraud claim is subject to Rule 9(b), but challenges its

14

application to the other tort claims. The question is whether some components of Claims 8 through 10 either expressly allege "fraud" or allege facts that necessarily constitute fraud. *Vess*, 317 F.3d at 1105. Reviewing Claims 8 through 10, Openwave repeatedly alleges that OX made false or misleading statements to Openwave itself or Openwave's potential or actual customers. *See, e.g.*, Claim 8, ¶¶ 151 – 154 (making false and misleading statements representations which deceived or were likely to deceive); Claim 9 ¶¶ 161-162, 166 (making false statements that constitute "unlawful, unfair, and/or fraudulent business acts and practices"); Claim 10 ¶¶ 169-172 (false statements and using false pretenses). These claims sound in fraud and require Openwave to meet Rule 9(b)'s heightened pleading standard with respect to the misrepresentations. Elsewhere in the Complaint, Openwave repeatedly characterizes OX's conduct as "fraudulent" with respect to misrepresentations to Openwave as part of the merger discussions. Complaint ¶¶ 5, 6, 76-79. Each of the claims – to the extent they rely on misrepresentations – are "fraud-based" and must be pleaded with particularly under Rule 9(b).

### B. Sufficiency of Allegations

In order to meet the Rule 9(b) standard "a plaintiff must identify 'the time, place, and content of [the] alleged misrepresentation[s],' as well as the 'circumstances indicating falseness' or 'manner in which the representations at issue were false and misleading.'" *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1005 (N.D. Cal. 2014) (*quoting In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547–48 (9th Cir.1994)). Openwave contends that it has met Rule 9(b)'s standard, identifying the specific type of misleading statements made to specific clients (Complaint ¶¶ 47-75) and the specific type of misleading statements OX made to plaintiff regarding the "fraudulent proposed merger." *Id*. ¶¶ 76-79. Therefore, Openwave has satisfied the "who" and "what" and generally the "when" required under *Vess*. Openwave argues that it cannot – at this juncture – provide more specific information without discovery because it has had to "piece together" defendants' fraud from information secured from current and prospective clients and former employees. Oppo. 24.

I agree. The purpose behind Rule 9(b) has been satisfied here. OX has been given sufficient information on what the "client misrepresentations" were and who they were given to.

1 Because the client misrepresentations alleged were made to specific third parties, Openwave

2 cannot be expected to plead more facts regarding them at this juncture (*e.g.,* which specific OX

3 employee made the representations, when they were made, how they were made may be out of

4 reach for Openwave to know precisely). OX's request that Openwave be forced to identify, for

5 example, which departing employees provided information as part of the misrepresentations

6 complained of in the Complaint, is too granular and not required as a matter of pleading even

7 under 9(b).

8 In sum, while I agree with OX that Rule 9(b) applies to the business torts at issue,

9 Openwave has alleged the client misrepresentations at issue with enough specificity at this

10 juncture.[10]

**CONCLUSION**

12 Openwave's Copyright and Lanham Act claims are DISMISSED with leave to amend.

13 OX's motion to dismiss is DENIED in all other respects. Openwave shall have twenty days to

14 amend.

15 **IT IS SO ORDERED**.

16 Dated: May 9, 2016



WILLIAM H. ORRICK
United States District Judge

---

[10] However, if Openwave intends to rely on misrepresentations made to the general public to prove its business tort claims (as it does for its Lanham Act claim), Openwave shall add specificity to its allegations regarding press releases, interviews, and public presentations to investors.

16