1  RODGER R. COLE (CSB No. 178865)
   rcole@fenwick.com
2  SAPNA MEHTA (CSB No. 288238)
   smehta@fenwick.com
3  FENWICK & WEST LLP
   Silicon Valley Center
4  801 California Street
   Mountain View, CA  94041
5  Telephone:     (650) 988-8500
   Facsimile:     (650) 938-5200
6
   JENNIFER L. KELLY (CSB No. 193416)
7  jkelly@fenwick.com
   TODD R. GREGORIAN (CSB No. 236096)
8  tgregorian@fenwick.com
   MATTHEW B. BECKER (CSB No. 291865)
9  mbecker@fenwick.com
   FENWICK & WEST LLP
10 555 California Street, 12th Floor
   San Francisco, CA 94104
11 Telephone:     (415) 875-2300
   Facsimile:     (415) 281-1350
12
   Attorneys for Defendant
13 OPEN-XCHANGE, INC.

14                    UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

16                      SAN FRANCISCO DIVISION

17

18 OPENWAVE MESSAGING, INC.,              Case No.  3:16-cv-00253-WHO
   a Delaware corporation,
19                                         **DEFENDANT OPEN-XCHANGE, INC.'S
                         Plaintiff-Counterdefendant,   OPPOSITION TO OPENWAVE
20                                         MESSAGING, INC.'S MOTION TO
              v.                           DISMISS AMENDED COUNTERCLAIMS
21                                         AND STRIKE AMENDED AFFIRMATIVE
   OPEN-XCHANGE, INC., a Delaware          DEFENSES**
22 corporation,

                         Defendant-Counterclaimant.   Date:      October 5, 2016
23                                         Time:      2:00 p.m.
                                           Judge:     Honorable William H. Orrick
24                                         Courtroom: 2

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

**TABLE OF CONTENTS**

2
                                                                                    **Page**

3     INTRODUCTION ........................................................................................................ 1

4     BACKGROUND .......................................................................................................... 2

5     ARGUMENT ............................................................................................................... 3

6     I.      The Court Should Deny Openwave's Motion to Strike Open-Xchange's

7             Claim for Declaratory Judgment. .................................................................. 3

8     II.     Open-Xchange Has Standing to Assert False Advertising Under

9             the Lanham Act. ............................................................................................. 5

10    III.    Open-Xchange Has Standing to Assert Claims for False Advertising

      and Unfair Competition Under California Law. .................................................. 7

11    IV.     Open-Xchange Pled Sufficient Facts in Support of Its Remaining

12            Counterclaims. ............................................................................................... 9

13    V.      The Court Should Deny Openwave's Disfavored Motion to Strike

      Affirmative Defenses. .......................................................................................... 13

14    VI.     If the Court Dismisses Any Counterclaims or Defenses, It Should

15            Grant Leave to Amend. .................................................................................. 15

16    CONCLUSION .......................................................................................................... 16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

# TABLE OF AUTHORITIES

2

PAGE(S)

3

**CASES**

4

*Alatraqchi v. Uber Techs., Inc.*,
  No. 13-cv-03156, 2013 WL 4517756 (N.D. Cal. Aug. 22, 2013) ...............................7

5

6

*Apple, Inc. v. Psystar Corp.*,
  586 F. Supp. 2d 1190 (N.D. Cal. 2008) .............................................................7

7

*Castellano v. Access Premier Realty, Inc.*,
  15-cv-0407, 2015 U.S. Dist. LEXIS 158078 (E.D. Cal. Nov. 23, 2015)...................13

8

9

*Catch a Wave, Inc. v. Sirius XM Radio, Inc.*,
  No. 12-cv-05791, 2013 WL 1996134 (N.D. Cal. May 13, 2013)...........................14

10

*Daily v. Federal Insurance Company*,
  No. 04-cv-3791, 2005 WL 14734 (N.D. Cal. Jan. 3, 2005).....................................5

11

12

*Echostar Satellite LLC v. Freetech Inc.*,
  No. 07-cv-06124, 2008 WL 8648905 (N.D. Cal. May 8, 2008)..............................4

13

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003)................................................................15, 16

14

15

*Fed. Trade Comm'n v. Directv, Inc.*,
  No. 15-cv-01129, 2015 WL 9268119 (N.D. Cal. Dec. 21, 2015)....................13, 14

16

*Figy v. Frito-Lay N. Am., Inc.*,
  67 F. Supp. 3d 1075 (N.D. Cal. 2014) .................................................................9

17

18

*Foman v. Davis*,
  371 U.S. 178 (1962)...........................................................................................16

19

20

*Frenzel v. AliphCom*,
  76 F. Supp. 3d 999 (N.D. Cal. 2014) ............................................................10, 11

21

22

*Fujifilm Corp. v. Motorola Mobility LLC*,
  No. 12-cv-03587, 2014 WL 2730724 (N.D. Cal. June 16, 2014)..........................16

23

24

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ........................................................................................9

25

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009).............................................................................11

26

27

*Kohler v. Flava Enterprises, Inc.*,
  779 F.3d 1016 (9th Cir. 2015)..............................................................................13

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

*Kwikset Corp. v. Superior Court,*
  51 Cal. 4th 310 (2011) ..................................................................................8, 9

*Law Offices of Mathew Higbee v. Expungement Assistance Servs.,*
  214 Cal. App. 4th 544 (2013) ...........................................................................8

