DAVID M. LISI (SBN 154926)
david.lisi@pillsburylaw.com
MONICA A. HERNANDEZ (SBN 280195)
monica.hernandez@pillsburylaw.com
RYAN SELNESS (SBN 306369)
ryan.selness@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
2550 Hanover Street
Palo Alto, CA 94304-1115
Telephone:    650.233.4500
Facsimile:    650.233.4545

Attorneys for Plaintiff and Counterclaim-
defendant Openwave Messaging, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| OPENWAVE MESSAGING, INC., a Delaware corporation,<br><br>Plaintiff and Counterclaim-defendant,<br><br>v.<br><br>OPEN-XCHANGE, INC., a Delaware corporation,<br><br>Defendant and Counterclaimant. | Case No. 3:16-cv-00253-WHO<br><br>OPENWAVE MESSAGING, INC.'S OPPOSITION TO OPEN-XCHANGE, INC.'S MOTION TO DISMISS OR STAY DUPLICATIVE TRADE SECRET CLAIMS<br><br>Date:         August 16, 2017<br>Time:         2:00 p.m.<br>Courtroom:   2, 17th Floor<br>Judge:        Hon. William H. Orrick |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................... 1

II.  BACKGROUND .......................................................................................................... 2

    A.  Overview Of This Action ..................................................................................... 2

        1.  Trade Secret Causes Of Action ................................................................. 4

        2.  Unfair Competition Causes Of Action ...................................................... 5

    B.  The Court's Ruling On OX's Previous Motion To Dismiss And For *Forum Non Conveniens* .......................................................................................................... 6

    C.  Overview Of The Italian Action .......................................................................... 7

III. LEGAL STANDARD ................................................................................................... 9

IV. ARGUMENT ............................................................................................................... 11

    A.  The Court Should Not Grant A Stay Or Dismissal Under *Landis* .................... 11

        1.  There Is A High Possibility That Openwave Will Be Damaged By A Stay Or Dismissal ............................................................................................... 11

        2.  OX Will Not Be Harmed If A Stay Or Dismissal Is Not granted ............ 12

        3.  It Would Be Against The Orderly Course Of Justice To Grant A Stay Or Dismissal ................................................................................................... 14

    B.  Additional Issues Raised In The Motion ........................................................... 15

        1.  OX's Misrepresentation Regarding The OX Entities ............................... 15

        2.  Openwave Has Sufficiently Described Its Trade Secrets ......................... 18

        3.  OX Has Refused To Produce Documents Related To The Trade Secret And Unfair Competition Allegations ............................................................... 21

V.  CONCLUSION ........................................................................................................... 23

Openwave Messaging, Inc.'s Opposition to Open-Xchange, Inc.'s Motion to Dismiss or Stay☐

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Aliphcom v. Fitbit, Inc.*,
    154 F. Supp. 3d 933 (N.D. Cal. 2015) ................................................................ 14

*Am. Int'l Underwriters v. Cont'l Ins. Co.*,
    843 F.2d 1253 (9th Cir. 1988) ............................................................................ 13

*Bowerman v. Field Asset Servs., Inc.*,
    No. 13-CV-00057-WHO, 2015 WL 5569061 (N.D. Cal. Sept. 21, 2015) (J. Orrick) ............ 10

*Brocade Comm. Systems, Inc. v. A10 Networks, Inc.*,
    873 F. Supp. 2d 1192 (N.D. Cal. 2012) ...................................................... 19, 20

*Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*,
    788 F.2d 535 (9th Cir. 1986) .............................................................................. 18

*Campanelli v. Image First Healthcare Laundry Specialists, Inc.*,
    No. 15-CV-04456-PJH, 2017 WL 2929450 (N.D. Cal. July 10, 2017) ............................ 10, 13

*Colorado River Water Conservation Dist. v. U.S.*,
    424 U.S. 800 (1976) ............................................................................... 9, 10, 13

*Cummins-Allison Corp. v. SBM Co.*,
    No. CV 12-00207 HG-KSC, 2013 WL 12205188 (D. Haw. Oct. 7, 2013) ......................... 10

*FormFactor, Inc. v. Micronics Japan Co., Ltd.*,
    No. CV 06-07159 JSW, 2008 WL 361128 (N.D. Cal. Feb. 11, 2008) ............................. 14

*Gillespie v. Prestige Royal Liquors Corp.*,
    183 F. Supp. 3d 996 (N.D. Cal. 2016) ................................................................. 18

*In re Citric Acid Litig.*,
    191 F.3d 1090 (9th Cir. 1999) ............................................................................ 18

*Jobscience, Inc. v. CVPartners, Inc.*,
    No. 13-cv-4519-WHA, 2014 WL 852477 (N.D. Cal. Feb. 28, 2014) ............................... 19

*Klein v. Cook*,
    No. 5:14-CV-03634-EJD, 2015 WL 2454056 (N.D. Cal. May 22, 2015),
    *appeal dismissed*, 667 F. App'x 608 (9th Cir. 2016) .............................................. 13

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ................................................................................. passim

*Language Line Services, Inc. v. Language Services Associates, Inc.*,
   944 F. Supp. 2d 775 (N.D. Cal. 2013) ................................................................. 20

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005) ................................................................ 11, 13, 14

*Neuchatel Swiss General Ins. Co. v. Lufthansa Airlines*,
   925 F.2d 1193 (9th Cir. 1991) ............................................................................ 10

*Quackenbush v. Allstate Ins. Co.*,
   517 U.S. 706 (1996) ........................................................................................... 10

*R.R. St. & Co. Inc. v. Transp. Ins. Co.*,
   656 F.3d 966 (9th Cir. 2011) .............................................................................. 10

*ReadyLink Healthcare v. Cotton*,
   126 Cal.App.4th 1006 (2005) ............................................................................. 20

*Tessera, Inc. v. Micron Tech., Inc.*,
   No. C-06-80024-MISC-JW (PVT), 2006 U.S. Dist. LEXIS 25114 (N.D. Cal. Mar. 22, 2006)
   ............................................................................................................................ 18

## Statutes and Codes

California Business and Professions Code
   Sections 17200 *et seq*. ........................................................................................ 3
   Sections 17500, *et seq*. ........................................................................................ 3

California Civil Code
   Section 3426.1(b)(2) ................................................................................... 12, 22

California Code of Civil Procedure
   Sections 3426, *et seq*. ...................................................................................... 3, 5
   Section 2019.210 ...................................................................................... 19, 20, 22

United States Code
   Title 15, Section 1125(a) ...................................................................................... 3
   Title 17, Sections 101, *et seq*. .............................................................................. 3
   Title 18, Sections 1836, *et seq*. ............................................................. 3, 5, 12, 22

I.       INTRODUCTION

Defendant Open-Xchange, Inc.'s ("OX" or "OX Inc.") Motion to Dismiss or Stay Duplicative Trade Secret Claims (Dkt. 88) ("Motion") asks the Court to reconsider requests that it ruled on and rejected over a year ago.  On March 21, 2016, the Court rejected OX's attempt to dismiss three of the causes of action at issue under a *forum non conveniens* theory that the misappropriation of trade secret and the unfair competition claims should be brought and litigated in Italy.  In denying that motion the Court stated that Defendant's arguments relating to which entity should be a party and whether Plaintiff Openwave Messaging, Inc. ("Openwave") lacks standing to bring claims related to conduct that occurred in Italy "are not well taken on a motion to dismiss."  Order on Motion to Dismiss (Dkt. 38), 12 n.9.  The Court stated that the proper procedure for adjudicating these issues is at summary judgment or trial.  During the April 26, 2017 Case Management Conference, Defendant's counsel informed the Court that OX would not file a motion for summary judgment.  Defendant instead chooses to file another motion to dismiss in direct conflict with the Court's Order.

