1   RODGER R. COLE (CSB No. 178865)
    rcole@fenwick.com
2   SAPNA MEHTA (CSB No. 288238)
    smehta@fenwick.com
3   FENWICK & WEST LLP
    Silicon Valley Center
4   801 California Street
    Mountain View, CA  94041
5   Telephone:     (650) 988-8500
    Facsimile:      (650) 938-5200
6
    JENNIFER L. KELLY (CSB No. 193416)
7   jkelly@fenwick.com
    TODD R. GREGORIAN (CSB No. 236096)
8   tgregorian@fenwick.com
    MATTHEW B. BECKER (CSB No. 291865)
9   mbecker@fenwick.com
    FENWICK & WEST LLP
10  555 California Street, 12th Floor
    San Francisco, CA 94104
11  Telephone:     (415) 875-2300
    Facsimile:      (415) 281-1350
12
    Attorneys for Defendant
13  OPEN-XCHANGE, INC.

14                  UNITED STATES DISTRICT COURT

15                NORTHERN DISTRICT OF CALIFORNIA

16                    SAN FRANCISCO DIVISION

17

18  OPENWAVE MESSAGING, INC., a Delaware      Case No.: 3:16-cv-00253-WHO
    corporation,
19                                            **DEFENDANT OPEN-XCHANGE, INC.'S**
                                              **NOTICE OF MOTION AND MOTION**
20              Plaintiff,                     **FOR SUMMARY JUDGMENT OF NO**
                                              **TRADE SECRET MISAPPROPRIATION**
21         v.

22  OPEN-XCHANGE, INC., a Delaware            Date:        October 11, 2017
    corporation,                              Time         2:00 p.m.
23                                            Department:  Civil Law and Motion
                Defendant.                    Courtroom    2, 17th Floor
24                                            Judge:       William H. Orrick

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 2

I.      INTRODUCTION ....................................................................................... 2

II.     STATEMENT OF FACTS ........................................................................... 2

        A.      Openwave's Wide-Ranging Allegations of Trade Secret
                Misappropriation ....................................................................... 2

        B.      The Italian Proceeding ............................................................... 3

        C.      Openwave's Refusal to Identify Its Trade Secrets in this Action. ......... 5

        D.      Openwave's Total Failure of Proof on Its Misappropriation Claims. ...... 6

III.    SUMMARY JUDGMENT LEGAL STANDARD ................................................ 7

IV.     ARGUMENT ........................................................................................... 8

        A.      Openwave Cannot Prove Ownership of a Misappropriated Trade
                Secret. ..................................................................................... 8

        B.      There is No Evidence Showing Any Act of Trade Secret
                Misappropriation By Open-Xchange Inc. Through Improper Means. ...... 10

                1.      Openwave Cannot Prove any Act of Trade Secret
                        Misappropriation Generally. .............................................. 10

                2.      Openwave Cannot Prove any Act of Trade Secret
                        Misappropriation by or Attributable to the Defendant Open-
                        Xchange, Inc. Because it is Separate from Non-Party Open-
                        Xchange S.r.l. ............................................................... 11

        C.      Openwave has not Proven it Suffered Any Actual Loss from
                Misappropriation, or that Open-Xchange was Unjustly Enriched. ........ 14

V.      CONCLUSION ........................................................................................ 15

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

**TABLE OF AUTHORITIES**

**Page(s)**

2

CASES

3

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).................................................................................................7

4

*Apple Inc. v. Samsung Electronics Co., Ltd.*,
    No. 11-1846 LHK (PSG), 2012 WL 1511901 (N.D. Cal. Jan. 27, 2012)...............11

5

6

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)............................................................................................7, 8

7

*Cytodyn, Inc. v. Amerimmune Pharm, Inc.*,
    160 Cal. App. 4th 288 (2008) ................................................................................9

8

9

*FLIR Systems, Inc. v. Parish*,
    174 Cal. App. 4th at 1278-1279 (2009) ...............................................................12

10

*FormFactor, Inc. v. Micro-Probe, Inc.*,
    No. C 10-3095 PJH, 2012 U.S. Dist. LEXIS 79359 (N.D. Cal. 2012) .............12, 14

11

12

*Gemisys Corp. v. Phoenix Am., Inc.*,
    186 F.R.D. 551 (N.D. Cal. 1999) ...........................................................................9

13

*Gerritsen v. Warner Bros. Entertainment, Inc.*,
    116 F.Supp.3d 1104 (C.D. Cal. 2015) .................................................................13

14

15

*IDX Systems Corp. v. Epic Systems Corp.*,
    285 F.3d 581 (7th Cir. 2010)...................................................................................9

16

*Imax Corp. v. Cinema Techs, Inc.*,
    152 F.3d 1161 (9th Cir. 1998)................................................................................9

17

18

*Integral Development Corp. v. Tolat*,
    No. C 12-06575 JSW, 2014 U.S. Dist. LEXIS 23429 (N.D. Cal. 2014) ..........12, 14

