UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPENWAVE MESSAGING, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>OPEN-XCHANGE, INC.,<br><br>    Defendant. | Case No. 16-cv-00253-WHO<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

This lawsuit arises from the now dissolved business relationship between plaintiff Openwave Messaging, Inc. ("Openwave") and defendant Open-Xchange, Inc. ("OX"). Openwave asserts a myriad of claims against OX for conduct related to OX's successful acquisitions of former Openwave employees and former Openwave clients, and OX has filed a counterclaim. This Order concerns OX's motion for summary judgment on Openwave's claims for misappropriation of trade secrets under federal and California law in their entirety and on Openwave's breach of the implied covenant of good faith and fair dealing claim and its common law unfair competition claim to the extent these claims are based on an act of misappropriation of trade secret. Because Openwave has neither proffered any material evidence showing disputed facts nor established that it is entitled to further discovery, I GRANT OX's motion for summary judgment.

## BACKGROUND

### I. BACKGROUND FACTS

To understand the background of this case, both substantive and procedural, I start with the somewhat complicated corporate structure of the Open-Xchange companies. OX, a Delaware corporation, was the original Open-Xchange entity, founded in January 2005 to attract US venture capital. Decl. of Monika Schroeder ISO OX's Response to Interim Order Regarding Rule 56(d)

("Schroeder Decl. III") ¶ 5 (Dkt. No. 151-1). Eight months later, GmbH was founded as a subsidiary of OX in Germany. *Id.* European investors were more interested in the business than US investors, so OX AG was formed in Germany in 2008 and became the parent company. *Id.* There are a variety other OX-related companies in different countries around the world, including Open-Xchange S.r.l., which operates in Italy. *See id.* ¶ 3. OX has no employees outside the United States. *See* Decl. of Monika Schroeder ISO OX's Mot. to Dismiss or Stay Duplicative Trade Secret Claims ("Schroeder Decl. II") ¶ 2 (Dkt. No. 90); *see also* Decl. of Monika Schroeder ISO Mot. to Dismiss ("Schroeder Decl. I") ¶¶ 2, 5 (Dkt. 18-2) (explaining that Open-Xchange, Inc. has no employees outside the United States).

The general background allegations of the parties are discussed in my Orders concerning the parties' motions to dismiss. (Dkt. Nos. 28, 56). Relevant to this Order, Openwave, a Delaware corporation with its principal place of business in San Mateo, California, accuses OX of "target[ing] and hir[ing] numerous people from Openwave's Italy operations" to staff its Italy operations that have opened up in the exact same city." Second Amended Complaint ("SAC") ¶¶ 13, 99, 126-129 (Dkt. No. 42). Openwave believes that in the process of hiring former Openwave employees, OX received Openwave's trade secrets in an improper manner and subsequently used them to the detriment of Openwave. *Id.* ¶¶ 1-3. Among OX's defenses to Openwave's claims is that it is the American subsidiary of GmbH and is a different legal entity than the parent or S.r.l., the Italian subsidiary that apparently hired the former Openwave employees.

The trade secrets at the core of this case, customer and technological information, are also at issue an Italian proceeding brought in Turin, Italy by Openwave Messaging S.p.A against Open-Xchange, S.r.l and 4 former Openwave Messaging S.p.A employees. *See* Schroeder Decl. II ¶ 3. Following a forensic investigation, Openwave Messaging S.p.A moved for injunctive relief as well as seizure of the purportedly misappropriated information. *See* Schroeder Decl. II, Ex. B ¶¶ 1-2, 60-61. In its motion, Openwave Messaging S.p.A accused Open-Xchange, S.r.l of soliciting its employees and subsequently using improperly attained trade secrets and confidential information from those employees.

On December 19, 2016, the Turin court granted Openwave's request for an injunction but

denied its seizure request. *See* Schroeder Decl. II, Exh. D at 3. The Turin court found that, based on the results of the forensic investigation, two former Openwave employees likely had maintained information from Openwave following their employment. *Id.* at 9-10. Open-Xchange S.r.l. subsequently appealed the order. *Id.* at 3-4. On February 3, 2017, the Turin court issued an opinion upholding the December 19 Order granting injunctive relief. *See id.* ¶ 6, Ex. D.