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
  134 S. Ct. 1377 (2014) ......................................................................................6

*Luxul Tech. Inc. v. Nectarlux, LLC,*
  78 F. Supp. 3d 1156 (N.D. Cal. 2015) ...........................................................6, 8

*Maya v. Centex Corp.,*
  658 F.3d 1060 (9th Cir. 2011) ...........................................................................6

*McArdle v. AT&T Mobility LLC,*
  657 F. Supp. 2d 1140 (N.D. Cal. 2009), *rev'd and remanded on other grounds,*
  *McArdle v. AT&T Mobility, LLC,* 474 F. App'x 515 (9th Cir. 2012) ..................15

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC,*
  No. 15-cv-00595, 2016 WL 739796 (S.D. Cal. Feb. 25, 2016).........................6

*Perez v. Gordon & Wong Law Group,*
  No. 11-cv-03323, 2012 WL 1029425 (N.D. Cal. Mar. 26, 2012,)........................15

*Pfizer Inc. v. Superior Court,*
  182 Cal. App. 4th 622 (2010) ...........................................................................9

*Ronpak, Inc. v. Elecs. for Imaging, Inc.,*
  No. 14-cv-04058, 2015 WL 179560 (N.D. Cal. Jan. 14, 2015).......................10

*Salvioli v. Cont'l Ins. Co.,*
  No. 96-cv-0630, 1996 WL 507297 (N.D. Cal. Sept. 3, 1996) ..........................7

*Simmons v. Navajo Cty., Ariz.,*
  609 F.3d 1011 (9th Cir. 2010)..........................................................................13

*Stickrath v. Globalstar, Inc.,*
  No. 07-cv-1941, 2008 WL 2050990 (N.D. Cal. May 13, 2008)......................4, 5

*Vess v. Ciba-Geigy Corp. USA,*
  317 F.3d 1097 (9th Cir. 2003)...............................................................10, 11, 12

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

## INTRODUCTION

Openwave bases its motion to dismiss on atmospherics—suggestions that Open-Xchange's amended counterclaims contain only "cosmetic" changes over the original version, and that because Open-Xchange *could* potentially provide in its pleading all the detail it could put in an interrogatory response, it must.  The motion advances no legitimate bases to strike or dismiss Open-Xchange's counterclaims:

- The counterclaim for declaratory judgment of non-infringement raises critical issues regarding ownership of the software at issue, and will resolve the uncertainty and damage to Open-Xchange's business caused by Openwave's brazen attempt to claim a copyright interest in Open-Xchange's proprietary software.

- Open-Xchange alleged economic injury suffered as a result of Openwave's false advertising, in particular lost sales and damage to reputation.  These are sufficient injuries to convey standing to bring counterclaims for false advertising and unfair competition under both the Lanham Act and California law.  They also do not in any sense contradict the broader fact that Open-Xchange continues to enjoy *overall* success in the market—even a successful company can lose individual sales due to illegal conduct.

- Open-Xchange's remaining counterclaims are either not subject to heightened pleading at all—because they sound in contract, not fraud—or have been pled adequately under Rule 9(b).  Openwave's motion merely cherry-picks a list of *non-fraud* allegations from the counterclaims and demands more detail about them, while ignoring the well-pleaded facts on which those counterclaims are actually based.

Finally, Openwave's motion to strike affirmative defenses is largely an attempt to take discovery through motion practice.  The governing standard requires only that Open-Xchange provide a "general description" of the basis of its defenses to provide fair notice of them.  Nevertheless, Openwave asks the Court to order Open-Xchange to plead "when, where and how . . . and by whom and to whom" each one of Openwave's alleged trade secrets were previously disclosed or became public, and to "identify specifically which entity or entities were

1   responsible" for each act or omission alleged in the complaint.  These requests sound like

2   interrogatories because they are; they have no place in a motion to strike.  Open-Xchange provided

3   the factual bases for its affirmative defenses, giving fair notice to Openwave of each.

4        The Court should deny Openwave's motion to dismiss and strike.

5                                   **BACKGROUND**

6        Following the termination of the parties' business relationship, Openwave brought this

7   litigation to undercut competition from Open-Xchange in the market.  Openwave raised a number

8   of claims against Open-Xchange for wide-ranging—but notably unspecific—conduct.  Dkt. 1.

9   Open-Xchange moved to dismiss, in an attempt to focus this litigation on the true dispute between

10  the parties that they had discussed for six months before this lawsuit began: alleged breaches of

11  the parties' OEM Agreement.  Dkt. 18.  The Court granted the motion in part, and dismissed

12  Openwave's claims under the Copyright Act and the Lanham Act with leave to amend.  Dkt. 38 at

13  16.  Thereafter, Openwave filed a first amended complaint and, by stipulation, further amended,

14  filing a Second Amended Complaint.  Dkt. 42 ("SAC").

15       Through its counterclaims, Open-Xchange now seeks relief for Openwave's breach of the

16  parties' agreement and from its false assertion of copyright ownership, false advertising, and

17  unfair competition.