This Motion appears to be part of OX's strategy to prolong and withhold proper discovery from Openwave on the very issues raised in this Motion.  OX filed this Motion on the same day it unilaterally and without justification decided to withhold a trove of documents and information it is obligated to produce and which it had previously promised to produce.  Much of this discovery relates to OX's corporate structure and whether for purposes of discovery its purported parent and related subsidiaries were properly treated as separate entities.  Concurrently with this Opposition, Openwave filed a discovery statement which describes in detail Defendant's discovery omissions.  Dkt. 94.  While the corporate status of OX and its alleged parent and subsidiaries is not specifically before the Court in this Motion, OX via its Motion and its actions has put this issue of corporate status before the Court.  As such, Openwave seeks an order requiring OX to immediately produce discovery related to its corporate structure and those of its purported parent and related entities so that Openwave can fully brief the issue for the Court.

What Defendant buries in its Motion is that the lawsuit in Italy ("Italian Action") was

Openwave Messaging, Inc.'s Opposition to Open-Xchange, Inc.'s Motion to Dismiss or Stay □

filed in June 2016, *more than a year before* OX brought this Motion.  Defendant does not explain why it waited until the end of discovery to raise this issue.  The Motion is lacking in any new material facts or events that have occurred since the Italian Action was filed that now require relief.  The Motion should be dismissed on this ground alone.

Setting aside Defendant's improper motive here, this Motion fails as Defendant cannot satisfy its burden to demonstrate that the competing interests described in *Landis* support the Court's utilizing its inherent power to stay or dismiss a portion of the misappropriation of trade secret and unfair competition causes of action.  *See Landis v. N. Am. Co.*, 299 U.S. 248 (1936).  A stay or dismissal of this action would greatly harm Openwave as OX's conduct in Italy resonates beyond the harm that has occurred in Italy.  In addition, OX can describe no material burden from proceeding with these portions of the causes of action.  Finally, the orderly course of justice weighs heavily against granting a stay or dismissal, in part, because the burden and complexity of enforcing any stay would greatly outweigh any purported simplification caused by the stay.  Therefore the Court should deny Defendant's request for a stay or dismissal.[1]

## II.   BACKGROUND

### A.   Overview Of This Action

Openwave Messaging, Inc. was a Delaware corporation with its principal place of business in San Mateo, California.  In March 2016, Openwave was acquired by Synchronoss Technologies, Inc. which has its principal place of business in New Jersey.  Openwave brought this Action against Open-Xchange, Inc., a Delaware corporation with its principal place of business in Palo Alto, California.  Second Amended Complaint (Dkt. 42) ("Complaint" or

---

[1] While OX claims to seek alternatively a stay **or** a dismissal of a portion of certain causes of action, staying a portion of these causes of action would have the same practical effect as a dismissal.  Defendant seeks to continue the remaining portion of this action on the current trial schedule.  Motion at 2-3.  Therefore, even if the Court grants a stay until the conclusion of the Italian Action, it is impossible for the Italian Action to be resolved before discovery closes in this action (currently set for July 28, 2017), the parties bring dispositive motions (currently set for August 4, 2017), and a trial has occurred (currently set for March 12, 2018).  *See* Dkt. 83.  Defendant's true goal is to obtain a dismissal of these causes of action against OX in the United States, even though it claims it is not a party to the Italian Action.  This desire is demonstrated by their proposed order which seeks solely a "dismissal" of portions of these causes of actions.  *See* Proposed Order (Dkt. 88-1).

"Compl.") ¶ 21.  Openwave and OX entered into an OEM agreement on or about June 30, 2011 which was subsequently amended on numerous occasions between August 19, 2011 and June 30, 2014 ("OEM Agreement").  Compl. ¶ 34.

Openwave brings thirteen causes of action against OX: (I) copyright infringement under 17 U.S.C. § 101, *et seq*.; (II) false advertising in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (III) misappropriation of trade secrets under 18 U.S.C. §§ 1836, *et seq*.; (IV) misappropriation of trade secrets under Cal. Code Civ. Proc. §§ 3426, *et seq*.; (V) breach of contract; (VI) breach of the implied covenant of good faith and fair dealing; (VII) tortious interference with contract; (VIII) tortious interference with prospective business relationships; (IX) false advertising under Cal. Bus. and Prof. Code §§ 17500, *et seq*.; (X) unfair competition under Cal. Bus. & Prof. Code §§ 17200 *et seq*.[2]; (XI) common law unfair competition; (XII) fraud; and (XIII) quantum meruit.  Compl. ¶¶ 131-268.

Openwave has consistently argued that OX is the proper party to this action and is responsible and liable for actions within and outside of the United States, including Italy, based on two alternative theories.  First, Openwave has argued that Open-Xchange, Inc. and its related entities, including Open-Xchange AG, Open-Xchange GmbH, and OX S.r.l. (collectively, the "OX Entities"), operate as a single global entity.  OX confirms this theory in the Motion by admitting that "all persons involved in the operations of Open-Xchange at issue are located outside the United States, at Open-Xchange's offices in Germany and Italy, and the relevant evidence is located in Germany and Italy."  Motion at 4:16-18.  The judge in the Italian Action has also recognized the global interconnected nature of the OX Entities and that the acts of OX S.r.l. and its employees have likely permeated the global entity.[3]  Dkt. 90-4 at 10.[4]  Finally, the

[2] While Defendant seeks a stay or dismissal of causes of action VI and XI, which both deal with issues of unfair competition, OX does not seek a stay or dismissal of cause of action X, unfair competition under section 17200 of the California Business and Professions Code.

[3] Evidence in the Italian Action shows that a USB device containing Openwave's confidential and trade secret information was likely connected to a shared virtual environment used by all OX Entities.  *See* Dkt. 90-2 at ¶ 57; Dkt. 90-4 at 5.

[4] In light of the interconnected nature of the OX Entities, it would be difficult if not impossible to wall off the bad acts of one portion of the global entity in a legal action against OX for its conduct worldwide.  The Italian Action was necessary in order to obtain personal jurisdiction over the Italian citizen defendants and an injunction that immediately put a stop to ongoing bad

-3-

1   express language of the OEM Agreement between the Parties states that the agreed upon rate for

2   professional services reflects the use of the "Company's [defined by the OEM Agreement as

3   Open-Xchange, Inc.] *local resources in Germany*" (emphasis added).

4          In the alternative, Openwave has alleged that to the extent the OX Entities are indeed

5   different entities, the OEM Agreement provides that OX's contractual obligations will be

6   performed by employees of OX Entities located elsewhere.  *See* Declaration of Monica A.

7   Hernandez ISO Opposition ("Hernandez Decl."), Exh. 1 at Schedule I, section 3.c (the OEM

8   Agreement explicitly states that OX's "local resources in Germany" (*i.e.*, employees of the OX

9   Entities) would perform work pursuant to the Agreement).  The incidents alleged in the

10  Complaint, therefore, involve OX with the other entities acting as agents of OX.  Under this

11  theory of liability, the actions that incurred in Italy were caused by OX's agents, making OX

12  liable under the OEM Agreement.

13         Openwave sought discovery to support these allegations.  *See* April 12, 2016 Joint Case

14  Management Statement ("CMC Statement") (Dkt. 27) at 7:25-28 (Openwave identified the

15  following factual issues as likely to be in dispute: "Whether the structure, capitalization, and

16  formalities observed by Open-Xchange, Inc. and its related entities, including but not limited to

17  Open-Xchange AG, Open-Xchange GmbH, and Open-Xchange S.r.l., were such that it would be

18  appropriate to pierce the corporate veil in pursuit of damages in this action, or otherwise.");

19  January 10, 2017 CMC Statement (Dkt. 65) (same); April 18, 2017 CMC Statement (Dkt. 75) at

20  4:13-20 (same, but also identifies the following factual issue: "Whether Open-Xchange operated

21  at all relevant times as a single entity, without proper regard to corporate formalities thus

22  rendering it one corporation in fact, and thus, with its officers, directors and employees, subject

23  to the jurisdiction of this Court for all relevant purposes").  OX has not provided substantive

24  responses to the discovery propounded that relates to these allegations.