19

*Jensen v. Redevelopment Agency of Sandy City*,
    998 F.2d 1550 (10th Cir. 1993)..............................................................................9

20

21

*Language Line Servs., v. Language Servs. Assocs.*,
    944 F. Supp. 2d 775 (N.D. Cal. 2013)....................................................................8

22

*M.C. Dean, Inc. v. City of Miami Beach*,
    No. 16-21731-CIV-ALTONAGA, 2016 WL 4179807 (S.D. Fla. Aug. 8, 2016)....................8

23

24

*MAI Sys. Corp. v. Peak Comp., Inc.*,
    991 F.2d 511 (9th Cir. 1993)...................................................................................9

25

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ................................................................................................7

26

27

*Norsat Int'l. v. B.I.P. Corp.*,
    No. 12cv674-WQH-NLS, 2014 U.S. Dist. LEXIS 74953 (S.D. Cal. 2014)..........14

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

**TABLE OF AUTHORITIES**
**(Continued)**

2

3

**Page(s)**

**CASES**

4
*Ovation Toys Co., Ltd. v. Only Hearts Club,*
   675 Fed.Appx. 721 (9th Cir. 2017).................................................................13

5

6
*Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.,*
   925 F.2d 174 (7th Cir. 1991)...........................................................................9

7
*Space Data Corp. v. X,*
   No. 16-cv-03260-BLF, 2017 U.S. Dist. LEXIS 22571 (N.D. Cal. Feb. 16, 2017)...................8

8

9
*Sunbelt Rentals, Inc. v. Victor,*
   No: C 13-4240 SBA, 2014 U.S. Dist. LEXIS 14416 (N.D. Cal. 2014)................................12

10
*Van Asdale v. Int'l Game Tech.,*
   577 F.3d 989 (9th Cir. 2009)..........................................................................11

11

12
*Wyatt Technology v. Malvern Instruments, Inc.,*
   No. CV 07-08298 DDP, 2009 U.S. Dist. LEXIS 66097 (C.D. Cal. 2009)...........................12

13
*Yeager v. Bowlin,*
   693 F.3d 1076 (9th Cir. 2012).........................................................................11

14

15
*Zoran Corp. v. Chen,*
   185 Cal. App. 4th 799 (2010).........................................................................13

16
**STATUTES**

17
18 U.S.C. § 1831 (Defend Trade Secrets Act of 2016 ("DTSA")), *et seq.*.....................7

18
18 U.S.C. § 1836(b)......................................................................................7

19
18 U.S.C. § 1836(b)(1)..................................................................................8

20
18 U.S.C. § 1836, *et seq.*.............................................................................1

21
18 U.S.C. § 1839(3).....................................................................................7

22
18 U.S.C. § 1839(5).....................................................................................8

23
Cal. Bus. & Prof. Code § 17200, *et seq.*............................................................1

24
Cal. Civ. Code § 3246 (California Uniform Trade Secrets Action ("CUTSA")), *et seq.*.............1, 7

25
Cal. Civ. Code § 3426.1..................................................................................7

26
Cal. Civ. Code § 3426.1(b)..............................................................................8

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**TABLE OF AUTHORITIES**
**(Continued)**

Page(s)

**RULES**

Fed. R. Civ. P. 30(b)(6)..............................................................................................11

Fed. R. Civ. P. 56......................................................................................................7

Fed. R. Civ. P. 56(a)..................................................................................................7

Fed. R. Civ. P. 56(e)(2)..............................................................................................7

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to this Court's civil minutes issued on August 23, 2017 [Dkt. 118], Defendant Open-Xchange, Inc. will and hereby does move this Court for an order for summary judgment on October 11, 2017, in the courtroom of the Honorable William H. Orrick, located at 450 Golden Gate Avenue, Courtroom 2, 17th Floor, San Francisco, California 94102, on the following claims of Plaintiff Openwave Messaging, Inc.:

- Misappropriation of Trade Secrets under 18 U.S.C. § 1836, *et seq*. (Count III)
- Misappropriation of Trade Secrets under Cal. Civ. Code § 3246, *et seq*. (Count IV)
- Breach of Implied Covenant of Good Faith and Fair Dealing (Count VI)
- Unfair Competition under Cal. Bus. & Prof. Code § 17200, *et seq*. (Count XI).