## II. PROCEDURAL BACKGROUND

The resolution of this motion has been tortured. On June 30, 2017, OX filed a motion to dismiss or stay Openwave's misappropriation and unfair competition claims because Openwave opened litigation in Italy over the exact same claims against a different entity and has failed to identify its asserted trade secrets adequately. Openwave's response barely addressed the merits, but asserted that OX had liability through an alter ego or agency theory for the acts allegedly done by S.r.l.[1] OX denied that any discovery violation had occurred and properly pointed out that Openwave's substantive response to the motion was weak at best.

At a hearing on the motion on August 23, 2017, I converted the motion to dismiss to a motion for summary judgment, asked for more briefing and evidence, and indicated that Openwave could respond with a Rule 56(d) motion if it lacked evidence to oppose on the merits because of improper conduct by OX. I also denied Openwave's broad discovery request, filed after the close of discovery, because of its delay in seeking discovery regarding the separate legal entities controlled by OX's parent company and OX's showing that it had produced all of the documents either within its control or jointly controlled with some other OX entity.

Briefing on the motions for summary judgment mimicked the briefing on the motion to dismiss. Openwave identified scant evidence to support misappropriation of any trade secret, and failed to identify its trade secrets. Instead, its lead argument was that it lacked sufficient discovery under Rule 56(d). At the hearing, I indicated that I would grant OX's motion on the merits unless Openwave's 56(d) motion had merit. I noted that Openwave's argument was undercut by its delay

---

[1] The same day, just a week before the discovery cut off, it filed a one-sided discovery dispute letter in violation of my Civil Case Standing Order, complaining about serious discovery violations by OX.

3

in seeking the discovery it now claimed was vital. But, to satisfy the question of whether OX sold its wholly owned subsidiary to its parent for the purpose of hiding incriminating documents from Openwave, I ordered OX to produce documents regarding the transfers about which Openwave had raised suspicions and gave each party the opportunity to file briefs of five pages or less explaining the meaning of that evidence. Those documents were filed on November 7 and 17, respectively.

**LEGAL STANDARD**

**I.   SUMMARY JUDGMENT**

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 257 (1986).

On summary judgment, the Court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255. In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir. 1979).

**II.   RULE 56 (D)**

"If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to

4

take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). Rule 56(d) "provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002).

A court "should continue a summary judgment motion upon a good faith showing by affidavit that the continuance is needed to obtain facts essential to preclude summary judgment." *California v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998). Rule 56(d) requests should be granted freely where a party has not had a "realistic opportunity" to pursue discovery relating to its theory of the case. *Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003) (citations omitted). "[T]he denial of a Rule 56[(d)] application is generally disfavored where the party opposing summary judgment makes (a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986). The party making a Rule 56(d) request must be able to show that it diligently pursued its previous discovery opportunities and show "how allowing additional discovery would have precluded summary judgment." *Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839, 844 (9th Cir. 1994).

**DISCUSSION**

**I.  SUMMARY JUDGMENT**

Openwave claims that OX misappropriated nine trade secrets: (1) customer lists, (2) product pricing information and a pricing tool, (3) customer demand information, (4) customer satisfaction surveys, (5) customer mapping information, (6) customer contract terms, (7) the Openwave email platform stack, (8) the Virgin Media email system stack, and (9) Openwave's technical data and documentation. Oppo. at 17 (Dkt. No. 125). To prove misappropriation under both California's Uniform Trade Act, Cal. Civ. Code § 3426, and the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, Openwave must demonstrate that (1) it owned a trade secret; (2) OX "acquired, disclosed, or used" its trade secret through improper means; and (3) OX's actions damaged it. *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1665 (2003). OX

5

moves for summary judgment, arguing that: (1) Openwave cannot prove ownership of a misappropriated trade secret; (2) there is no evidence that OX engaged in any act of trade secret misappropriation; and (3) Openwave has not provided evidence that it suffered damage.

### A. Ownership of Trade Secrets

A trade secret is information that: "(1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use"; and "(2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d). OX contends that Openwave has not made a reasonable disclosure of the trade secrets in dispute, proven that its purported trade secrets were subject to efforts that are reasonable under the circumstances to maintain their secrecy, or shown that its purported trade secrets are not generally known or readily ascertainable.