18       Specifically, Open-Xchange seeks declaratory judgment of non-infringement of copyright

19  and invalidity of copyright to resolve uncertainty over its business and the threat of future

20  litigation.  *See, e.g.*, Dkt. 49 ¶ 102.  Openwave asserts a copyright ownership in App Suite, Open-

21  Xchange's *core* product.  Open-Xchange developed App Suite well before and independent of its

22  business collaboration with Openwave.  *Id.* ¶¶ 35-36.  For the duration of the parties' relationship,

23  Openwave knew it did not own OX Hosting Edition or App Suite and took overt actions

24  acknowledging that fact to Open-Xchange, customers, and others.  *Id.* ¶¶ 38-43.  Indeed, the

25  nature of the parties' agreement is a *license* agreement under which Openwave received merely a

26  license to distribute Open-Xchange's existing software.  *Id.* ¶¶ 23, 26.  On the very same day it

27  commenced this litigation, however, Openwave filed an application to register the copyright in a

28  specific version of App Suite—most likely pulling the deposit materials it submitted with its

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

application from Open-Xchange's public websites—to gin up additional, federal claims. *Id.* ¶¶ 81, 105-08.

Open-Xchange also seeks relief for Openwave's breach of contract and the covenant of good faith and fair dealing implicit in the parties' agreements. Openwave, during the course of the parties' collaboration, disparaged and undermined Open-Xchange to promote its newly-acquired competitive product, RichUI, to current and prospective customers. *Id.* ¶¶ 62-66, 71, 113-19. It also breached the parties' agreement directly by selling Open-Xchange products without Open-Xchange's authorization and without paying for a license. *Id.* ¶¶ 76, 78, 123-25. After Open-Xchange terminated the parties' agreement for this breach, Openwave continued to use Open-Xchange's name and marks on its website and offer Open-Xchange's software to customers, in contravention of the surviving terms of the parties' agreement. *Id.* ¶¶ 83, 128-130. Open-Xchange also learned very recently (after the filing of this motion) that Openwave may have continued to actually distribute App Suite following termination of the parties' agreement.

In fact, to promote its own business, Openwave capitalized on the strength of Open-Xchange's reputation and business, and falsely advertised that it was affiliated with Open-Xchange and could offer its products and services. *Id.* ¶¶ 138-42. Openwave falsely listed Open-Xchange as a partner of Openwave and of Synchronoss, Openwave's new parent company. *Id.* ¶¶ 86-87, 134-35. It also falsely represented that Openwave was able to offer App Suite. *Id.* ¶¶ 85, 88, 136-37. Customers in the parties' shared market saw and relied on these false statements. *Id.* ¶¶ 89, 142, 149, 155. Open-Xchange seeks relief, particularly for the damage to its reputation and the lost sales that it suffered as a result of Openwave's unlawful conduct. *Id.* ¶¶ 89, 143-45, 149-51, 155-56.

## ARGUMENT

## I.   THE COURT SHOULD DENY OPENWAVE'S MOTION TO STRIKE OPEN-XCHANGE'S CLAIM FOR DECLARATORY JUDGMENT.

Openwave brought a meritless claim for copyright infringement, claiming ownership and seeking to register a copyright in Open-Xchange's core product. Open-Xchange's counterclaim for declaratory judgment serves the important purpose of resolving uncertainty caused by this

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

fraudulent action, which has caused Open-Xchange's actual and prospective customers to express concern about Openwave's claimed interest in App Suite and what it means for them.  As Open-Xchange alleged in support of its declaratory judgment claim, Openwave has cast a shadow over Open-Xchange's products and services by asserting its ownership claims in a public filing.  Dkt. 49 ¶ 102.  The counterclaim is not merely Open-Xchange's public response (which itself serves an important purpose), but lays the foundation for an early motion for summary judgment on the straightforward, threshold issue of ownership.  The Court therefore can and should exercise its discretion to hear this counterclaim since it serves the important and useful purpose of clarifying the true owner of App Suite.  *See Stickrath v. Globalstar, Inc.*, No. 07-cv-1941, 2008 WL 2050990, at *4 (N.D. Cal. May 13, 2008) (noting that "[t]he court should focus on whether the counterclaims 'serve any useful purpose'" rather than striking "simply because they concern the same subject matter"); *see also Echostar Satellite LLC v. Freetech Inc.*, No. 07-cv-06124, 2008 WL 8648905, at *1, 3 (N.D. Cal. May 8, 2008) (defendant was "entitled to have the issue of its liability resolved now that it has been put in controversy by Plaintiffs").

Open-Xchange's declaratory relief claim lays out the facts refuting Openwave's claims of ownership, and seeks a declaration that it "has not infringed, does not infringe, and is not liable for *any* infringement of Open-Xchange App Suite Frontend 7.4.2-rev29."  Dkt. 49 ¶ 103 (emphasis added).  Open-Xchange's affirmative defenses, in contrast, seek to limit or bar Openwave's claim that Open-Xchange infringed Openwave's purported copyright by offering or selling products to Companies C, D, E, F, Ziggo, and Virgin Media.  SAC ¶¶ 131-149.  Regardless of the outcome of those limited allegations, Open-Xchange requires a definitive resolution as to the ownership of App Suite to conduct its business without the fear of future litigation.