25          1.    Trade Secret Causes Of Action

26         The Motion seeks a stay of Cause of Action III (misappropriation of trade secrets under

27

28  acts, but seeks only relief for the harm caused to Openwave S.p.A, and cannot, address the global
harm that has been caused on Openwave.

                Openwave Messaging, Inc.'s Opposition to Open-
Xchange, Inc.'s Motion to Dismiss or Stay

1   18 U.S.C. §§ 1836, *et seq*.) and Cause of Action IV (misappropriation of trade secrets under Cal.

2   Code Civ. Proc. §§ 3426, *et seq*.) (collectively, the "Trade Secret Causes of Action"). Openwave

3   alleges in the Complaint that OX, using as its agents employees located both within and outside

4   the United States interchangeably, misappropriated, disclosed, used, and continues to use

5   Openwave's trade secrets. Compl. ¶ 168. Openwave brings causes of action based on both

6   federal and California state law. OX acquired Openwave's trade secrets in the United States and

7   globally, through both (1) various misrepresentations made in connection with confidentiality

8   and nondisclosure obligations OX owed Openwave under the agreements and (2) by inducing

9   several of Openwave's employees to join OX and to take and misuse Openwave's trade secrets.

10            Openwave alleges that OX used and continues to use Openwave's trade secrets both in

11   the United States and globally. *See* Complaint at ¶¶ 73-77 (alleging that OX misappropriated

12   Openwave's trade secrets and used them to implement the OX user interface at Virgin Media, a

13   company headquartered in the United Kingdom), 120 (alleging that OX has been using

14   Openwave's trade secrets to interfere with Openwave's existing business relationship with a

15   customer located in Japan), and 126-129 (alleging that OX pursued "Openwave's employees in

16   the United States, Europe and the Asia-Pacific Region and induce[d] them to move to OX and to

17   take confidential and proprietary information with them." Some of these employees took

18   Openwave's trade secrets "to support OX in unfairly competing in several markets throughout

19   the world, including the United States, Italy, Spain, the UAE and New Zealand."); *see also id.* at

20   ¶¶ 167-197.

21                    2.       Unfair Competition Causes Of Action[5]

22            Defendant also seeks a stay of Cause of Action VI (breach of the implied covenant of

23   good faith and fair dealing) and Cause of Action XI (common law unfair competition)

24   (collectively, the "Unfair Competition Causes of Action"). Openwave's Complaint alleged that

25   OX breached the implied covenant of good faith and fair dealing by among other things:

26   _____

27   [5] While the Motion pays lip service to the Unfair Competition causes of action, they are clearly
an afterthought. Because Defendant made no particular arguments specific to the Unfair
Competition Causes of Action, Openwave focuses its opposition to the Motion on the Trade

28   Secret Causes of Action. Openwave requests the ability to file a sur-reply in the event OX raises
issues relating to the Unfair Competition Causes of Action for the first time in the its reply brief.

1      [1] misappropriating Openwave's trade secrets; [2] taking for its own use, without permission, Openwave's property protected by copyright that was obtained under the auspices of working with Openwave on joint system development and implementation projects; [3] using confidential, proprietary and/or trade secret information in the possession of former Openwave employees it induced to join OX to assist OX with its plans to compete unfairly against Openwave; [4] refusing to support and/or continue to license OX products and services as agreed under applicable contracts; [5] making false and damaging statements to Openwave customers and potential customers in order to steal business from Openwave based on those false representations; [6] pretending to partner with Openwave on projects while secretly trying to take those contracts and potential contracts for its sole benefit; and [7] otherwise engaging in acts to deprive Openwave of the benefits of the Agreements.

Openwave also alleges breach of common law unfair competition based on similar conduct by OX.  *See* Complaint at ¶¶ 55-56 (alleging that OX disparaged Openwave at the Open-Xchange Summit in Germany, which was attended by 593 delegates from 21 different countries), 57-63, 89-91, 93-120 (alleging that OX began to unfairly compete with Openwave and target Openwave's customers located in the United States, Canada, Japan, Italy, Belgium, UAE, New Zealand, and the UK), 73-77, 120 (alleging that OX misappropriated and used Openwave's trade secrets and/or copyright with customers located in the United Kingdom and Japan), and 126-129 (alleging that OX induced Openwave's employees located throughout the world to move to OX and misappropriate Openwave's trade secrets, and that OX used those trade secrets to unfairly compete with Openwave in several markets throughout the world, including the United States, Italy, Spain, the UAE, and New Zealand.); *see also id.* at ¶¶ 167-197, 204-210, and 246-255.

    B.     The Court's Ruling On OX's Previous Motion To Dismiss And For *Forum Non Conveniens*

    Defendant filed an earlier motion to dismiss in this action on March 21, 2016, in which it requested that the Court dismiss a number of causes of action, including three of the four causes of action at issue here (Causes of Action III, VI and XI), based on a theory of *forum non conveniens*.  OX dedicated a great deal of that motion, like it does again here, to arguing that since the wrongdoing occurred in Italy, OX is not the proper party and instead the true parties in interest to the Trade Secret and Unfair Competition Causes of Action are OX S.r.l. and Openwave S.p.A.  OX also represented that all persons involved in OX's operations are located in OX's Italian and German offices.  Motion at 4.

1    On May 9, 2016, the Court denied Defendant's *forum non conveniens* arguments, holding

2    that the forum-selection clause in the OEM Agreement and the public interest factors weighed in

3    favor of denying the motion to dismiss.  The Court held that while OX can bring arguments

4    regarding standing and the identity of the proper party *at summary judgment and trial*, "these

5    arguments are not well taken on a motion to dismiss."  Order on Motion to Dismiss (Dkt. 38), 12

6    n.9.  Notwithstanding the Court's order, Defendant filed this Motion.

7         C.      Overview Of The Italian Action

8    Following the Court's March 21, 2016 order on Defendant's motion to dismiss,

9    Openwave's Italian subsidiary Openwave Messaging S.p.A.  ("Openwave S.p.A.") filed a

10   lawsuit and temporary restraining order based on egregious acts in Italy that imminently harmed

11   Openwave S.p.A. by OX's related Italian subsidiary Open-Xchange S.r.l. ("OX S.r.l.")[6] and four

12   of Openwave's former employees Cristian Germani, Alberto Camerlo, Simone Leprai, and

13   Gianni Pace (collectively, the "Italy Individual Defendants") who had been induced to leave

14   Openwave S.p.A. and join OX S.r.l.[7]  The Italian Action alleges misappropriation of trade

15   secrets and unfair competition under Italian law based on events in Italy and harm to Openwave

16   S.p.A.  *See* Di Santo Declaration at ¶¶ 3, 6, 8, and 16.  The Italian court granted Openwave's

17   request for an initial forensic investigation, which concluded in July 2016.  Based on that

18   investigation's findings, Openwave S.p.A. shortly thereafter sought injunctive relief to stop OX

19   S.r.l. and the Italy Individual Defendants from ongoing conduct that was harming Openwave

20   S.p.A.  *See* Dkt. 90-4 at 2-3.

21   On December 19, 2016, the court in the Italian Action granted Openwave S.p.A.'s

22   request for injunctive relief and issued a penalty against OX S.r.l.  *See id.* at 3.  After OX S.r.l.

23   appealed the ruling, the court issued a new ruling in February 3, 2017 upholding the earlier

24   order.  *See id.* at 13.  This February 3, 2017 order contained damning findings against OX. S.r.l.