(OX moves as to Counts III and IV in full, and as to Counts VI and XI to the extent Openwave purports to base such claims on any purported act of misappropriation of trade secret or confidential information.)  As set forth in the memorandum, Openwave has failed to adduce evidence on each of the required elements of such claims, in particular: (1) Openwave has not identified with reasonable particularity or otherwise any trade secret misappropriated by OX; (2) Openwave has no evidence of any act by OX that constitutes misappropriation of a trade secret; and (3) Openwave has no evidence that any act of misappropriation caused it harm for which it can recover damages or disgorgement of profits

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and other pleadings in support of the Motion, the supporting declaration of Matthew Becker and Jennifer Kelly, the pleadings and papers on file in this action, any other such matters upon which the Court may take judicial notice, the arguments of counsel, and any other matter that the Court may properly consider.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

Defendant Open-Xchange, Inc. ("Open-Xchange") brings this motion at the Court's direction that it would convert Open-Xchange's Motion to Dismiss or Stay Duplicative Trade Secret Claims [Dkt. 88] into a motion for summary judgment. *See* Dkt. 118.  After more than 16 months of discovery, Plaintiff Openwave Messaging, Inc. ("Openwave") has no evidence to support its claims of trade secret misappropriation. The only evidence it has adduced of an alleged act of misappropriation is its 30(b)(6) representative's testimony that merely referred back to the complaint allegations and recycled statements from the Italian court order.  And none of this testimony is about the defendant in this case, Open-Xchange, Inc., nor is there any evidence that connects it to any actual "trade secret" identified as at issue in this case, or any harm to Openwave.  The Court should grant summary judgment.

### II.  STATEMENT OF FACTS

#### A.  Openwave's Wide-Ranging Allegations of Trade Secret Misappropriation

Openwave alleges that Open-Xchange "targeted and hired numerous people from Openwave's Italy operations to staff [Open-Xchange]'s Italy operations that have opened up in the exact same city."  Second Amended Complaint ("SAC"), Dkt. 42, at ¶¶ 13, 99, 126-129. Openwave also refers to "a dozen upper-level …Openwave employees" that OX allegedly has induced to leave Openwave and identifies one by name:  Christian Germani, "a former Openwave employee in Italy." *Id.* at ¶¶ 100, 128-129.

Openwave alleges that after soliciting such employees, Open-Xchange "began contacting various Openwave customers across Europe and using trade secret information" to unfairly compete against Openwave. *Id.* at ¶ 129.  It claims that these former employees "now are actively using confidential Openwave information in an attempt to induce Openwave customers to move business from Openwave to [Open-Xchange]." *Id.* at ¶ 99.  Finally, Openwave alleges

that Mr. Germani and others are using Openwave trade secrets to pursue unspecified "Customer G" in Italy[1] and other unspecified "customers." *Id.* at ¶¶ 62, 100, 101, 103, 129.

The only OX entity that is a party to this case is Open-Xchange, Inc., a U.S. subsidiary of Open-Xchange AG. Open-Xchange distributes OX software in the United States, Canada, and South America. There are other OX entities in Germany, Italy, Spain, and elsewhere that each serve a similar role for their specific portions of the globe. OX has no Italian operations or employees. *See* Declaration of Monika Schroeder in Support of Open-Xchange, Inc.'s Motion to Dismiss or Stay Duplicative Trade Secret Claims ("Schroeder Decl. II") [Dkt. 90] at ¶ 2; *see also* Schroeder FNC Decl. [Dkt. 18.2] at ¶¶ 2, 5 (explaining that Open-Xchange, Inc. has no employees outside the United States, and that its business operations are limited to working with customers in North and South America). Openwave has not identified a single former employee that *Open-Xchange, Inc.* hired or solicited. *See generally* SAC; Declaration of Todd Gregorian in Support of Open-Xchange, Inc.'s Motion to Dismiss or Stay Duplicative Trade Secret Claims ("Gregorian Decl.") [Dkt. 89] at ¶ 2, Exh. A. Its discovery responses instead identify four employees of Open-Xchange S.r.l. in Italy. *Id.* at Exh. A at 92:5-22. And Openwave has identified no connection between these Italian employees and Open-Xchange, Inc. the defendant in *this* case. *Id.* at ¶ 2.

## B. The Italian Proceeding

Openwave, through its Italian subsidiary Openwave Messaging S.p.A., has also brought suit against Open-Xchange, S.r.l., and the four Italian employees, in Turin, Italy.[2] *See* Schroeder Decl. II at ¶ 3. The Italian action asserts claims based on the identical fact allegations that

---

[1] "Customer G" (previously referred to as "Customer B") is Italia Online (located in Italy). *See, e.g.*, Declaration of Monika Schroeder in Support of Open-Xchange's Motion to Dismiss ("Schroeder FNC Decl.") [Dkt. 18.2] at ¶ 5.

[2] The Italian action—brought, ironically, after Openwave successfully *defeated* Open-Xchange's motion to dismiss the claims at issue on the instant motion on *forum non conveniens* grounds [*see* Dkt. 38 at 10-14]—is further evidence that Openwave Messaging S.p.A, which Openwave admits is "not a party to this suit," is the only entity that has standing to assert claims based on the alleged misappropriation of its trade secrets. *See* Defendant Open-Xchange, Inc.'s Reply in Support of Motion to Dismiss [Dkt. 26] at 15:11-12 n.5; *see also* Dkt. 38 at fn. 9 (order on motion, noting "OX may prevail at summary judgment or trial if, indeed, Openwave has sued the wrong defendants or lacks standing to pursue some of its employee-misappropriation claims.")