#### 1. Whether Openwave Properly Disclosed Its Trade Secrets

A plaintiff seeking relief for misappropriation of trade secrets "must identify the trade secrets and carry the burden of showing that they exist." *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993). While the Ninth Circuit has yet to decide whether Section 2019.210 of the California Code of Civil Procedure applies to actions in federal court, courts in this district have routinely applied the trade secret disclosure provisions in Section 2019.210. *See Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 852477, at *5 (N.D. Cal. Feb. 28, 2014) (WHA); *Soc. Apps, LLC v. Zynga, Inc.*, 2012 WL 2203063, at *2 (N.D. Cal. June 24, 2012) (YGR). Accordingly, I apply Section 2019.210 in this case.

In order to protect its trade secrets, Openwave must first "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit defendant to ascertain at least the boundaries within which the secret lies." Cal. Code Civ. Proc. 2019.210; *see also Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1453 (2002) (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968)). Though it need not "spell out the details of the trade secret," Openwave must minimally provide "reasonable notice of the issues

which must be met at the time of trial and [ ] provide reasonable guidance in ascertaining the scope of appropriate discovery." *Diodes*, 260 Cal. App. 2d at 252–53.

To satisfy the Section 2019.210 disclosure requirement, Openwave's trade secret disclosure needs to include: "(1) a summary of the specific trade secret; (2) the background of the trade secret and a description of how each secret has derived independent, actual or potential economic value by virtue of not being generally known to the public; (3) a description of how each secret has been the subject of reasonable efforts to maintain its secrecy; and finally (4) each of the precise claimed trade secrets, numbered, with a list of the specific elements for each, as claims would appear at the end of a patent." *Jobscience, Inc.*, 2014 WL 852477, at *5. Openwave's trade secret disclosure satisfies each of these requirements. *See generally* Openwave Third Amended Trade Secret Disclosure (Trade Secret Disclosure) (Dkt. No. 89-2). Accordingly, Openwave's trade secret disclosure satisfies the dictates of Section 2019.210's disclosure requirement.

### 2. Whether Openwave's Purported Trade Secrets Are Legally Protectable

Even though Openwave adequately disclosed its purported trade secrets, it still carries the burden of establishing that the particular information constitutes a protectable trade secret. *See MAI Sys. Corp.*, 991 F.2d at 522. A "trade secret" consists of three elements: (a) information; (b) which is valuable because it is unknown to others; and (c) which the owner has attempted to keep secret. *Abba Rubber Co. v. Seaquist*, 235 Cal. App. 3d 1, 18 (1991). OX argues that Openwave fails to carry this burden because it has not (1) proven that its purported trade secrets were subject to efforts that are reasonable under the circumstances to maintain their secrecy, or (2) shown that its purported trade secrets are not generally known or readily ascertainable. Openwave's purported trade secrets can be broken down into two general categories: (1) customer information (trade secrets 1-6 above) and (2) technological information (trade secrets 7-9 above). I address each category in turn.

#### a. Customer Information

Openwave relies on cases that have found similar information to be trade secrets to demonstrate that its customer information consist of legally protectable trade secrets. *See MAI*

*Sys.*, 991 at 521 (noting that customer database "assembled over many years that allows [owner] to tailor its service contracts and pricing to the unique needs of its customers" qualifies as a trade secret); *Brocade Comm. Sys, Inc. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1214 (N.D. Cal. 2012) (finding that "confidential customer-related information including customer lists and contact information, pricing guidelines, historical purchasing information, and customers' business needs/preferences" are the type information is "routinely given trade secret protection). While customer information can include legally protectable trade secrets, Openwave fails to provide any evidence that its customer information should be considered legally protectable trade secrets.

In *Brocade Comm.*, the plaintiff offered multiple declarations with facts related to the development of the trade secrets, allowing the court to draw reasonable inferences that the purported trade secrets derive "economic value from not being generally known to the public." 873 F. Supp. 2d at 1214-15. Openwave merely points to case law and its trade secret disclosure to support its claim. The trade secret disclosure is not admissible evidence and therefore cannot be considered for purposes of summary judgment. *See* Fed. R. Civ. Pro. 56. Its disclosure is not accompanied by any declarations or affidavits from a person with personal knowledge authenticating it under penalties of perjury. It is instead signed by Openwave's counsel and submitted "on information and belief." *See* Trade Secret Disclosure at 2, 102.

This does not create a genuine issue of material fact. It is insufficient to merely point to inadmissible evidence and highlight cases that put forth favorable outcomes. Rather, the non-movant must point to some evidence in the record that creates a genuine dispute as to a material fact. Openwave fails to do so. Accordingly, it cannot satisfy its summary judgment burden as to its customer information trade secrets. OX is entitled to summary judgment as to Openwave's customer information (trade secrets 1-6 above).