Moreover, and critically, Openwave would suffer *no prejudice* if the Court allowed Open-Xchange's counterclaim to proceed.  *Echostar Satellite*, 2008 WL 8648905, at *2, 3 (noting that the plaintiffs suffered no prejudice since the counterclaims were "based on essentially the same facts and law" as the plaintiffs' claims).  Openwave has not identified any such prejudice, nor could it credibly argue any since the claim was timely asserted and does not alter the scope of discovery.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

The authority relied on by Openwave is inapposite.  In *Stickrath*, the court noted that the defendant's counterclaim was superfluous because it did not settle any other uncertainty or controversy between the parties.  *Stickrath*, 2008 WL 2050990, at *7.  The plaintiff alleged various business torts, and the defendant's defenses and counterclaim turned simply on whether it was liable for the alleged conduct under the parties' service agreement.  *Id.* at *1, 6.  Likewise, in *Daily v. Federal Insurance Company*, the claims and counterclaims all sought resolution of the parties' rights and responsibilities related to insurance coverage for a particular lawsuit.  No. 04-cv-3791, 2005 WL 14734, at *6 (N.D. Cal. Jan. 3, 2005).  Here, Open-Xchange has a critical interest in seeking a declaration from the Court that will settle questions—namely, Openwave's purported copyright ownership—crucial to the parties' business and conduct.

For these reasons, the Court should deny Openwave's motion to strike Open-Xchange's first counterclaim for declaratory judgment of non-infringement.

## II.   OPEN-XCHANGE HAS STANDING TO ASSERT FALSE ADVERTISING UNDER THE LANHAM ACT.

Open-Xchange pled facts to demonstrate its injury caused by Openwave's false advertising.  Specifically, it alleges that (1) several of its customers informed it that Openwave's actions "tarnished their impression[s] of the App Suite product," and (2) Openwave's actions caused Open-Xchange lost sales of potential customers who mistakenly went to Openwave for App Suite or Open-Xchange's services.  Dkt. 49 ¶¶ 89, 144.  While Openwave may dispute the merits of these facts, at this stage they are assumed to be true.[1]

Open-Xchange sufficiently alleged injury to meet the statutory standing requirements.  To state a claim of false advertising under the Lanham Act, a litigant must plead "an injury to a

---

[1]  Openwave points to Open-Xchange's "failure" to allege that there were no *other* causes of the alleged injury, but that is not required.  Br. at 9.  Open-Xchange directly alleges causation, (*e.g.*, Dkt. 49 ¶ 144), and those allegations must be construed in Open-Xchange's favor.  In any event, whether "potential customers actually bought products or services from Openwave as a direct result of the alleged false and misleading statements" are facts that are uniquely in the possession of Openwave and those third parties.  Ironically, Openwave itself made (and prevailed on) this same argument—that it could not plead any more specificity regarding interactions between Open-Xchange and its customers because those facts were not in its possession—in opposition to Open-Xchange's motion to dismiss.  *See*, *infra*, at 12.

commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1390, 1395 (2014). The alleged injury is sufficient if it "flow[s] directly from" the prohibited conduct. *Id.* at 1390-91. "'At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, No. 15-cv-00595, 2016 WL 739796, at *4 (S.D. Cal. Feb. 25, 2016) (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011)).

In *Lexmark* in particular, the Supreme Court held that allegations of damage to business reputation and lost sales were sufficient injury for a claim of false advertising under the Lanham Act. 134 S. Ct. at 1393. With respect to reputation, the Court noted that a party's self-interested falsehood about another party or its product can result in proximately-caused harm. *Id.* at 1393-94. And it observed with approval that lower courts allow claims "where the defendant damages the product's reputation by, for example, equating it with an inferior product." *Id.* at 1393 (citations omitted). The court further noted the "classic" or "paradigmatic" example of direct injury— "diversion of sales to a direct competitor." *Id.*

Open-Xchange alleges both types of injuries here. Openwave sought to capitalize on Open-Xchange's goodwill by falsely advertising that it offered an Open-Xchange product, and that Openwave and Synchronoss were partners of Open-Xchange. Dkt. 49 ¶¶ 85-88, 134-137. Open-Xchange's customers saw that advertising, and as a result, associated Open-Xchange's brand with Openwave's tarnished one. *Id.* ¶¶ 89, 144. Moreover, other potential customers thought that they could obtain Open-Xchange's product and services from Openwave, resulting in lost sales. *Id.* ¶¶ 143-44. These allegations plainly are sufficient to establish proximately-caused injury. *See Lexmark*, 134 S. Ct. at 1393; *Obesity Research Inst.*, 2016 WL 739796, at *2, 4 (counterclaimant sufficiently alleged economic or reputational injury where it alleged that its sales efforts and goodwill were injured as a result of the other party falsely claiming its product was "the same or substantially the same"); *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015) (finding the plaintiff's allegations of "lost sales and profits, and

1    damage to its reputation" caused by defendant's misbranded products and misrepresentations

2    sufficient).

3              Nor are these allegations contradictory, as Openwave contends.  Open-Xchange's

4    allegations are completely consistent with the fact that its business is thriving *generally speaking*

5    and Openwave's is in decline.  Indeed, that provided Openwave's motivation, as it unlawfully

6    capitalized on Open-Xchange's goodwill to try to boost its own reputation.  Dkt. 49 ¶¶ 89, 138-

7    39, 141-44.  And despite Open-Xchange's *overall* success in the market, it suffered harm due to

8    Openwave's unlawful conduct, including brand tarnishment and *individual* lost sales.  *Id.* ¶¶ 89,

9    143-44.  These facts are not inconsistent, and the cases cited by Openwave are inapposite.[2]

10             Openwave attempts to hold Open-Xchange to a much higher pleading standard than it

11   followed in pleading its own claim of false advertising, which only alleged "on information and

12   belief" that customer purchasing decisions were affected and that it had lost business.  *See, e.g.*,

13   Dkt. 42 ¶ 158; *compare id.* ¶¶ 157-59, *with* Br. at 9 n.4.  Open-Xchange properly stated a claim

14   for false advertising under the Lanham Act, and the Court should thus deny Openwave's motion

15   to dismiss this counterclaim.