25

26   [6] OX argues in the Motion that it is a wholly-owned subsidiary of Open-Xchange AG, which is
     headquartered in Nuremberg, Germany.  Motion at 2, n1. OX claims that Open-Xchange AG

27   also owns 100% of Open-Xchange GmbH, which is located in Olpe, Germany and that Open-
     Xchange GmbH, in turn, owns OX S.r.l., which is located in Turin, Italy.  *Id.*

28   [7] Openwave S.p.A. filed the Italian Action in Italy because the U.S. courts do not have
     jurisdiction over the Italy Individual Defendants, who are Italian residents and citizens.

-7-

1    and implicated all the OX Entities in the misconduct.  With regards to misappropriation of trade

2    secrets, the court stated that there is "clear and manifest *prima facie* evidence that the claim by

3    OPENWAVE MESSAGING S.p.A. is substantiated." Dkt. 90-4 at 8.  This *prima facie* evidence

4    included the court-appointed expert witness finding that files likely to have originated from

5    Openwave S.p.A. were traced on OX S.r.l.'s company computers.  *Id*.  The court also found

6    materials and functions first developed by Openwave S.p.A. being used by OX S.r.l. for its work

7    with Italiaonline S.p.A., an Italian customer that OX S.r.l. stole from Openwave S.p.A.  *Id*. at 5,

8    9.

9         The Court also recognized highly suspicious conduct by certain Italy Individual

10   Defendants.  For example, Mr. Pace during his last days at Openwave S.p.A. inserted three

11   different USB drives and logged heavy computer use that was not attributable to his duties.  Dkt.

12   90-4 at 9.  The Court held that the reasonable implication of this conduct is that Mr. Pace was

13   copying computer files belonging to Openwave S.p.A.  *Id*.  At the same time, almost half a

14   million files were deleted from the same computer.  *Id*. at 10.  All of this conduct was contrary to

15   Openwave S.p.A.'s security protocols.  *Id*. at 7-8.

16        Most significant to the court in the Italian Action was Mr. Camerlo's action.  *Id*. at 10.

17   He initially agreed to provide his work computer to the court-appointed expert witness.  *Id*.

18   However, when the date arrived to turn over his computer, he made the excuse that he had to go

19   to Germany, the country in which OX and OX S.r.l's parent is headquartered.[8]  *Id*.  He then

20   claimed that he "lost the PC" in Germany during that trip and therefore could not provide it to

21   the expert witness.  *Id*.  The court held that

22             [i]n fact – even with the benefit of the doubt – the version of the facts put forward by the
              appellant Alberto CAMERLO cannot seriously be believed, given the extremely
23             improbable coincidence of the two events described (legal investigations and the
              accidental loss abroad of the object being investigated).  *Id*.
24

25   _____

26   [8] The Court also recognized the connection between OX S.r.l. and the OX entities: "[f]inally, it is
     added that while it is true that OPEN X-CHANGE s.r.l. belongs to a group whose international
27   base goes much further than its current presence in the Italian market, and it is also true that there
     is no doubt that it only recently launched itself and increased its hold of the Italian market and
28   that this increase coincided with the engagement of the four former employees of OPENWAVE
     MESSAGING S.p.A."  *Id*. at 10.

-8-

Openwave Messaging, Inc.'s Opposition to Open-
                                                       Xchange, Inc.'s Motion to Dismiss or Stay

When OX S.r.l.'s actions were taken collectively the Court held that "there exists a serious, well-founded legal basis for the claim (fumus), that part of the confidential information held by OPENWAVE MESSAGING S.p.A. was transferred to OPEN X-CHANGE S.r.l." *Id.* The Court upheld the preliminary injunctions issued in the earlier ruling which bar

> (1) the use and retention of Openwave S.p.A.'s information and technical expertise,
>
> (2) the use or retention of Openwave S.p.A.'s copyright work, and
>
> (3) OX S.r.l. carrying out any acts of unfair competition to the detriment of Openwave S.p.A. *Id.* at 3.

The court also issued a harsh penalty to be used in the event of future infringements and the publication of the measure. *Id.*

Openwave S.p.A. has requested that the court appoint a digital forensic expert to examine in detail the materials gathered from OX S.r.l.'s offices. Di Santo Decl. ¶ 14. OX S.r.l. opposes this motion. *Id.* Openwave S.p.A. has also asked the Court to rule on OX S.r.l.'s failure to provide Mr. Pace's hard drive which he used while at Openwave S.p.A. and was found to have been connected to numerous OX S.r.l. devices. *Id.* Following the forensic investigation, the parties will begin formal discovery on the merits.

The Italian Action focuses on OX S.r.l.'s actions in Italy and the harm caused to Openwave S.p.A. *Id.* at ¶ 16. What is not being litigated in the Italian Action is the world-wide harm caused to Openwave by OX. The Italian Action also does not deal with the additional misappropriation of Openwave's trade secrets outside Italy, following OX S.r.l.'s sharing Openwave's trade secrets with other OX Entities.

III.   LEGAL STANDARD

Defendant requests a stay or dismissal of portions of the Trade Secret and Unfair Competition Causes of Action, to the extent they involve events in Italy solely under the Court's inherent power to control its dockets under the standard set forth in *Landis v. N. Am. Co.*, 299 U.S. 248 (1936).[9]  While federal courts have the inherent power under *Landis* to stay or dismiss

---

[9] OX concedes that its basis for bringing this Motion under *Landis* is suspect at best. Because the purportedly parallel case is in a foreign jurisdiction, the Court should use the *Colorado River* standard to determine whether a stay is justified. *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976). The Colorado River doctrine applies when there are parallel

1   actions, it is only to be used in the interest of efficiency and fairness to the court, counsel, and

2   litigants. *Landis*, 299 U.S. at 254-255. "The burden is on the movant to establish that a stay is

3   appropriate." *Bowerman v. Field Asset Servs., Inc.*, No. 13-CV-00057-WHO, 2015 WL

4   5569061, at *2 (N.D. Cal. Sept. 21, 2015) (J. Orrick). "The district court's determination of

5   whether a stay is appropriate 'must weigh competing interests and maintain an even balance.'"

6   *Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, No. 15-CV-04456-PJH, 2017

7   WL 2929450, at *2–3 (N.D. Cal. July 10, 2017) (*quoting Landis*, 299 U.S. at 254-55). "The

8   federal courts' inherent power to stay must be balanced against its 'strict duty to exercise

9   jurisdiction that is conferred upon them by Congress.'" *Cummins-Allison Corp. v. SBM Co.*, No.

10  CV 12-00207 HG-KSC, 2013 WL 12205188, at *3 (D. Haw. Oct. 7, 2013) (quoting

11  *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)).

12          Courts regularly compare three competing interests when determining whether to grant a

13  stay or dismissal under *Landis*: "[1] the possible damage which may result from the granting of a

14  stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and

15  [3] the orderly course of justice measured in terms of the simplifying or complicating of issues,

16  proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*,

17  300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254–55). "When weighing the

18  relevant interests, the court must be mindful that 'if there is even a fair possibility that the stay

19  for which [the movant] prays will work damage to someone else,' then the movant 'must make a

20  clear case of hardship or inequity in being required to go forward.'" *Bowerman v. Field Asset*

21  *Servs., Inc.*, No. 13-CV-00057-WHO, 2015 WL 5569061, at *2 (N.D. Cal. Sept. 21, 2015) (J.

22  Orrick) (quoting *Landis*, 299 U.S. at 254–55). "[B]eing required to defend a suit, without more,

23  does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer*

24

---

25  proceedings in two different court systems. *Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines*,
    925 F.2d 1193, 1195 (9th Cir. 1991); *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978

26  (9th Cir. 2011); *See Cummins-Allison Corp. v. SBM Co.*, No. CV 12-00207 HG-KSC, 2013 WL
    12205188, at *3 (D. Haw. Oct. 7, 2013). Defendant is anxious to avoid an analysis under

27  *Colorado River* because courts are given far less discretion to stay proceedings under *Colorado*
    *River*: stays are permitted only under "exceptional circumstances" and are normally allowed only

28  when parties of the two actions are identical.