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

underlie the claims in this case. *See* Dkt. 88 at 5-6 (chart comparing allegations in the Italian Action to allegations of Openwave's Second Amended Complaint in this action). An initial forensic investigation under Italian law ensued. *See* Schroeder Decl. II, Exh. B at ¶¶ 43-59; Exh. D at 2. At the conclusion of the investigation, Openwave requested that the court issue injunctive relief and seizure orders. *See id.* at Exh. B at ¶¶ 1, 2, 5, 11, 60, 61, Closing Applications at A-N; Exh. D at 2-3. It alleged that: Open-Xchange S.r.l. solicited key employees from Openwave S.p.A.—specifically, the same four former Openwave employees named in Openwave's discovery responses in this case. *See* Schroeder Decl. II, Exh. B at ¶¶ 28-38, 58, 100, 101, 103. Through these employees, Open-Xchange S.r.l. allegedly acquired Openwave corporate information. *Id.* at Exh. B at ¶¶ 58, 59, 80-81. Openwave further claimed, as it does in this case, that this information was used to solicit Italia Online as a customer. *Id.* at ¶¶ 6, 7, 59, 65, 102.

On this basis, Openwave sought a prohibitory injunction preventing Open-Xchange S.r.l. and the former Openwave employees from using this confidential business and technical information; **seizure** of any electronic documents containing such information, and other remedies. Schroeder Decl. II, Exh. B at ¶¶ 5, 11, Closing Applications at A-N; Exh. D at 2-3. Openwave also notified the Turin Court of this case. It mentioned the existence of the OEM Agreement, and ***represented that the agreement had no effect on its claims in Italy.*** *Id.* at Exh. B at ¶ 32 n.4. Openwave further asserted that—while it was aware of the United States agreement—it understood Open-Xchange, S.r.l. to be separate from Open-Xchange, Inc. and unrelated except for "occasional collaboration abroad." *Id.*

On December 19, 2016, the Turin Court issued an order granting Openwave's request for an injunction and the establishment of a penalty for future violations, but rejecting the seizure request and other remedies. *See* Schroeder Decl. II, Exh. D at 3. Open-Xchange S.r.l. subsequently appealed the order. *Id.* at Exh. D at 3-4. On February 3, 2017, the Turin Court issued an opinion upholding the December 19 Order granting injunctive relief. *Id.* at ¶ 6, Exh. D. The Turin Court found that the forensic investigation (which consisted of running certain electronic search terms associated with Openwave, not actually examining contents of any files) indicated that two former Openwave employees likely had maintained information from

Openwave following their employment.  *Id.* at Exh. D at 9-10.  The Court identified no evidence that showed that the other two employees had kept Openwave's confidential information.  *Id.* at Exh. D.  Nor was there any evidence that any of the former Openwave employees had actually *used* any Openwave confidential information.  *Id.*

### C.   Openwave's Refusal to Identify Its Trade Secrets in this Action.

Openwave refused to sufficiently identify the trade secrets on which it bases its claims.  *See* Declaration of Matthew Becker in Support of Open-Xchange's Motion for Summary Judgment ("Becker Decl.") at ¶¶ 47-65.  On December 15, 2016, Open-Xchange moved to compel their identification, as well as answers to interrogatories that requested (1) what they are; (2) how they are valuable; (3) efforts to keep them secret; (4) how they were stolen; and (5) how they were actually used.  *See* Becker Decl. at ¶¶ 56-57; Dkt. 62.  On January 18, 2017, the Court ordered Openwave to describe its trade secrets with greater specificity and respond to Open-Xchange's interrogatories on these issues.  Dkt. 69.

On March 2, 2017, Openwave served its Third Amended Trade Secret Disclosure.  Like its previous disclosures, Openwave's fourth attempt to identify its trade secrets is inadequate.  The descriptions of many of its claimed "secrets" remain open-ended and functional, rather than identifying specific secrets.  Gregorian Decl. ¶ 3, Exh. B.  It still fails to identify how Open-Xchange purportedly obtained any of the trade secret information.  *Id.*  And Openwave's disclosure purports to identify a broad array of publicly available information, for example, the stock ticker symbols and corporate addresses of Openwave customers.  *See, e.g.*, *id.* at Exh. B at 4:4-5:21.

Openwave's amended interrogatory responses fare no better.  Openwave's amended response to Interrogatory No. 1, which asks Openwave to identify its trade secrets, is comprised nearly entirely of public information.  Gregorian Decl. at ¶ 4, Exh. C.  The response identifies well-known customers in the industry and publicly available information about them, such as the customer's corporate address, company history, executive team, annual revenue, geographical coverage, and public website address.  *Id.*  In Openwave's response to Interrogatory Nos. 4 and 5, which ask Openwave to identify the basis for the claimed misappropriation of its trade secrets, it

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

makes sweeping assertions as to the *potential* ways that its information *could have* been misappropriated, but includes no supporting facts.  Gregorian Decl. at ¶ 5.  The only specific information included in Openwave's response to Interrogatory No. 4 is a description of the Turin Court's rulings in the Italian case.  *Id.* at ¶ 5, Exh. A at 92:5-22.