### b. Technological Information

Openwave claims that its technological information, including the Openwave email platform stack, the Virgin Media email system stack, and its technical data and documentation, are trade secrets. To carry its burden demonstrating that its technological information are trade secrets, Openwave needs evidence that the information (1) is not generally known or easily

8

ascertainable and (2) is subject to actions by Openwave to keep it secret.

Openwave's claim that its technical data and documentation is a trade secret suffers from the same deficient support as its customer information. Openwave points to no evidence but rather attempts to merely provide cases that support a finding that such information is a trade secret. As discussed above, this is insufficient for the purposes of summary judgment. Given its failure to rely on any evidence, Openwave cannot create a genuine dispute as to a material fact related to technical data and documentation. Accordingly, OX is entitled to summary judgment for Openwave's technical data and documentation.

To demonstrate that its technology stacks are trade secrets, Openwave uses the deposition of Chief Technology Officer Farooq Ali. Deposition of Farooq Ali at 184:3-16 (Dkt. No. 128-1, Ex. B). Ali testifies that Openwave treat the technological stacks' contents as confidential and that such information would be valuable to OX because of the stacks' resiliency. *Id.* Further, Openwave submits evidence regarding the measures that it undergoes to maintain secrecy of this information. *See* Decl. of Kevin Hunsaker ¶¶ 3-10 (Dkt. No. 129). From these facts, a reasonable jury could infer that the technological stacks derive potential economic value from not being generally known to the public and Openwave takes reasonable measures to safeguard their secrecy. Accordingly, Openwave meets its burden to identify legally protectable trade secrets as to the Openwave email platform stack and the Virgin Media email system stack.

**B.      Misappropriation of Trade Secrets**

Given that Openwave has only carried its burden of identifying legally protectable trade secrets concerning the technological stacks, I only address the alleged misappropriation of these trade secrets. To show misappropriation, Openwave must show that "the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means." *Sargent Fletcher v. Able Corp.*, 110 Cal. App. 4th 1658, 1665 (2003). It may prove such misappropriation by circumstantial as well as direct evidence. *UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*, 617 F.Supp.2d 938, 944 (N.D. Cal. Sept. 5, 2007) (VRW). Openwave points to several pieces of evidence: (1) an email from former Openwave employee, Alberto Carmelo; (2) interactions between OX and former Openwave employees that have subsequently worked for OX; (3) OX's success with

former Openwave customers; (4) a findings in the Italian proceeding regarding a USB device containing Openwave information; and (5) OX's work for Virgin Media. Only the USB device and OX's work for Virgin Media arguably relate to Openwave's properly identified trade secrets. All other evidence relates to Openwave's customer information, which Openwave failed to demonstrate is legally protectable.

Openwave points to a ruling in the Turin court in which the court found that the USB device of a former Openwave employee who went on to work for Open X-change S.r.l was probably used to make copies of information related to Openwave Messaging S.p.A. *See* Schroeder Decl. II, Ex. D at 9 (Dkt. No. 90-4). This is the only document that Openwave uses to support its allegation that OX misappropriated its trade secrets. Merely pointing to the findings of another court is insufficient for the purposes of summary judgment. *See* Fed. R. Civ. Pro. 56. They also fail to provide any evidence of what data the USB device contained and if the contents relate to the Openwave email platform stack or the Virgin Media email system stack. Accordingly, the findings of the Turin court do not create a genuine issue of material fact whether OX misappropriated Openwave's trade secrets relevant to this action.

As to OX's relationship with Virgin Media, Openwave submits a copy of the agreement between OX and Openwave in which OX agreed to allow Openwave to sell OX's technology to Virgin Media as a part of the Openwave email platform. *See* Decl. of Ryan Selness ISO Oppo. to Mot., Ex. I (Dkt. No 128-1). Openwave also points to the deposition of its 30(b)(6) witness Marie Weston Smith. Smith testifies that the speed in which OX was able to get its platform up for Virgin Media was impossible. Decl. of Monica Hernandez ISO Oppo. to Mot., Ex. 40 at 83:24-84:2 (Dkt. No. 126-1). With this evidence, Openwave insists on an inference that OX was able to "take Virgin as a customer by pledging to save it time and money by recycling the work Openwave had already performed for Virgin." Oppo. at 23. This is not merely a request for a reasonable inference. Instead, Openwave seeks a reading of the evidence that the record does not support. Openwave points to no evidence beyond its own allegations that, as a part of its deal with OX, it provided Openwave with its technological stacks and information. And Smith's testimony does not provide evidence that Openwave's technological stacks were the foundation for OX's

work with Virgin Media.  In fact, Openwave provides no evidence that OX's interactions with Virgin Media involved any mention of Openwave at all.  Openwave cannot satisfy its summary judgment burden on either of the trade secrets that it demonstrated were legally protectable with the information related to Virgin Media.  Accordingly, OX is entitled to summary judgment as to all of Openwave's purported trade secrets.