16   **III.    OPEN-XCHANGE HAS STANDING TO ASSERT CLAIMS FOR FALSE**
17   **          ADVERTISING AND UNFAIR COMPETITION UNDER CALIFORNIA LAW.**

18             Open-Xchange pled the requisite facts that it suffered economic injury caused by

19   Openwave's false statements to support its sixth and seventh counterclaims under California

20   Business and Professions Code sections 17500, 17505, and 17200.

21   _____

22   [2]  *See Reddy v. Litton Indus.*, Inc., 912 F.2d 291, 296 (9th Cir. 1990) (affirming district court's
     dismissal with prejudice where it would be contradictory for plaintiff "to allege a completely new
23   injury" to establish standing since he previously alleged injury from wrongful termination rather
     than from a predicate act under the statute); *Alatraqchi v. Uber Techs., Inc.*, No. 13-cv-03156,
24   2013 WL 4517756, at *5 (N.D. Cal. Aug. 22, 2013) (plaintiff's complaint contradictory where he
     needed to allege employment by defendant to state a claims, but also alleged that he partnered with
25   and was independent of defendant); *Apple, Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1200
     (N.D. Cal. 2008) (considering counterclaims for violations of antitrust laws and finding allegations
26   that simultaneously alleged an "independent and unique market" and avoidance of "competitive
     threats" contradictory); *Salvioli v. Cont'l Ins. Co.*, No. 96-cv-0630, 1996 WL 507297, at *4 (N.D.
27   Cal. Sept. 3, 1996) (rejecting the plaintiffs' attempt at re-characterizing conduct as "negligent
     rather than intentional" to overcome a motion to dismiss).
28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    To establish standing, a party must (1) allege economic injury, and (2) "show that that

2    economic injury was the result of, *i.e.*, caused by, the unfair business practice or false advertising

3    that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011).

4    Courts considering competitor cases have found allegations of lost sales and damage to goodwill

5    and reputation sufficient to show injury.  In *Allergan, Inc. v. Athena Cosmetics, Inc.*, for example,

6    the Federal Circuit considered a claim under section 17200 brought by the sole authorized maker

7    of an eyelash growth product against competitors who unlawfully made or sold similar products.

8    640 F.3d 1377, 1379 (Fed. Cir. 2011).  The plaintiff alleged "that the '[d]efendants' unfair

9    competition has resulted in and continues to result in serious and irreparable injury to Allergan,

10   including but not limited to lost sales, revenue, market share, and asset value.'"  *Id.* at 1379

11   (citing the complaint).  The Court of Appeals reversed the district court's finding that the plaintiff

12   lacked standing, finding it had "plainly alleged an economic injury that was the result of an unfair

13   business practice."  *Id.* at 1382–83.

14       Similarly, in a competitor case before the California Court of Appeal, a law office sued an

15   online expungement service for unfair competition.  *Law Offices of Mathew Higbee v.*

16   *Expungement Assistance Servs.*, 214 Cal. App. 4th 544, 548 (2013).  It claimed that the

17   defendant's conduct "had usurped" its opportunities, since they were competing for the same

18   customers.  *Id.* at 550.  The Court of Appeal reversed the trial court's finding that the plaintiff's

19   "allegations of lost revenue, lost market share, diminution in law firm value, and increased

20   advertising costs were insufficient to establish injury in fact for the purposes of UCL standing."

21   *Id.* at 548.  With respect to causation, the court noted that the allegations of injury "specifically

22   because of the unlawful business practices" were sufficient.  *Id.* at 564.  More recently, in *Luxul*

23   *Technology, Inc.*, the plaintiff brought claims under sections 17500 and 17200 against its sales

24   representative for allegedly rebranding plaintiff's products and misrepresenting to others that

25   plaintiff was facing legal issues.  78 F. Supp. 3d at 1167, 1173.  The court found the plaintiff's

26   allegation of "economic injury in the form of lost customers and sales revenue" sufficient to confer

27   standing.  *Id.* at 1174.

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Here, Open-Xchange more specifically alleges that Openwave made false statements to customers in their shared market, Dkt. 49 ¶¶ 87-88, 147-148, 153; that the customers relied on those false statements, *id.* ¶ 89 (several customers relied on Openwave's false offering of App Suite), ¶ 149 ("drawn by" and "under the mistaken belief"); and that Open-Xchange suffered lost sales and damage to its reputation as a result of Openwave's false statements, *id.* ¶¶ 89, 149-50, 155; *see generally Kwikset Corp.*, 51 Cal. 4th at 327 (noting that the misrepresentation at issue need not be "'the sole or even the decisive cause of the injury-producing conduct'").