-10-

Openwave Messaging, Inc.'s Opposition to Open-
                                                                                     Xchange, Inc.'s Motion to Dismiss or Stay

1  *v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005).

2  IV.    ARGUMENT

3        A.    The Court Should Not Grant A Stay Or Dismissal Under *Landis*

4        Defendant's Motion is meritless and should be denied.  OX fails to cite a single case, let

5  alone one from this district, where a court granted a stay or dismissal of portions of certain

6  causes of action because of a foreign proceeding involving what OX claims to be different

7  entities.  Further, OX has failed to meet its burden of demonstrating that a stay is appropriate as

8  all competing interests weigh overwhelming against granting a stay.

9               1.    There Is A High Possibility That Openwave Will Be Damaged By A Stay

10                    Or Dismissal

11       Undoubtedly Openwave will be damaged by a dismissal[10] or stay of portions of its Trade

12  Secret and Unfair Competition Causes of Action.  A stay or dismissal would restrict Openwave's

13  ability to obtain a judgment against OX for its global campaign of trade-secret misappropriation

14  and unfair competition.  As described above in Section II.C, the Italian Action is focused on

15  conduct by a subsidiary in Italy and specific OX employees located in Italy and outside the

16  Court's jurisdiction.  *See* Di Santo Declaration at ¶ 16.  The remedy sought is similarly focused

17  on conduct in Italy.  *Id.*  As the Italian court's recent ruling granting injunctive relief

18  demonstrates, that lawsuit was necessary to stop the ongoing actions of the subsidiary and the

19  individuals involved in the theft.  *See* Dkt. 90-4 at 10-11; *see also* Di Santo Declaration at ¶ 13.

20       The bad acts that Openwave alleges in this action go beyond the conduct of just OX S.r.l.

21  and its specific employees.  The conduct in Italy is attributable to all OX Entities because (1) the

22  OX Entities are in reality one global entity, or alternatively (2) the OX Entities and its employees

23  are agents of OX, all of whom performed work pursuant to the OEM agreement and SOWs

24  issued under the OEM Agreement.  As Defendant admits "all persons involved in the operations

25  of Open-Xchange at issue are located outside the United States, at Open-Exchange's offices in

26  Germany and Italy, and the relevant evidence is located in Germany and Italy."  Motion at 4:16-

27

28  [10] As described above in fn 1, any stay in this action would be tantamount to a dismissal in light
of the upcoming close of discovery and the current trial schedule.

18.  OX cannot now argue that persons involved in its operations are located in Italy and that relevant evidence is located in Italy but then require Openwave to isolate actions in Italy from the rest of the company.  The actions of OX's Italian subsidiary and its employees permeated all of the OX entities and have had a global detrimental impact on Openwave.  Evidence in the Italian Action shows that a USB device containing Openwave's confidential and trade secret information was likely connected to a shared virtual environment used by all Open-Xchange entities.  *See* Dkt. 90-2 at ¶ 57; Dkt. 90-4 at 5.  This shows that even if Openwave's trade secrets were misappropriated by employees of OX S.r.l., employees of all the OX Entities had access and were able to use the trade secrets without Openwave's authorization.  The subsequent unauthorized use of trade secrets in the United States and abroad is improper and constitutes sufficient grounds to bring claims for trade-secret misappropriation in this jurisdiction.  *See* Cal. Civ. Code § 3426.1(b)(2) (defining "misappropriation" to include "[disclosure or use of a trade secret of another without express or implied consent by a person who . . . [a]t the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was . . . [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use[] or [d]erived from or through a person who owned a duty to the person seeking relief to maintain its secrecy or limit its use . . ."]; 18 U.S.C. § 1836 (same).  OX cannot quarantine its bad acts in Italy from the global harm they caused.

In addition, dismissing portions of these causes of action and requiring them to be litigated only in Italy would effectively rewrite the OEM Agreement in OX's favor.  The parties agreed to exclusive venue in the Northern District of California for all disputes and that California law would govern.  Hernandez Decl., Exh. 1 at Schedule II, section 15.2.  Requiring a portion of this dispute to be litigated in Italy under Italian law would eliminate this negotiated contractual benefit.

> 2.     OX Will Not Be Harmed If A Stay Or Dismissal Is Not granted

Defendant provides two reasons for how it will be harmed if this action is not dismissed, neither are convincing.  First, OX claims it will "waste time, effort, and resources litigating duplicative claims in parallel forums."  Motion at 11 and 12.  This reasoning fails as both the

-12-

Openwave Messaging, Inc.'s Opposition to Open-Xchange, Inc.'s Motion to Dismiss or Stay

1 Ninth Circuit and this District specifically have held "being required to defend a suit, without

2 more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis.*'"

3 *Campanelli*, 2017 WL 2929450, at *2–3 (J. Orrick) (*quoting Lockyer v. Mirant Corp.,* 398 F.3d

4 at 1112); *see also Klein v. Cook*, No. 5:14-CV-03634-EJD, 2015 WL 2454056, at *2 (N.D. Cal.

5 May 22, 2015), *appeal dismissed*, 667 F. App'x 608 (9th Cir. 2016) ("Moreover, the moving

6 party must cite to something more than the intrinsic inconvenience arising from involvement in

7 litigation"). Therefore, Defendant's complaint that it will need to spend "substantial time and

8 resources pursuing fact and expert discovery on such issues, resolve related discovery disputes,

9 and litigate the trade secret claims on summary judgement" does not constitute a "clear case of

10 hardship or inequity." *Lockyer*, 398 F.3d at 1112.

11  Defendant's delay in bringing this action also weighs against it being harmed if a stay is

12 not granted. The Italian Action has been ongoing for over a year but the Motion is silent as to

13 any examples of how OX has been harmed by having to litigate both actions during the period.

14 Defendant waited until the end of discovery to raise this issue and set a hearing date past the

15 current end of discovery. Any cost related to producing documents related to the action in Italy

16 is caused by OX's wholesale refusal to produce responsive documents. *See* Statement Regarding

17 Discovery Dispute #4 Re: Open-Xchange's Discovery Responses (Dkt. 94) ("Discovery Dispute

18 #4") (explaining OX's refusal to produce relevant information and documents, including

19 information related to the Trade Secret Causes of Action). OX cannot now argue it will be

20 harmed if it has to produce documents that it should have produced months ago.

21  OX's second argument that it will be harmed if no stay is granted is equally meritless.

22 OX argues that if the two cases proceed, there could potentially be inconsistent outcomes.[11] If

23 the entities are separate, as OX argues in the Motion,[12] then the possibility of differing outcomes

24 is to be expected and OX provides no explanation of how it would be harmed if that occurred.

25 Defendant cannot have it both ways: it cannot claim it is a separate entity from OX S.r.l. and, at

26 [11] Defendant's reliance on *Am. Int'l Underwriters v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th

27 Cir. 1988) is quizzical as *Am. Int'l Underwrites* relates to a stay under *Colorado River*, which
OX specifically rejects as a basis for the stay it seeks.

28 [12] Defendant goes to great lengths to claim that OX and OX S.r.l. are entirely separate entities
and there is no direct relationship between the two. Motion at 2 fn. 1.

Openwave Messaging, Inc.'s Opposition to Open-
Xchange, Inc.'s Motion to Dismiss or Stay

the same time, claim OX S.r.l.'s litigation costs and the potential adverse Italian judgment as potentially damaging.  OX would still not be harmed by inconsistent outcomes if it is held to be a single global entity.  Courts regularly deal with such issues and any theoretical concern of a double recovery can be resolved through pre-trial motions.