Open-Xchange initially took the position that Openwave's still-deficient trade secret disclosure and interrogatory responses continued to bar Openwave from seeking discovery on its trade secret claims.  Becker Decl. ¶¶ 58-59.  Openwave disagreed.  Eventually, Open-Xchange became weary of arguing the point, and simply made the decision to allow the discovery.  It confirmed to Openwave in writing on May 4, 2017, and numerous times thereafter, that it was no longer withholding discovery on the basis of its trade secret objection.  *Id.* at ¶¶ 61, 63 & Exhs. 28, 30; *see also* Dkt 101 at 2 (Open-Xchange, Inc.'s Response to Openwave Messaging, Inc.'s Statement Regarding Discovery Dispute #4 Re:  Discovery Responses).  At Openwave's request, Open-Xchange also amended its written discovery responses to reflect that the discovery was being provided, notwithstanding and <u>without waiver of its objection that Openwave failed to sufficiently identify any trade secrets</u>.  Becker Decl. ¶¶ 62.

### D.    Openwave's Total Failure of Proof on Its Misappropriation Claims.

Openwave's corporate representative has now confirmed through sworn testimony that the trade secret claims are duplicative of the claims in the Italian action, and that Openwave has no actual evidence of trade secret misappropriation.  Declaration of Todd Gregorian in Support of Open-Xchange's Reply ISO Motion to Dismiss or Stay Duplicative Trade Secret Claims ("Gregorian Reply Decl.") [Dkt. 104], Exh. A at 139:10-140:13.  Instead, Openwave has its own "inferences" drawn from the fact that former employees have gone to work for Open-Xchange S.r.l. (not Open-Xchange, Inc., the defendant in this case) and visited Openwave's former customer Italia Online.  *See id.* at 121:7-23; 125:8-20; 131:15-132:16; 137:19-140:13; 149:9-23; 151:7-22;160:14-17.  In stark contrast to the myriad allegations of wrongdoing in the complaint, at the close of discovery Openwave has absolutely no evidence that Open-Xchange, <u>Inc</u>. misappropriated its trade secrets.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

### III.   SUMMARY JUDGMENT LEGAL STANDARD

The Court is familiar with the standard for summary judgment.  Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case . . . on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A dispute regarding a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp.*, 477 U.S. at 323.  If the moving party meets its initial burden, the opposing party "may not rely merely on allegations or denials in its own pleading;" rather, it must set forth "specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e)(2); *Anderson*, 477 U.S. at 250.  If the nonmoving party fails to show that there is a genuine issue for trial, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

The standards that Openwave must meet on each of its misappropriation claims are virtually identical.  To establish misappropriation under either the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1831, *et seq.*, or California Uniform Trade Secrets Action ("CUTSA"), Cal. Civ. Code § 3426 *et seq.*, a plaintiff must prove:

1.   The plaintiff owned a trade secret, namely business or scientific information that derives independent value from not being generally known to or readily accessible by the public, and that the plaintiff has taken reasonable measures to keep secret.  18 U.S.C. § 1836(b); 1839(3); Cal. Civ. Code § 3426.1.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

2.      The defendant misappropriated the trade secret (*i.e.,* wrongfully acquired, disclosed or used the trade secret without express or implied consent). 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b).

3.      The defendant's actions caused damage to the plaintiff.  Cal. Civ. Code § 3426.1(b); *see, e.g., M.C. Dean, Inc. v. City of Miami Beach*, No. 16-21731-CIV-ALTONAGA, 2016 WL 4179807 (S.D. Fla. Aug. 8, 2016); *Space Data Corp. v. X*, No. 16-cv-03260-BLF, 2017 U.S. Dist. LEXIS 22571, *2 (N.D. Cal. Feb. 16, 2017); *Language Line Servs., v. Language Servs. Assocs.*, 944 F. Supp. 2d 775, 779 (N.D. Cal. 2013).[3]  As set forth below, Openwave cannot show evidence to support *any* element of its claims.  *Celotex*, 477 US 317 at 323-24.

## IV.   ARGUMENT

### A.      Openwave Cannot Prove Ownership of a Misappropriated Trade Secret.

Openwave has not identified any information that constitutes a legally protectable trade secret, for three reasons.