### C. OX Is Not S.r.l.

Starkly, Openwave identifies no improper conduct by OX.  From the evidence of record, S.r.l. is the Italian subsidiary of GmbH.  OX is the American subsidiary of GmbH.  It does not have employees outside the United States.  Schroeder Decl. I ¶ 2.  OX is not liable for the conduct of its parent or its parent's Italian subsidiary.  There has been a total failure of proof by Openwave that OX has anything to do with S.r.l.'s hiring of Openwave's former Italian employees.  This is a separate reason to grant OX's motion for summary judgment.

## II. OPENWAVE'S 56(D) MOTION

Federal Rule of Civil Procedure 56(d) is a device for litigants to avoid summary judgment when the non-movant needs to discover affirmative evidence necessary to oppose the motion.  *See Garrett v. San Francisco*, 818 F.2d 1515, 1518 (9th Cir.1987).  In making a Rule 56(d) motion, a party opposing summary judgment must make clear "what information is sought and how it would preclude summary judgment." *Margolis v. Ryan*, 140 F.3d 850, 853-54 (9th Cir. 1998); *see, e.g., id.* at 853–54 (district court correctly denied motion for continuance to engage in further discovery under Rule 56(d) where plaintiff did not provide any basis or factual support for his assertions and his assertions appeared based on nothing more than "wild speculation").  Rule 56(d) requires that the requesting party show (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery, (2) the facts sought exist, and (3) the sought-after facts are essential to oppose summary judgment.  *Family Home & Finance Center, Inc. v. Federal Home Loan Mortgage Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).

Typically, Rule 56(d) is relied on when an opponent files an early motion for summary judgment. Openwave's comes at the end of discovery, after I have found that it was not diligent in seeking the information it now calls critical.  It could have sought records from the foreign OX

11

entities through the Hague Convention. It could have sought relief from me during the discovery process. It did neither. And the affidavit of Monica Hernandez, offered to support the motion, fails to identify specific facts that it tried to but could not obtain during discovery.

Given the evident sincerity of counsel's belief that OX entered into a complex corporate restructuring scheme to thwart Openwave's ability to obtain documents, I required OX to offer proof to support its representations that Openwave was not a factor, let alone a motivating one, for the restructuring that occurred before this litigation was filed. It did so. OX provided evidence that the Open-Xchange companies conceived of the restructuring plans in 2008, and executed them once the German Parliament passed the Tax Amendment Act of 2015, modifying the German group reorganization rule so the OX could transfer ownership to OX AG (the parent) without forfeiting the parent's loss carryovers. *See* Schroeder Decl. III ¶ 11. OX also showed how the transfers benefited OX, which was able to use its loss carryovers from prior tax years to offset all of the income of the sales of IP to OS Software GmbH and of OX GmbH to OX AG (more than $12 million) in 2015 and owe no federal tax. *Id.* ¶ 11, Ex. B. Moreover, it noted that Openwave is barely mentioned in contemporaneous notes, minutes or emails. OX's Response to the Interim Order Regarding Rule 56(d) Mot. at 3-4 (Dkt. No 150-4).

In response, Openwave again offered suppositions but no proof. While it continues to cry foul and raise questions about OX's assertions, it filed no substantial evidence to dispute them. Its Rule 56(d) motion for additional discovery is DENIED.

**CONCLUSION**

For the reasons discussed above, I GRANT OX's motion for summary judgment of no trade secret misappropriation, and with respect to Counts III, IV, VI and XI.

A Case Management Conference is set for February 27, 2018, at 2:00 p.m. The parties shall file a Joint Case Management Statement by February 20, 2018, setting forth a proposed schedule for the remainder of the case.

**IT IS SO ORDERED.**

Dated: February 2, 2018

William H. Orrick
United States District Judge