Moreover, this is a case between competitors, and Openwave's exclusive reliance on consumer cases is misplaced. In passing Proposition 64, California voters sought to curtail so-called "shakedown" lawsuits, but plainly left standing for "those actually injured by a defendant's business practices." *Kwikset Corp.*, 51 Cal. 4th at 321. In Openwave's authorities, facts showing consumer reliance on the misrepresentation were necessarily in control of the consumer plaintiff. *See Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1087 (N.D. Cal. 2014) (consumers alleging deceptive labeling on snack foods failed to allege that they relied on the challenged statements when purchasing); *Kwikset Corp.*, 51 Cal. 4th at 327 (considering consumer claims against company for false product labeling and marketing); *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009) (considering a consumer class action premised on an advertising campaign); *Pfizer Inc. v. Superior Court*, 182 Cal. App. 4th 622, 633 (2010) (consumer who claimed label was misleading did not recall what the label on the product he purchased said). That is not the case here—Open-Xchange is not alleging that it was harmed because it purchased something from Openwave in reliance on the false statements. It was harmed through a false association with Openwave and Synchronoss and through resulting lost sales of its products. Open-Xchange sufficiently pled facts to establish its standing under California law. Accordingly, the Court should deny Openwave's motion to dismiss these counterclaims.

## IV.   OPEN-XCHANGE PLED SUFFICIENT FACTS IN SUPPORT OF ITS REMAINING COUNTERCLAIMS.

Openwave moves to dismiss counterclaims three through seven on the basis that they are subject to heightened pleading under Rule 9(b) and fail to meet that standard.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

As an initial matter, counterclaims three and four are for breach of the covenant of good faith and fair dealing and breach of contract. These claims do not sound in fraud, and are thus not subject to the heightened pleading requirement. *Ronpak, Inc. v. Elecs. for Imaging, Inc.*, No. 14-cv-04058, 2015 WL 179560, at *4 (N.D. Cal. Jan. 14, 2015) ("[a] breach of contract claim falls outside the reach of Rule 9(b) because such a claim does not require intent to defraud, a false representation, or other elements of fraudulent misrepresentation"). Instead, they allege:

- Openwave breached the covenant of good faith and fair dealing arising out of the parties' OEM Agreement by promoting CriticalPath's RichUI to customers as a replacement for Open-Xchange products and by disparaging Open-Xchange. Dkt. 49 ¶¶ 62-63, 65, 71, 71 n.2, 113, 116-118.

- Openwave breached the OEM Agreement by selling Open-Xchange's App Suite and OX Drive to SMX without authorization, and by using Open-Xchange's name and logo for marketing purposes after the termination of the agreement. *Id.* ¶¶ 76, 78, 83-86, 130-131.

Openwave does not even argue either of these claims specifically in its motion, and identifies no allegation of fraud associated with them. *See* Br. at 14. In any event, Open-Xchange pled detailed facts in support of each counterclaim. *See, e.g., id.* ¶ 63 (identifying a specific customer, Softbank, to whom Openwave promoted RichUI), ¶ 71 (describing a disparaging letter sent by Openwave's Dave Ratner to a specific customer, Company O), ¶ 85-86 (providing the specific web addresses that displayed Open-Xchange's name and logo). The motion is baseless as to these claims and should be denied.

Open-Xchange has pled the remaining counterclaims with the required specificity. In order to meet the Rule 9(b) standard, a plaintiff must identify the time, place, and content of the alleged misrepresentation, as well as the circumstances indicating falseness or manner in which the representation at issue was false and misleading. *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1005 (N.D. Cal. 2014); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106-07 (9th Cir. 2003) ("'The plaintiff must set forth what is false or misleading about a statement, and why it is false.'"). Open-Xchange set forth the specific misrepresentations made by Openwave, alleged

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

how or why they were false, and described when and where they were made, including dates and web-addresses where various statements appeared.  For example:

> [T]hrough May 2016, Openwave falsely stated on its website at http://www.synchronossmessaging.com/technology-partners that Open-Xchange is a "Synchronoss Messaging Technology Partner[] [who] work[s] with Synchronoss Messaging to develop business models and solutions that help customers take advantage of new technologies to provide a full complement of end-to-end solutions." . . . Synchronoss has never been a business partner of Open-Xchange or any of its affiliates.
>
> Openwave also falsely stated on its website, for example at http://www.synchronossmessaging.com/universal-messaging-suite-app-suite and http://www.synchronossmessaging.com/uploads/white_papers_datasheets/OWM_-_App_Suite_-_Brochure_-_2015.pdf, that App Suite is a product that Openwave is able to offer.

Dkt. 49 ¶¶ 87-88; *see also id.* ¶¶ 134, 136, 148 (descriptions, quoted language, dates and web-addresses); *id.* ¶ 35-44, 137, 144 (explaining circumstances indicating falsity, including Openwave's lack of ownership rights and terminated partnership).

Open-Xchange's allegations are also distinguishable from those at issue in Openwave's authorities.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009) (plaintiff alleged a "fraudulent course of conduct" in "Ford's marketing materials and representations" without identifying any specific representation or advertisement); *Vess*, 317 F.3d at 1106-07 (9th Cir. 2003) (no specific misrepresentations alleged); *Frenzel*, 76 F. Supp. 3d at 1011 ("vague" reference to a representation "that the power defects were fixed" without attribution).

Instead of confronting the actual false statements alleged, Openwave quotes a long list of other allegations about which it would like more information.  Br. at 14-16.  For example, various customers informed Open-Xchange that Openwave had offered RichUI to them instead of OX Hosting Edition, and had told them the parties were engaged in "world-wide" litigation.  *See* Dkt. 49 ¶¶ 62-65, 92. While some of these allegations involve "statements," they are not *misrepresentations* on which the counterclaims are based, and are not subject to heightened pleading at all.  *See Vess*, 317 F.3d at 1104-06 (non-fraud allegations do not need to be stated with particularity merely because they appear in a complaint alongside fraud averments).