          3.      It Would Be Against The Orderly Course Of Justice To Grant A Stay Or Dismissal

The final *Landis* interest factor, the orderly course of justice, also weighs heavily against granting a stay or dismissal.  Orderly course of justice is measured in "in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer*, 398 F.3d at 1110.  Outside of conclusory statements, Defendant fails to provide any support that issues, proof, or questions of law would be simplified by a stay of portions of certain actions.

Questions of law would not be simplified as the Trade Secret and Unfair Competition Causes of Action are brought here under U.S. federal law, California state law, and common law existing in the United States.  The Italian Action's trade secret and unfair competition causes of action are brought under Italian law against individuals in Italy over whom the Court has no personal jurisdiction.  *See* Di Santo Declaration at ¶ 8.  Defendants also cannot allege that issues or proof would be simplified while taking the conflicting position that OX and OX S.r.l are entirely different entities.  If the entities are separate as Defendant takes great pains to claim, then issues and proof would be need to be separately analyzed for each entity.

The cases Defendant cites are factually distinguishable from the matter at hand.  Both *FormFactor, Inc. v. Micronics Japan Co., Ltd.*, No. CV 06-07159 JSW, 2008 WL 361128 (N.D. Cal. Feb. 11, 2008), and *Aliphcom v. Fitbit, Inc.*, 154 F. Supp. 3d 933 (N.D. Cal. 2015), involve patent disputes that were stayed at the outside of their cases in whole in order for the identical parties to undertake specialized ITC proceedings which were already far along.  Here, Defendant seeks to stay or dismiss portions of some causes of action in light of a foreign action that OX claims involves entirely different parties.

Entirely absent from th**e** Motion is any explanation of how the stay or dismissal would

-14-

Openwave Messaging, Inc.'s Opposition to Open-
Xchange, Inc.'s Motion to Dismiss or Stay☐

1   work.  According to the Proposed Order (Dkt. 88-1), the Court should dismiss

2         Openwave Messaging, Inc.'s misappropriation of trade secrets and unfair
        competition claims (Counts III, IV, VI, and XI) to the extent they are based on
3       allegations concerning conduct that occurred in Italy and are duplicative of the
        trade secret claims that a foreign subsidiary of Openwave Messaging, Inc.,
4       Openwave Messaging SpA, is currently litigating in Italy against an indirect
        Italian affiliate of Open-Xchange, Inc., Open-Xchange, S.r.l.
5

6   Defendant is silent as to how such a dismissal would work as a practical matter because the

7   application of the stay would cause far greater waste of the Court's time and resources than any

8   potential conservation the stay would provide.  Instead of simplifying issues, a stay would lead to

9   a plethora of discovery and evidentiary motions that would add unnecessary complexity.  It is far

10  simpler to allow Openwave to obtain and raise evidence of OX global conduct without the Court

11  having to consistently determine whether what is requested or offered could be or has been part

12  of the Italian Action. Granting a stay or dismissal would mean the Court is rewriting express

13  contract language in the OEM Agreement which specifies venue and governing law which would

14  complicate issues of proof and questions of law.

15        B.     Additional Issues Raised In The Motion

16        Defendant's Motion raises numerous ancillary issues that are unnecessary for the Court to

17  consider in order to rule on the Motion.  However, Plaintiff provides the following response to

18  these issues in the hope of clearing up the numerous misrepresentations made by Defendant.

19              1.     OX's Misrepresentation Regarding The OX Entities

20        OX misrepresents to the Court that OX is district from its related entities, including

21  Open-Xchange AG, Open-Xchange GmbH, and Open-Xchange S.r.l.  Motion at 2 fn. 1.  OX

22  knows this to be false.[13]  Documents recently produced in this case show that the OX Entities act

23  as a single entity, without proper regard to corporate formalities, thus rendering it one

24  corporation in fact.  This makes its officers, directors, and employees subject to this Court's

25  jurisdiction for all relevant purposes.  In fact, documents produced show that the OX Entities

26  have the same management team and board of directors and no effort is made to distinguish the

27  

28  [13] As noted earlier, Defendant admits in the Motion that OX personnel and relevant evidence
    exist in its offices in Italy and Germany. Motion at 4.

-15-

entities.  *See* Hernandez Decl., Exhs. 2  (presentation showing the "Open-Xchange Organization," dated October 2013.  This document lists Rafael Laguna, Carsten Dirks, Monika Schroeder, Martin Kauss, Stephan Martin, Richard Landsman,[14] Frank Hoberg, and Chris Latterell as the management team, without making any distinctions among the OX Entities.  The document also shows that many OX employees report directly to these individuals.  In fact, the Sales team is headed by Mr. Hoberg, who runs both the European/Asian and the Americas teams, which include employees of OX.),[15] 7 (Open-Xchange Board Meeting, dated April 14, 2011, which appears to have taken place in Olpe, Germany and contains the Open-Xchange AG name at the bottom of some slides.  This presentation specifically mentions Openwave and the OEM Agreement, while not specifying that this partnership relates only to OX), and 8 (Open-Xchange AG Investor Presentation, dated June 28, 2016, making no distinction among the OX Entities.  Page 28 indicates that the "OX Group" consists of all the OX Entities.  The presentation also shows combined employee structure, financial statements, business plan, and revenue statements for all the OX Entities, and makes no distinction among the shareholder structure, executive management, and customers for the OX Entities, including customers located in the United

---

[14] Mr. Landsman is an employee of OX. *See* Dkt. 26-2.

[15] OX has maintained that it will produce documents and information only from individuals employed by OX and from its management team, which it claims includes only Ms. Schroeder and Messrs. Laguna and Dirks.  Documents produced show that Mr. Hoberg and Mr. Martin were also part of OX's management team.  Specifically, Mr. Hoberg is the EVP of Worldwide Sales with all sales teams for all the OX Entities, including OX, reporting directly to him.  *See* Hernandez Decl., Exh. 3 (Open-Xchange presentation, dated September 18, 2015, showing that Mr. Hoberg runs Sales for the OX Entities and that employees of OX report directly to him); *see also id.*, Exhs. 4-6 (emails showing that Ms. Schroeder and Messrs. Laguna, Martin, and Hoberg participated in drafting and negotiating the OEM Agreement); 18 (OX's Initial Disclosures, disclosing Ms. Schroeder and Messrs. Laguna, Martin, Dirks, Hoberg, and Cristian Germani as individuals likely to have discoverable information that OX may use in support of its claim or defenses).  Yet, OX continues to withhold documents from Messrs.  Hoberg and Martin on the grounds that they are not employees or agents of OX and that OX does not have possession, custody, or control of their documents.  OX is being dishonest.  To date, the parties have produced 5,187 emails where Mr. Hoberg is either the author or recipient, which show that he was intimately involved in negotiating most, if not all, the agreements entered into between Openwave and OX.  Similarly, the parties have produced at least 5,538 emails where Mr. Martin is either the author or recipient, which also show the extent of his involvement with OX and its dealings with Openwave.

1   States).[16]

2        The OX Entities also presented themselves as a single entity to the public at large.  *See*

3   Hernandez Decl., Exhs. 9-12 (Open-Xchange presentation for the Deutsche Borse German Stock

4   Market Workshop held in April 29, 2014, showing that the OX Entities held themselves as a

5   single entity to the public.  The document shows that the OX Entities have a combined sales and

6   work force, combined clients, and "location sites" in Hamburg, Nurnberg, Olpe, and Palo Alto.

7   Of importance, the presentation mentions Openwave as Open-Xchange's partner, without

8   making the distinction, as it now claims, that Openwave only partnered with OX Inc.).

9   Remarkably, the OX Entities refer to Open-Xchange AG, OX's parent company, as Open-

10  Xchange's headquarters, and its subsidiaries as branch offices.  Specifically, they refer to Open-

11  Xchange GmbH as the "European Office" and OX as the "US Office."  *See id.*, Exhs. 13

12  (February 10, 2017 email with Mr. Laguna's signature line referencing the Open-Xchange

13  "offices"), 5 (June 15, 2011 email string with signature lines for Ms. Schroeder and Mr. Laguna

14  referencing the Open-Xchange "offices"); 9-12 (public presentation referring to the OX Entities

15  as "location sites").