First and foremost, even after the Court's order that it do so, Openwave has not made a reasonable disclosure of the trade secrets in dispute.  Instead, it served reams of pages of public information regarding its customers and sales prospects, including such basic information as corporate addresses and stock ticker symbols.  And while it is possible for a trade secret to consist of some proprietary mix of secret and non-secret information, Openwave has not offered any theory that explains why this public information is protectable.  Indeed, in an effort to state a viable Lanham Act claim, Openwave alleged in its operative complaint that the industry is small (and getting smaller, via mergers), such that all the relevant players know each other.  SAC at ¶ 7 (describing Openwave's customers as a "close-knit and limited group of email service providers"); ¶ 26 ("Openwave markets and sells its products to large telecommunications carriers and providers worldwide . . ."); ¶ 27 ("[T]he market for Openwave's email platform is highly

---

[3] The DTSA also has a federal legislative jurisdictional requirement that the trade secret relate to a product that is used in or intended for use in interstate or foreign commerce.  18 U.S.C. § 1836(b)(1).  Open-Xchange concedes that the parties' products and services are generally used in interstate commerce, but, because Openwave never identified the particular secrets at issue in this case, does not concede this element established.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

concentrated."); ¶ 28 (The market of internet service providers to which Openwave and OX sell is tightly-knit around the world; customer employees and business partner employees frequently communicate with each other across borders at trade shows, conferences, and industry gatherings.").  It is not hard for other companies in the industry to guess who Openwave's customers are, and to look up their addresses and stock ticker symbols.  *Indeed, Openwave identifies its customers on the "Customers" page of its parent company's publicly-available website*.  Becker Decl., Ex. 31.  *See Cytodyn, Inc. v. Amerimmune Pharm, Inc.,* 160 Cal. App. 4th 288, 297 (2008) ("[A] prima facie claim for misappropriation of trade secrets 'requires the plaintiff to demonstrate [that it] owned [the] trade secret") (citation omitted).

Openwave's disclosure of flow charts and other information related to its ill-defined "stack" fares no better. "[A] plaintiff must do more than just identify a kind of technology and then invite the court to hunt through the details in search of items meeting the statutory definition [of a trade secret]." *IDX Systems Corp. v. Epic Systems Corp.,* 285 F.3d 581, 584 (7th Cir. 2010). . Openwave never disclosed a theory of what its "stack" actually is, or what in the materials disclosed about it is a valuable trade secret.  Openwave's failure to make a reasonable disclosure of the trade secrets in dispute should by itself result in dismissal of the action.  *See Imax Corp. v. Cinema Techs, Inc*., 152 F.3d 1161, 1164-68 (9th Cir. 1998).

Second, Openwave has not proven that its purported trade secrets were the subject of efforts that are reasonable under the circumstances to maintain their secrecy.  This determination is highly fact specific. *See Rockwell Graphic Sys., Inc. v. DEV Indus., Inc*., 925 F.2d 174, 176-77 (7th Cir. 1991).  It is relevant whether Openwave disclosed such information only under confidentiality agreements. *See MAI Sys. Corp. v. Peak Comp., Inc*., 991 F.2d 511, 521 (9th Cir. 1993). However, that does not end the inquiry; a vague description of what it is that constitutes a trade secret, for example, renders the confidentiality agreement largely meaningless. Moreover, an employer's failure to mark documents as confidential or trade secret "precludes in many cases trade secret protection for those materials." *Gemisys Corp. v. Phoenix Am., Inc*., 186 F.R.D. 551, 558 (N.D. Cal. 1999) (*citing Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1557

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

(10th Cir. 1993)).  Openwave's failure to identify its trade secrets with specificity has largely precluded this inquiry.

Third, and finally, Openwave has failed to show that its purported trade secrets are not generally known or readily ascertainable, for the same reasons discussed above.

**B.    There is No Evidence Showing Any Act of Trade Secret Misappropriation By Open-Xchange Inc. Through Improper Means.**

**1.    Openwave Cannot Prove any Act of Trade Secret Misappropriation Generally.**

Even if Openwave is able to identify in its trade secret disclosure some information that it owns and is protectable as a trade secret, it has no evidence that such trade secret was misappropriated by Open-Xchange.  As noted above, as of the close of discovery Openwave's interrogatory response on this very topic failed to identify any trade secret that actually was misappropriated.  Gregorian Decl., ¶ 4 & Ex. D.  Instead, all Openwave has is the coached testimony of its corporate representative, who referred back to the pleadings and repeated attorney argument from the Italian case.  *See id.* at 121:7-23; 125:8-20; 131:15-132:16; 137:19-140:13; 149:9-23; 151:7-22;160:14-17.  Openwave's "evidence" consists of the following:

- Someone at Openwave noticed that a visitor log at Italia Online showed that Christian Germani had visited that customer after he began working for Open-Xchange S.r.l.  Based on that, Openwave has "inferred" that Mr. Germani discussed or used its trade secrets in that meeting.  Gregorian Reply Decl., Ex A at 121:7-17; 125:8-126:20.  The visitor log has not been produced in the case, nor has any witness testified from personal knowledge about it or Mr. Germani's discussion with Italia Online.

- The Court in Italy enjoined Open-Xchange S.r.l. from using any Openwave information following its forensic examination of electronic files in the possession of S.r.l. employees.  *See generally* Schroeder Decl. II, ¶6 & Ex. D.  That examination consisted primarily of running search terms on Openwave product names and the like, and assessing the number of hits.  *Id*. at 9.  It did not involve any determination of what files or information caused the hits, or whether they

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Fenwick & West LLP
Attorneys at Law
Mountain View

included trade secret information of Openwave (of either the U.S. or Italian entity). *Id*. at 9-10. To OX's knowledge, Openwave has not even produced in this case the forensic report underlying the court's ruling.