Openwave's position with respect to these remaining counterclaims is particularly strange, as it ignores the Court's previous ruling in this case and represents a complete reversal of its previous position. When faced with Open-Xchange's motion to dismiss, Openwave described the pleading standard as "relaxed" when the statements at issue were made to third parties.[3] Dkt. 21 at 23-24. As the Court described it:

> Openwave contends that it has met Rule 9(b)'s standard, identifying the specific *type* of misleading statements made to specific clients [] and the specific *type* of misleading statements OX made to plaintiff regarding the "fraudulent proposed merger." [] Therefore, Openwave has satisfied the "who" and "what" and generally the "when" required under *Vess*. Openwave argues that it cannot – at this juncture – provide more specific information without discovery because it has had to "piece together" defendants' fraud from information secured from current and prospective clients and former employees. []
>
> I agree. The purpose behind Rule 9(b) has been satisfied here. OX has been given sufficient information on what the "client misrepresentations" were and who they were given to. Because the client misrepresentations alleged were made to specific third parties, Openwave cannot be expected to plead more facts regarding them at this juncture.

Dkt. 38 at 15-16. The Court went on to reject a request for more detail as "too granular." *Id.* Given Open-Xchange's provision of specific quotations, web addresses, and dates—and the fact that additional information is in Openwave's own control—they are far more detailed than Openwave's fraud allegations that the Court deemed sufficient in this case. Openwave thus cannot reasonably claim that it lacks notice and an opportunity to defend itself against the alleged conduct.[4] The Court should deny Openwave's motion to dismiss these counterclaims.

---

[3] Openwave also reverses its previous (though admittedly incorrect) position that a claim must only be pled with particularity under Rule 9(b) when fraud is an "essential element of a claim." *Compare* Dkt. 21 at 22, *with* Br. at 14.

[4] Openwave also makes a last-ditch attempt to argue that counterclaims three through seven do not even meet the Rule 8 notice pleading standard. Br. at 17-18. But Openwave offers no support for its claim that the counterclaims contain only "threadbare recitals" and "conclusory statements." *Id.* at 17. Moreover, its argument is belied by the two full pages of fact allegations it quotes from the counterclaims. *Id.* at 14-16.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    **V.      THE COURT SHOULD DENY OPENWAVE'S DISFAVORED MOTION TO**
2    **STRIKE AFFIRMATIVE DEFENSES.**

3            The Court should also deny Openwave's motion to strike as Open-Xchange has sufficiently

4    pled all of its affirmative defenses.  "[M]otions to strike a defense as insufficient are disfavored,

5    they will not be granted if the insufficiency of the defense is not clearly apparent." *Fed. Trade*

6    *Comm'n v. Directv, Inc.*, No. 15-cv-01129, 2015 WL 9268119, at *1 (N.D. Cal. Dec. 21, 2015).

7    An affirmative defense is sufficiently pled if it gives plaintiff "fair notice," which in turn only

8    requires describing the defense in general terms.  *Kohler v. Flava Enterprises, Inc.*, 779 F.3d 1016,

9    1019 (9th Cir. 2015); *see also Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1023 (9th Cir. 2010).

10           The *Kohler* decision resolved a district court split regarding whether the heightened

11   *Twombly*/*Iqbal* pleading standard applied to affirmative defenses, determining that the "fair

12   notice" standard still governed.  *See Castellano v. Access Premier Realty, Inc.*, 15-cv-0407, 2015

13   U.S. Dist. LEXIS 158078 (E.D. Cal. Nov. 23, 2015).  Openwave ignores this development, and

14   instead relies expressly on *Twombly/Iqbal* and outdated pre-*Kohler* opinions to argue the

15   incorrect standard.[5]  *See* Br. at 6, 18-21.  Openwave has a general description of the affirmative

16   defenses that provide it fair notice, and the Court should deny the motion to strike.

17           ***Waiver and Estoppel.***  Openwave has widely represented that it does not own a copyright

18   in App Suite and that it has no right to distribute App Suite under the OEM Agreement except by

19   amendment.  It has waived any claim to the contrary and should be estopped from pursuing such

20   claims in this action.  Far from reciting only bare elements of these defenses, Open-Xchange

21   provided detailed supporting fact allegations, for example: (1) the parties' OEM Agreement states

22   on its face that Open-Xchange retains the copyright in any of its core products; (2)  Openwave

23   represented to its customers that App Suite is a separate product and not a version of OX Hosting

24   Edition covered by the OEM Agreement; (3) Openwave acknowledged that it had to amend the

25   OEM Agreement in order to be able to provide App Suite to its customers, again because App

26   Suite is not OX Hosting Edition; and (4) Openwave acknowledged that it had a limited number of

27   _____

28   [5]  As set forth below, Open-Xchange has provided detailed allegations that show its affirmative
     defenses are plausible even under the *Twombly/Iqbal* standard.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

seat licenses for Open-Xchange products, which would not be the case if Openwave actually owned them. Dkt. 49 at 48. Moreover, Open-Xchange provided additional fact detail in the counterclaims, which are incorporated by reference. *See id.*; *id.* ¶¶ 41-43, 62-63. These allegations are plainly sufficient, both to provide "fair notice" of the defenses and to render them plausible. *See Fed. Trade Comm'n*, 2015 WL 9268119, at *3-4 (denying motion to strike waiver and estoppel defenses where answer alleged FTC was aware of an earlier investigation and negotiation regarding defendant's advertising before bringing action); *cf. Catch a Wave, Inc. v. Sirius XM Radio, Inc.*, No. 12-cv-05791, 2013 WL 1996134, at *2 (N.D. Cal. May 13, 2013) (granting motion where defendant alleged only "[on] information and belief" that the plaintiff "knew of the allegedly infringing activity. . . for a number of years").