16       OX's unreasonable and contradictory position regarding the OX Entities has bottlenecked

17  Openwave's attempt to obtain relevant discovery by claiming that no relevant information exists

18  in OX's possession, custody, and control, while simultaneously admitting that such information

19  is under the control of its related entities.[17]  This is dishonest.  In the Motion, Defendant admits

20  _____

21  [16] OX refuses to confirm whether its response to Openwave's interrogatory no. 17 is complete.
    *See* Hernandez Decl., Exh. 20.  This interrogatory asks OX to "Identify each officer and director
22  of each Open-Xchange entity, including Open-Xchange Inc., Open-Xchange AG, Open-Xchange
    GmbH, and Open-Xchange S.r.l."  *See* Dkt. 94-2, at 549-50 (OX's response is missing multiple
23  roles for each OX entity).  Accordingly, the overlap between OX and its related entities may be
    more extensive than the documents produced show.
24  [17] OX's unjustified refusal to produce relevant documents is explained by its own admission that
    the OX related entities are responsible for the harm alleged in the Complaint.  *See* Affirmative
25  Defense no. 8 (Dkt. 49) ("Openwave's claims for false advertising, trade secret misappropriation,
    tortious interference, unfair competition, and fraud (Counts II-IV and VII-XII) are barred, in
26  whole or in part, because it has sued the wrong party.  Many of its allegations pertain to actions
    Openwave asserts to have occurred outside of the Americas, and therefore these actions were not
27  and could not have been performed by Open-Xchange, Inc., which only operates in North
    America, Central America, and South America.  The geographic nature of Openwave's
28  allegations suggest that these claims are more properly asserted against one or more of the

                                           -17-

1  that OX personnel and relevant evidence exist in its offices in Italy and Germany.  Motion at 4.

2  Furthermore, the OEM Agreement, the document on which this action is based, states that OX

3  has "local resources in Germany" and that OX can provide those resources to satisfy its

4  obligations under the OEM Agreement.  Defendant cannot argue that while it had the ability to

5  compel these resources in Europe to complete the work under the OEM, it does not have the

6  power or authority to produce the documents of its European resources.  Additional documents

7  produced by both parties clearly indicate that the same individuals controlled all the OX Entities.

8  Accordingly, OX can, and should, produce documents it claims are in the possession, custody,

9  and control of its related OX entity.  *See In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir.

10  1999) ("[c]ontrol is defined as the legal right to obtain documents upon demand." (citation

11  omitted)); *see also Tessera, Inc. v. Micron Tech., Inc.*, No. C-06-80024-MISC-JW (PVT), 2006

12  U.S. Dist. LEXIS 25114, at *12 (N.D. Cal. Mar. 22, 2006) ("courts have determined that a

13  <u>subsidiary controls documents in possession of the parent company</u> when counsel for the

14  subsidiary has admitted access to documents in possession of the parent company or when the

15  subsidiary can obtain documents in possession of the parent company in the ordinary course of

16  business." (citations omitted)).

17           The Court should compel OX to produce relevant information from all of the OX Entities

18  so that Openwave can obtain the necessary information to argue its case and to prove that all

19  related OX entities are subject to jurisdiction in this Court.  *See Gillespie v. Prestige Royal*

20  *Liquors Corp.*, 183 F. Supp. 3d 996, 1003 (N.D. Cal. 2016) ("the Court has broad discretion to

21  permit jurisdictional discovery, which 'should ordinarily be granted where pertinent facts bearing

22  on the question of jurisdiction are controverted or where a more satisfactory showing of the facts

23  is necessary.'" (quoting *Butcher's Union Local No. 498, United Food & Commercial Workers v.*

24  *SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986))).

25           2.       Openwave Has Sufficiently Described Its Trade Secrets

26           OX spends two pages of its Motion misrepresenting to the Court that Openwave has

27

28  European Open-Xchange entities, such as Open-Xchange AG, Open-Xchange GmbH, or Open-
    Xchange Srl."); *see also* Discovery Dispute #4 at 1 n. 2.

1   refused to identify its trade secrets.  What OX purposefully omits from the Motion is that a

2   month prior to filing its Motion, it agreed that for purposes of discovery, Openwave has

3   sufficiently disclosed its trade secrets.  *See* Hernandez Decl., Exhs. 14 (May 4, 2017 email from

4   OX's counsel stating, "I can confirm that we are no longer withholding documents on the basis

5   of [California Code of Civil Procedure § 2019.210] objection.") and 15 (May 24, 2017 email

6   from OX's counsel stating, "We have already provided confirmation in writing that OX is not

7   withholding any documents based on the trade secret disclosure objections.").  Accordingly, OX

8   has confirmed in writing, what it now misrepresents to the Court, that Openwave has met its

9   obligations pursuant to the Court's Order (Dkt. 69)[18] and California Code of Civil Procedure §

10  2019.210 ("CCCP § 2019.210").[19]

11        While there is no disagreement that Openwave has sufficiently disclosed its trade secrets

12  as required by CCCP § 2019.210 (*see* Hernandez Decl., Exhs. 14 and15), OX is backtracking

13  from its promise to produce relevant discovery by now arguing that Openwave has not

14  sufficiently disclosed its trade secrets because they contain some public information.  Motion at

15  8.  This is nonsensical and OX fails to cite to any authority supporting this argument.  In fact,

16  courts routinely hold that trade secrets may contain public information.  *See Brocade Comm.*

17  *Systems, Inc. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1214-15 (N.D. Cal. 2012) (noting that

18  defendant's argument that plaintiff's trade secret does not meet the particularity requirement

---

[18] The Court cites to *Jobscience, Inc. v. CVPartners, Inc.*, No. 13-cv-4519-WHA, 2014 WL
852477, at *5 (N.D. Cal. Feb. 28, 2014), as guidance on the type of information Openwave's
trade-secret disclosures should contain.  Openwave has complied with those requirements.  *See*
Dkt. 89-2; *see also Jobscience*, 2014 WL 852477, at *5 (requiring trade secret disclosures to
include (1) a summary of the specific trade secrets, (2) the background of the trade secrets and a
description of how they derive independent economic value; (3) a description of how each secret
has been the subject of reasonable efforts to maintain its secrecy, and (4) each of the precise
claimed trade secrets).  Additionally, Openwave's Third Amended Trade Secrets Disclosure goes
further than the requirements set by the Court because it provides specific bates numbered
documents that contain its trade secret information.  *See* Dkt. 89-2.

[19] While not necessary to meet the reasonable particularity standard set by CCCP § 2019.210 or
*Jobscience*, at the insistence of OX's counsel, Openwave limited six of its trade secrets to the
specific bates numbered documents it produced.  *See* Dkt. 89-2, at 74:4-6, 76:3-7, 78:6-10,
79:19-22, 81:12-15, and 82:17-84:18.  For the remaining three trade secrets, Openwave provided
a detailed description (with diagrams) and produced dozens of bates numbered documents
showing its trade-secret information.  *See id*. at 84:19-102:10.  OX cannot reasonably argue that
it does not know what Openwave's trade secrets are.

1   because the customer names are public knowledge is not persuasive; "Given that [plaintiff]'s

2   customer names are public, [defendant] cannot fault [plaintiff] for including additional

3   information linking each customer to other confidential information such as the customer's

4   buying patterns, product needs, and preferences.  It is this *combination of elements* that makes

5   the information valuable and not generally known to the public." (emphasis added) (citation

6   omitted)).[20]  Openwave's trade secrets contain information that courts routinely hold is

7   protectable as trade secrets.  *See id.* at 1214 (holding that "confidential customer-related

8   information including customer lists and contact information, pricing guidelines, historical

9   purchasing information, and customers' business needs/preferences" is the "type of information

10   [that] is routinely given trade secret protection."); *Language Line Services, Inc. v. Language*

11   *Services Associates, Inc.*, 944 F. Supp. 2d 775, 785 (N.D. Cal. 2013) ("The California Supreme

12   Court has found 'the nature and character of the subject customer information, i.e., billing rates,

13   key contacts, specialized requirements and markup rates, is sophisticated information and

14   irrefutably of commercial value and not readily ascertainable to other competitors.'" (*quoting*

15   *ReadyLink Healthcare v. Cotton*, 126 Cal.App.4th 1006, 1020 (2005))).

16          OX also disingenuously argues that Openwave has not reasonably disclosed its trade

17   secrets because it does not identify, to OX's liking, how OX obtained or used the trade secrets.

18   Motion at 8:2-3, 8:26-9:3.  First, OX fails to explain how this information is relevant to

19   Openwave's obligations under the Court's Order (Dkt. 69) and CCCP § 2019.210.  Second,

20   Openwave has identified, to the extent it reasonably can, how OX obtained and used

21   Openwave's trade secrets.  *See* Openwave's response to interrogatory no. 4 (Dkt. 89-1),

22   Openwave's response to interrogatory no. 5 (Dkt. 86-6), and Openwave's Third Amended Trade

23   Secret Disclosure (Dkt. 89-2).  How OX obtained or used Openwave's trade secrets is uniquely

24   in OX's possession, yet OX refuses to produce this information.  *See* Discovery Dispute #4

25   (explaining OX's refusal to produce relevant information and documents, including information

26

27   [20] In a letter to OX's counsel, dated June 23, 2016, Openwave cited the *Brocade Comm. Systems*
     case, among many other cases, to educate OX's counsel on what information constitutes trade
28   secrets. Accordingly, OX should know that public information contained within trade secrets
     does not render trade secrets un-protectable.

Openwave Messaging, Inc.'s Opposition to Open-
                                                     Xchange, Inc.'s Motion to Dismiss or Stay

related to the Trade Secret Causes of Action).

Lastly, OX misrepresents to the Court the extent it sought information from Openwave concerning the Italian Action.  Motion at 9:4-10.  Openwave's response to interrogatory no. 19 states that it "is willing to meet and confer with OX about this Interrogatory to determine what information, if any, OX needs that is relevant to the claims and defenses in this case."  Dkt. 89-5, at 4:2-12.  OX has yet to agree to meet and confer, and until the filing of the Motion, never objected to Openwave's response.

                3.      OX Has Refused To Produce Documents Related To The Trade Secret And Unfair Competition Allegations

OX argues that Openwave's trade-secret and unfair-competition claims are largely based on allegations relating to conduct that occurred in Italy.  Motion at 3:15-17.  As described above in Sections II.A.1 and II.A.2, this is incorrect.  The conduct of OX and its agent employees in Italy is only one example, if a particularly egregious one, provided in the Complaint of OX's trade-secret misappropriation and unfair competition practices.  Openwave also alleged that OX's actions were conducted outside of Italy and directed at customers throughout the world. *See* Complaint at ¶¶ 55-56 (OX disparaged Openwave at the Open-Xchange Summit in Germany, which was attended by 593 delegates from 21 different countries), 57-63, 89-91, 93-120 (OX began to unfairly compete with Openwave and target Openwave's customers located in the United States, Canada, Japan, Italy, Belgium, UAE, New Zealand, and the UK), 73-77 (OX misappropriated Openwave's trade secrets and copyright, and used them to implement the OX user interface at Virgin Media, a company headquartered in the United Kingdom), 120 (OX has been using Openwave's trade secrets to interfere with Openwave's existing business relationship with a customer located in Japan), and 126-129 (OX has pursued "Openwave's employees in the United States, Europe and the Asia-Pacific Region and induce them to move to OX and to take confidential and proprietary information with them."  Some of these employees took Openwave's trade secrets "to support OX in unfairly competing in several markets throughout the world, including the United States, Italy, Spain, the UAE and New Zealand."); *see also id.* at 167-197, 204-210, and 246-255.

1    Furthermore, as described in more detail above in Section II.C., evidence in the Italian

2  Action shows that Openwave's confidential and trade secret information was likely transferred to

3  a shared database used by all OX entities.  *See* Dkt. 90-2 at ¶ 57; Dkt. 90-4 at 5.  As such, even if

4  the act of misappropriation was done in Italy by employees of OX S.r.l., employees of all the OX

5  entities had access and were able to use the trade secrets without Openwave's authorization.  The

6  subsequent unauthorized use, including in the United States and aboard, is improper and

7  constitutes sufficient grounds to bring claims for trade secret misappropriation in this

8  jurisdiction.  *See* Cal. Civ. Code § 3426.1(b)(2); 18 U.S.C. § 1836.

9    To the extent Openwave lacks evidence of trade-secret misappropriation and unfair

10  competition outside of Italy, which Openwave disputes, that lack of information stems from

11  OX's refusal to produce responsive documents relating to these issues.  Openwave's attempts to

12  obtain information regarding these causes of action have been actively hindered by OX's refusal

13  to produce relevant discovery.  *See* Discovery Dispute #4 (detailing OX's egregious actions in

14  trying to avoid meeting its discovery obligations).  OX's deception and prejudicial discovery

15  games are made more obvious by the timing of this Motion.  The Motion was filed on June 30,

16  2017, the date OX was to produce amended discovery responses that removed its CCCP §

17  2019.210 objection.[21]  *See* Hernandez Decl., Exh. 17 (June 14, 2017 email from OX's counsel

18  stating, "OX agrees to provide supplemental responses to Openwave's first and second set of

19  interrogatories, first and second set of requests for production, and first set of requests for

20  admission, on or before June 30, 2017.").  Yet, OX has failed to serve amended discovery

21  responses as agreed.  *See* Discovery Dispute #4; *see also* Hernandez Decl. ¶ 20, Exh. 19 (July 12,

22  2017 email from Openwave's counsel asking when OX will produce its remaining custodial

23  documents pursuant to the stipulation entered (Dkt. 81); OX ignored this request).

24

25  ───────────────────

[21] OX objected to discovery requests on CCCP § 2019.210 grounds, even for discovery unrelated
to Openwave's trade secrets. *See* Discovery Dispute #4; *see also* Hernandez Decl., Exh. 16 (May
26  22 through July 6, 2017 email string from Openwave's counsel to OX's counsel, detailing OX's
improper discovery responses: "Many of OX's responses simply contain the 2019 objection (*i.e.*,
27  no answers were provided) or state that OX would meet and confer. During the October 2016
meet and confer, OX's counsel stated that for many of the "meet and confer" responses, it would
28  not produce the information based on the 2019 objection.").

Openwave Messaging, Inc.'s Opposition to Open-
                                                                    Xchange, Inc.'s Motion to Dismiss or Stay

1    Openwave's attempts to obtain information regarding these causes of action have been

2    actively hindered by OX's refusal to produce documents in its possession, custody, or control

3    that are relevant to these causes of action.

4    V.    CONCLUSION

5        The Court should deny Defendant's Motion because Defendant fails to satisfy its burden

6    of demonstrating that the competing interests described in *Landis* support the Court's using its

7    inherent power to stay or dismiss a portion of the trade-secret-misappropriation and unfair-

8    competition causes of action and because of Defendant's delay in bringing this Motion.

9

10   Dated: July 21, 2017                         PILLSBURY WINTHROP SHAW PITTMAN LLP

11

12                                                By: */s/ Monica A. Hernandez*

13                                                Monica A. Hernandez
                                                  Attorneys for Plaintiff
14                                                OPENWAVE MESSAGING, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-23-