Openwave's representative confirmed that Openwave has no direct evidence of misappropriation, only "inferences." Gregorian Reply Decl., Ex. A at 132:5-16. Openwave is bound by this testimony. *Apple Inc. v. Samsung Electronics Co., Ltd.*, No. 11-1846 LHK (PSG), 2012 WL 1511901 at *2 n.4 (N.D. Cal. Jan. 27, 2012)(citing cases stating that Rule 30(b)(6) testimony binds the corporation). And it cannot create a triable issue of fact by contradicting it in a declaration. *Van Asdale v. Int'l Game Tech*., 577 F.3d 989, 998 (9th Cir. 2009); *see also Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012)(same as to "do not recall" answers). And, stepping back, no evidence in the case connects any of this speculative testimony to any of the information that Openwave has disclosed as its "trade secrets" in this case. Openwave simply cannot create a triable issue of fact as to misappropriation of any identified trade secret.

### 2. Openwave Cannot Prove any Act of Trade Secret Misappropriation by or Attributable to the Defendant Open-Xchange, Inc. Because it is Separate from Non-Party Open-Xchange S.r.l.

As a further reason for granting summary judgment, even if Openwave could prove up even a single act of trade secret misappropriation from the evidence it disclosed in discovery, such an act was not committed by OX.

First, Openwave has stated to this Court that "[e]vidence in the Italian Action shows that a USB device containing Openwave's confidential and trade secret information was "likely" connected to a shared virtual environment used by all OX Entities." Openwave Messaging, Inc.'s Opposition to Open-Xchange, Inc.'s Motion to Dismiss or Stay Duplicative Trade Secret Claims [Dkt. 95] at 3 n.3, 12. Openwave concludes that this "evidence" demonstrates that employees of all Open-Xchange entities had access to and were able to use the alleged trade secrets. *Id*. at 12. There is, in fact, no such evidence. Openwave's assertion is supported only by its own attorney's *allegations* in the Italian action. Schroeder Decl. II, Exh. B; *id*. at Exh. D; *see also* Dkt 104 at n. 4. Allegations are not "evidence." Openwave has provided absolutely *no admissible evidence* that a USB device from Italy was accessible to any Open-Xchange entity, that such device

contained any trade secret information of Openwave (or if it did, what specific trade secrets it contained), or that anyone from any Open-Xchange entity actually used or accessed any such information on the device, much less any employee of the defendant in this case, Open-Xchange, Inc.

Moreover, without evidence to show actual *use* or *disclosure* of the downloaded materials, Openwave's claims of trade secret misappropriation are fatally defective. *See FLIR Systems, Inc. v. Parish*, 174 Cal. App. 4th at 1278-1279 (2009) (download of hard drive by departing employee not misappropriation; mere possession of trade secrets without actual or threatened use will not support relief); *FormFactor, Inc. v. Micro-Probe, Inc.*, No. C 10-3095 PJH, 2012 U.S. Dist. LEXIS 79359 at *29-30 (N.D. Cal. 2012) (backing up and downloading of files while still an employee of plaintiff does not constitute misappropriation); *Wyatt Technology v. Malvern Instruments, Inc.*, No. CV 07-08298 DDP, 2009 U.S. Dist. LEXIS 66097 at *61-64 (C.D. Cal. 2009) (summary judgment on trade secret misappropriation claim warranted where there was no evidence that former employees disclosed trade secrets to new employer); *Sunbelt Rentals, Inc. v. Victor*, No: C 13-4240 SBA, 2014 U.S. Dist. LEXIS 14416 at *22 (N.D. Cal. 2014) ("simple fact that [defendant] emailed himself ostensibly proprietary information, without more, does not show misappropriation"); *Integral Development Corp. v. Tolat,* No. C 12-06575 JSW, 2014 U.S. Dist. LEXIS 23429 at *14-15 (N.D. Cal. 2014) (download of source code prior to departure not actionable, plaintiff must show that defendant used the information he downloaded improperly).

Second, Openwave claims that Open-Xchange AG does not observe corporate formalities and therefore the Court should treat all Open-Xchange entities as alter egos responsible for the acts of all the others. *See, e.g.*, Dkt. 96 at 15:20-18:24. This contention is largely irrelevant, since Openwave has no evidence sufficient to survive summary judgment that *any* Open-Xchange

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

entity misappropriated *any* identifiable trade secret.[4]  It is also not properly in the case, as Openwave never amended its complaint to set forth any alter ego theory.  *See Gerritsen v. Warner Bros. Entertainment, Inc.*, 116 F.Supp.3d 1104, 1136-37 (C.D. Cal. 2015)(stating that alter ego must be pleaded in the complaint with specific facts, as conclusory allegations of alter ego status are insufficient, and further setting out the two separate prongs that must be pleaded in order to state a claim); *see also Ovation Toys Co., Ltd. v. Only Hearts Club*, 675 Fed.Appx. 721, 724 (9th Cir. 2017)(affirming district court ruling that plaintiff did not sufficiently plead alter ego).  But those issues aside, Openwave cannot raise a triable issue of fact with respect to Open-Xchange's purported liability as an alter ego or agent of the Italian entity Open-Xchange S.r.l.  Open-Xchange, Inc. is a wholly-owned subsidiary of Open-Xchange AG.  *See* Dkt. 88 at 2 n.1; Dkt. 18-2 (Schroeder FNC Decl.) at ¶ 3.  Open-Xchange AG owns 100% of Open-Xchange GmbH, which in turn owns Open-Xchange S.r.l.  *Id.*  Open-Xchange, Inc. has no direct relationship with Open-Xchange S.r.l.  *Id.*  Open-Xchange is not a fly-by-night operation.  These companies observe formalities to maintain their corporate separateness, and their internal documents reflect nothing more than the fact that Open-Xchange AG conducts its business through a number of domestic and foreign subsidiaries.  Piercing the corporate veil is a drastic remedy that follows serious inquiry.  *E.g.*, *Zoran Corp. v. Chen*, 185 Cal. App. 4th 799, 811 (2010) (identifying sixteen non-exclusive factors that a court may consider in determining alter ego under California law).  Openwave has not and cannot create a triable issue on its theory, even if it were properly in the case.

---

[4] Open-Xchange advised Openwave from the outset of this case that if it desired discovery from foreign Open-Xchange companies, it needed to seek discovery directly from those companies via subpoena or the Hague Convention.  The parties had extensive discussions on this issue throughout the 16 month discovery period, during which Open-Xchange repeatedly advised Openwave it could only produce documents within its possession, custody or control, and that much of the discovery sought was more properly directed at other OX companies.  Despite this, Openwave never sought discovery from any foreign OX company, or any other third party for that matter, including from either of the parties' actual or prospective customers.  These discussions are described in Section II of the Becker Declaration filed concurrently herewith.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**C.** **Openwave has not Proven it Suffered Any Actual Loss from Misappropriation, or that Open-Xchange was Unjustly Enriched.**

Finally, to recover on its claims, Openwave must also show that an act of trade secret misappropriation by Open-Xchange caused it damage, for example in the form of lost sales, a lost royalty for use of the secret, or that Open-Xchange was unjustly enriched. *See Integral Development,* 2014 U.S. Dist. LEXIS 23429 at *14-15 ("in order to state an actionable claim for trade secret misappropriation, a plaintiff must show that the alleged misappropriation caused damage"); *FormFactor*, 2012 U.S. Dist. LEXIS 79359 at *37 (a plaintiff "could not prevail in the absence of a showing that it was harmed by defendants' use or disclosure of particular trade secrets). Openwave therefore must produce evidence from which a jury could reasonably infer that the alleged misappropriation damaged it. *Norsat Int'l. v. B.I.P. Corp.,* No. 12cv674-WQH-NLS, 2014 U.S. Dist. LEXIS 74953 at * (citation omitted) (S.D. Cal. 2014).

But Openwave has no evidence showing causation or damages, both because there is no evidence of misappropriation at all, as discussed above, and because it has not disclosed any such evidence generally. Openwave has served a report of a damages expert, Micah Siegel. Becker Decl., ¶ 68. However, Dr. Siegel's opinion does not differentiate between trade secret misappropriation and any of the other claims alleged by Openwave. *See id.* Dr. Siegel also does not opine on causation. He simply was asked to assume that the allegations of the SAC were true, and to quantify the value of the opportunities Openwave allegedly lost because of all of Open-Xchange's allegedly wrongful conduct alleged taken as a whole. *Id.* As such, even assuming Openwave came forward with proof of an act of misappropriation that caused it harm, Dr. Siegel's opinion is incompetent to establish the associated damages. *See, e.g., Integral Development*, 2014 U.S. Dist. LEXIS 23429 at *15 (assertion that plaintiff suffered $10M in damages, without actual evidence that such drop in revenue was caused by misappropriation, insufficient to establish damages under CUTSA); *FormFactor*, 2012 U.S. Dist. LEXIS 79359 at *37-38 (speculation of loss of $40M a year, without "concrete evidence connecting the alleged misappropriation to the loss," is insufficient to show damage).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

## V.      CONCLUSION

For the foregoing reasons, Defendant Open-Xchange, Inc. respectfully requests the Court grant summary judgment of no trade secret misappropriation, and enter judgment as set forth above on Counts III, IV, VI, and XI.

Dated: September 6, 2017                    FENWICK & WEST LLP


By: */s/ Todd R. Gregorian*
    Todd R. Gregorian

Attorneys for Defendant
OPEN-XCHANGE, INC.