**Disclosure of /Readily Available Trade Secrets.** Likewise, Open-Xchange sufficiently pled affirmative defenses of disclosure and of known or readily ascertainable trade secrets. Open-Xchange directly alleges that Openwave disclosed the purported "trade secrets" to Open-Xchange, to its own customers, and to members of the public, without any conditions of confidentiality. Dkt. 49 at 50. It further alleges that information is known or readily ascertainable because Openwave's customers discuss the information—which includes the identities and information about the customers themselves—with others in the market. *Id.* Openwave provides no authority for its claim that Open-Xchange must meet a Rule 9(b) fraud pleading standard for these affirmative defenses. Br. at 19 (claiming Open-Xchange must plead "when, where and how such trade secrets were disclosed and by whom and to whom"). Nor can it, as neither "fair notice" nor "plausibility" requires such detail.

**Improper Means.** Open-Xchange alleges that it did not acquire any Openwave trade secrets through improper means. Casting aside the fact that this is a denial of the *exact conduct that Openwave alleges in the complaint* (SAC ¶¶ 168, 184), Openwave argues that the Court should strike the defense because Open-Xchange *may in fact* have initially obtained purported trade secrets through proper means and then misused them. *See* Br. at 20. This is a non-sequitur. Whether Open-Xchange has pled the defense does not depend on Openwave's hypothetical "facts," nor does it matter whether it is a defense to all causes of action or merely some. Such

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

disputes over issues of fact and law are not appropriately resolved by a motion to strike. *See McArdle v. AT&T Mobility LLC*, 657 F. Supp. 2d 1140, 1149-50 (N.D. Cal. 2009), *rev'd and remanded on other grounds*, *McArdle v. AT&T Mobility, LLC*, 474 F. App'x 515 (9th Cir. 2012)) (affirmative defense is insufficient only if it clearly lacks merit "under any set of facts the defendant might allege").

*Mistaken Identity.* Open-Xchange has maintained from the outset of this case that Openwave sued the wrong entity for alleged acts occurring in Europe, the United Arab Emirates, and elsewhere, since Open-Xchange, Inc. only operates in the Americas. Dkt. 49 at 51. The affirmative defense of mistaken identity not only alleges this fact, but sets forth which Open-Xchange entities operate in the relevant regions. *See id.* Openwave knows all of this perfectly well, as it has now sued Open-Xchange Srl in Italy based on the same conduct alleged in this case. It nonetheless argues that Open-Xchange is required to "identify specifically which entity or entities were responsible" for each of the alleged acts or omissions in the complaint in order to maintain the defense. Br. at 21. This argument is aspirational rather than legal.[6] The Court should reject it.

Open-Xchange's affirmative defenses provide fair notice to Openwave and provide sufficient supporting facts to render them plausible. The Court should accordingly deny Openwave's motion to strike.

## VI. IF THE COURT DISMISSES ANY COUNTERCLAIMS OR DEFENSES, IT SHOULD GRANT LEAVE TO AMEND.

Open-Xchange properly pled its counterclaims and affirmative defenses. To the extent the Court determines to the contrary, however, it should give Open-Xchange an opportunity to correct any deficiency. The Ninth Circuit instructs that Rule 15(a) creates a presumption in favor of granting leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). A district court should grant leave absent a showing of prejudice, undue delay, bad

---

[6] Openwave's cited authority, *Perez v. Gordon & Wong Law Group*, No. 11-cv-03323, 2012 WL 1029425, at *1 (N.D. Cal. Mar. 26, 2012) did not even consider the defense of mistaken identity. It required only that the defendant provide some "basic factual allegations" in support of the legal conclusions it alleged. *Id.* at *10.

faith, a *repeated* failure to cure deficiencies by amendment, or futility of amendment.  *Id*. (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also*, *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587, 2014 WL 2730724, at *2 (N.D. Cal. June 16, 2014) (Orrick, J.) (allowing amendment after noting plaintiff failed to make a "strong showing" to overcome the presumption).  Openwave has made no such showing with respect to any claim or defense at issue.  Instead it suggests that the Court should dismiss with prejudice because Open-Xchange amended once voluntarily in response to Openwave's original motion.  Br. at 2.  Such a dismissal would not only be error, as a single amendment hardly constitutes the "repeated failures" or futility required by law, it would also be unfair—in effect punishing Open-Xchange for attempting to resolve a dispute about the pleadings without Court intervention.

## CONCLUSION

For the foregoing reasons, the Court should deny Openwave's motion to strike and dismiss the counterclaims and motion to strike affirmative defenses.

Dated:    September 13, 2016            FENWICK & WEST LLP


                                        By: */s/ Jennifer Kelly*
                                            Jennifer Kelly

                                        Attorneys for Defendant
                                        OPEN-XCHANGE, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW